1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448 |
| | ) | |
| THE UNITED STATES, | ) | (Judge George W. Miller ) |
| | ) | |
| Defendant. | ) | |

**SECOND AMENDED COMPLAINT**

Plaintiff Michael Kawa, Esq. files this Complaint for breach of contract, violation of the Assignment of Claims act, and violation of 10 U.S.C. § 2785 against the United States of America, acting through the Defense Logistics Agency, Defense Supply Center Columbus ("DSCC").

**Parties and Jurisdiction**

1. Capital City Pipes ("Capital City") is located in Tallahassee, Florida. Michael Kawa, Esq. is located at 300 Crown Building, 304 South Franklin Street, Syracuse, New York 13202. JGB Enterprises, Inc. ("JGB"), located in Liverpool, New York, is in the business of manufacturing hose assemblies and other products for military and commercial uses.

2. The DSCC, which is part of the Defense Logistics Agency ("DLA"), or Government, procures a wide range of supplies for the United States military, including hose assemblies for military vehicles.

3. Michael Kawa, Esq. was not only the payee but also the escrow agent and assignee of all monies owed to JGB by Capital City under Purchase Order SP0750-00-M-4191 ("Purchase Order 4191"), entered into by DSCC. Furthermore, the Government had an obligation to send payment to Michael Kawa, Esq. Michael Kawa, Esq. had a legal obligation to

receive monies due to JGB from Capital City, hold these monies in trust, and disburse the monies to JGB, as well as to Capital City's trustee in bankruptcy, making Michael Kawa, Esq. a real party in interest under RCFC 17.

4. This Court has subject matter jurisdiction over this matter pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., the Tucker Act, 28 U.S.C. § 1491(a) (1), the Assignment of Claims Act, 31 U.S.C. § 3727, 41. U.S.C. § 15, and 10 U.S.C. § 2785 (entitled "Remittance Address: Regulation of Alteration").

**Notice of Related Cases/Claim**

5. Michael Kawa, Esq. respectfully notifies this Court that JGB filed suit in the Court of Federal Claims for payment for goods furnished to the Government as a subcontractor under Purchase Order 4191, as well as under another contract (SP0750-99-C-2508). While JGB was granted relief as a third-party beneficiary under Contract SP0750-99-C-2508, the Court held that JGB was not a third-party beneficiary under Purchase Order 4191. See JGB Enterprises, Inc. v. U.S., 63 Fed.Cl. 319 (2004). An appeal by the Government is pending.

6. Michael Kawa, Esq. was not a party to the JGB litigation, does not control JGB, did not represent JGB or control JGB's case in the previous litigation, and is asserting causes of action separate and distinct from those asserted by JGB in the previous litigation. The Contracting Officer promised in Government Purchase Order 4191 that payment would be made to Michael Kawa, Esq. The Government subsequently disregarded this document, making payment to Capital City. Michael Kawa Esq.'s claims are based on his own standing under the Purchase Order, his own standing under an implied contract, his own standing as a third party beneficiary, his own standing as an assignee under 31 U.S.C. § 3727, and for violation of 10 U.S.C.§ 2785.

7. Before and during the JGB litigation, the Government had notice of the assignment to Michael Kawa, Esq. Nonetheless, the Government failed to join or attempt to join Michael Kawa, Esq. as a party to that litigation, and therefore any argument that is made pursuant to res judicata or collateral estoppel would be frivolous.

**Factual Background**

8. Capital City was, at all times relevant to this claim, a business located in Tallahassee, Florida that was certified by the United States Small Business Administration ("SBA") under the 8(a) program. Beginning in 1998, DSCC "set aside" its requirements for hose assemblies, previously supplied by JGB, for Capital City under the 8(a) Program. During 1999, Capital City received several sole-source contracts and purchase orders from DSCC to supply hose assemblies manufactured and delivered directly to the Government by JGB.

9. On April 30, 1999, Contracting Officer Bocsy forwarded a copy of solicitation number SP0750-99-Q-5778 to Capital City, requesting a quote for certain hose assemblies. The cover letter for the solicitation further stated that the only small business source that is waived for first article testing is Durodyne. This April 30, 1999, fax also stated: "This is our second attempt for an award together. If you have any questions please call me."

10. On June 4, 1999, Capital City submitted a quotation and stated that Titan Industries would supply the hose assemblies, and would be the place of manufacture as well as the place of inspection. The price bid for the assemblies was $214 each. On June 15, 1999, Contracting Officer Bocsy called Capital City, as part of ongoing negotiations, to further discuss the offer, informing them that the price was too high and that it would need to drop by 38%. On June 18, 1999, Capital City submitted an offer of $190.65 for each hose assembly, "Quoting the manufacturer: Titan Industries."

11. By letter dated June 23, 1999, Capital City advised Contracting Officer Bocsy that it was now going to use JGB to assemble and supply the hose assemblies, directly setting forth the quotes given by JGB to Capital City. The quote from JGB was cheaper than Titan, at $148.99 each for 120 day delivery and $157.17 each for 210 day delivery. This quote included packaging and shipping to destination from JGB.

12. On July 15, 1999 the Government Pre-award Monitor, pursuant to an inter-office memorandum, certified that the solicitation was an 8(a) set-aside and that Capital City was going to be a "dealer," with JGB supplying the hose assemblies. This memorandum stated that a certificate of competence for Capital City was not needed, since "inspection and acceptance must be at actual place of MFG. of hose Assy." Under the section of the memo pertaining to performance and quality history of Capital City, the memo states "ASAP," showing that the Government considered this an urgent order. This memo made it absolutely clear from the beginning that Capital City was a mere dealer, and actual assembly and supply to the Government was to be performed by JGB.

13. By letter dated September 20, 1999, Capital City further advised Contracting Officer Bocsy that "[t]he assembly of this product will be done **by JGB** Enterprises, Inc. at their location, Liverpool, NY (61125)" (emphasis in original).

14. Not only was JGB to assemble the product, JGB was responsible for testing. As part of ongoing negotiations, a letter from Capital City to Contracting Officer Bocsy, dated September 24, 1999 stated "JGB Enterprise, Inc will do the assembly and the pressure testing will be done at their plant in Liverpool, NY."

15. Due to its knowledge of Capital City's business practices, JGB doubted that it would be properly paid by Capital City, and was reluctant to enter into a contract to supply the

much needed hose assemblies. JGB feared that it would construct and ship the hose assemblies direct to the Government, and would then never receive payment from the "dealer," Capital City.

16. To assure production of the urgently needed hose assemblies, the DSCC Small Business Specialist Michael Taylor suggested to JGB that JGB enter into an escrow agreement with Capital City, whereby an escrow agent would be appointed to receive the funds directly from the Government and distribute them to JGB and Capital City. The Government contacted Capital City's President, Lee Gilliam, and discussed the possibility of using an escrow agreement with JGB to provide JGB with the assurance it was looking for. This agreement would require the Government to specify in the prime contracts that payment was to be made to the escrow agent agreed upon by Capital City and JGB.

17. On November 9, 1999, Capital City advised Contracting Officer Bocsy that it was confirming the quote and that the check was to be made out to Michael Kawa, Esq. and Capital City, two different parties**.** The check was also to be sent to a different address, that of Michael Kawa, Esq., not Capital City:

Also, I am requesting a change of Payment Remittance Address:

**Capital City Pipes, Inc.**
**Michael Kawa Esq.**
**300 Crown Bldg**
**Syracuse, NY 13202**

18. On November 10, 1999, Capital City and JGB entered into an escrow agreement whereby Michael Kawa, Esq. was appointed as an escrow agent for receipt of payments under all DSCC-Capital City contracts under which JGB was the subcontractor. Under the escrow agreement, Capital City agreed to execute the necessary documents to ensure that all payments under the remaining Capital City prime contracts would be payable to Michael Kawa, Esq., who would then distribute the appropriate amounts to JGB and Capital City. It was JGB's,

as well as Michael Kawa, Esq.'s, intention not to ship any hose assemblies to the Government unless it was paid.

19. Capital City followed up with a letter to Contracting Officer Bocsy dated November 10, 1999, clarifying that Capital City was no longer the payee by stating:

> I requested a change in the payment remittance address:
>
> **Michael Kawa, Esq.**
> **300 Crown Bldg.**
> **304 S. Franklin Street**
> **Syracuse, NY 13202**

Now Capital City had been removed entirely as payee. This letter clearly provided for both a different address and payee for payments, and this letter was a notice of assignment. Michael Kawa, Esq. was now to be the payee, not Capital City. This was an address change, and a change in the payee. As stated above, JGB would not ship any product to the Government as a subcontractor unless any new contracts awarded to Capital City specifically made Michael Kawa, Esq. the payee. Even if the check was not made out to Michael Kawa, Esq., it still should have gone to Michael Kawa, Esq.'s Syracuse, New York, office.

20. Upon information and belief, the conflict between the November 9, 1999, letter and the November 10, 1999, letter caused "confusion" and on November 15, 1999, Capital City sent a fax to Contracting Officer Bocsy reinforcing that Capital City was no longer the payee**,** and establishing that Capital City and Michael Kawa, Esq. were two separate parties. The fax stated:

> Good Morning, Luann, I apologize fot (sic) the confusion this may have caused. We are requesting the payment address be changed to:
>
> MICHAEL KAKA (sic), ESQ.
> 300 CROWN BLDEG (sic)
> 304 S FRANKLIN STREET

SYRACUSE, NY 13202

If you have any questions please call me
THANK YOU.

Once again, this was an unambiguous request for the inclusion of a new entity into the Purchase Order, a change of both payee and payment address from Capital City in Tallahassee, Florida, to Michael Kawa, Esq. in Syracuse, New York, as well as a notice of assignment to Michael Kawa, Esq. Any confusion about Michael Kawa, Esq.'s status had been removed, since the reference to "Capital City Pipes" in the address line had been deleted. Resolving the confusion by taking off Capital City's name showed that Michael Kawa, Esq. and Capital City were two different parties.

21. The next day, on November 16, 1999, Contracting Officer Bocsy telephoned Capital City regarding an increase in quantity. Upon information and belief, JGB's role must have been discussed in this conversation, since JBG was the actual supplier, and the previous day's fax had discussed the change of payee.

22. On November 19, 1999, Contracting Officer Bocsy viewed the entry for Capital City in the Central Contractor Registry ("CCR"), which informed her that Capital City's official name and address was Capital City Pipes in Tallahassee, Florida, not Michael Kawa Esq. in Syracuse, New York. This would have expressly informed the Contracting Officer that Michael Kawa Esq. was not Capital City.

23. DSCC Contracting Officers have access to a database known as Standard Automated Material Management System ("SAMMS"). The remittance address identified in SAMMS is required to match the remittance address in the hard copy of the contract. Likewise, the EFT information the contractor puts into the CCR is required to match the remittance address shown in SAMMS and the hard copy of the contract. If the Contracting Officer discovers that

the remittance addresses do not match, he or she should contact the contractor to find out why. Upon information and belief, standard procedures would have led to Contracting Officer Bocsy becoming aware of the escrow situation.

24. As a result of Capital City's offer on June 23, 1999, and the ongoing negotiations regarding the change of payee, DSCC ultimately awarded Purchase Order 4191 on November 24, 1999 to Capital City. Purchase Order 4191 was in the amount of $45,275.76 for 306 hose assemblies, and was signed by Contracting Officer Bocsy on November 19, 1999. Contracting Officer Bocsy complied with Capital City's requests of November 10 and 15, 1999, and personally typed Michael Kawa, Esq.'s name and address into Purchase Order 4191, knowing that the check for payment would be sent to Michael Kawa, Esq. The language in the Purchase Order is very clear:

> **REMIT PAYMENT TO:**
>
> **MICHAEL KAWA, ESQ.**
> **300 CROWN BLDG**
> **304 S. FRANKLIN ST.**
> **SYRACUSE NY 13202**

(emphasis added).

25. The above provision was typed in only a few days after notification of the assignment of payment was given to the Government. The Government affirmatively acknowledged the assignment in writing by typing the name of the new payee, Michael Kawa, Esq., into the official Purchase Order. The inclusion of an entirely new entity in the Purchase Order leads to the conclusion that the alteration was made to reflect and acknowledge the realities of the assignment. In addition, the check should have been sent to Michael Kawa, Esq. at his Syracuse, New York office, where Michael Kawa, Esq. could control the check. No

proper modification was ever entered into to remove Michael Kawa, Esq. as the payee, or to change the address for payment.

26. It was apparent on the face of the Purchase Order that JGB would be manufacturing the hose assemblies for Capital City. Purchase Order 4191's inspection and packaging clauses identified JGB and provided that DCMC Syracuse was the office responsible for "acceptance/inspection at origin." The Purchase Order even waived certain tests based upon the fact that JGB was doing the actual manufacturing, stating "FIRST ARTICLE TEST WAIVED BASED UPON JGB ENTERPRISES USING HOSE FOR FAT APPROVED SOURCE GOODYEAR TIRE AND RUBBER (73842)." These provisions in the Purchase Order mirror the language regarding first article testing in the fax from the Contracting Officer to Capital City dated April 30, 1999, as well as letters regarding JGB's role on June 23, 1999 and September 20, 1999. Upon information and belief, the Contracting Officer was aware of the earlier course of negotiation when signing the Purchase Order. The Government needed the hose assemblies "ASAP," according to the memorandum of July 15, 1999, and the Contracting Officer placed Michael Kawa, Esq.'s name and address in the Purchase Order to facilitate speedy production of the hose assemblies.

27. After signing the Purchase Order, pre-award Contracting Officer Bocsy was replaced by post-award Contracting Officer Moore. Michael Taylor, DSCC Small Business Specialist, discussed the possibility of using an escrow agreement to resolve the JGB non-payment problems with Contracting Officer Moore. Contracting Officer Moore also kept Michael Taylor informed about discussions regarding establishment of a joint bank account for JGB and Capital City. Upon information and belief, Contracting Officer Moore was aware of

the course of dealings leading to the designation of Michael Kawa, Esq. as payee in Purchase Order 4191.

28. Based on the Purchase Order citing Michael Kawa, Esq. as the payee, JGB shipped the items for Purchase Order 4191 directly to the Defense Department Depot on February 8, 2000 and sent the required DD-250s directly to the Government. The DD-250s are the requisite shipping and payment documents that have been authorized by the Government. The Government accepted this delivery made under Purchase Order 4191, which named Michael Kawa, Esq. as payee.

29. Directly after shipping under Purchase Order 4191, the Government signed yet another Purchase Order naming Michael Kawa, Esq. as payee, showing a regular course of conduct. On or about February 10, 2000, a Government supply officer in Gulfport, Mississippi, issued Purchase Order N62604-00-P-0104 for hose assemblies from Capital City. Once again, JGB was to perform essentially all the work relating to the order, with Capital City as a mere dealer.

30. Based on previous discussions with the Government and the previous payment problems, the Government agreed that the remittance address in Purchase Order 0104 should be that of Michael Kawa. The remittance address in this Purchase Order stated "Michael Kawa, Esq., 300 Crown Bldg., 304 S. Franklin Street, Syracuse, New York 13202." Once again, the Government was promising to make payment to the escrow agent, Michael Kawa, Esq. The check for Purchase Order 0104 was sent to the address of Michael Kawa, Esq. and Michael Kawa, Esq. was able to exert control over this check, eventually assuring that payment was received by JGB. By virtue of the fact that the Government remitted payment on Purchase Order 0104 to Michael Kawa, Esq., it shows that the payment system is quite capable of remitting

funds to the address as cited in the body of the Purchase Order, contrary to what the Government has claimed on Purchase Order 4191. This adds further credence to the affidavit of Vern Reising, a former disbursing agent for the United States Defense Finance and Accounting Service and the United States Army. His affidavit, appended as Exhibit 1, states that since no modification was issued changing the "remit to" address, payment must be made to Michael Kawa, Esq. in accordance with the terms of the Purchase Order. (See Exhibit 1).

31. On March 24, 2000, DSCC Contracting Officer Phyllis Moore sent an "ALERT" message to Capital City's ACO at DCMC Clearwater with an attached list of all contracts and purchase orders awarded to Capital City, including Purchase Order 4191. DCMC Clearwater was the office administering Purchase Order 4191, as stated on the face of the Purchase Order. Moore requested that the ACO "maintain surveillance" of these contracts/orders. Moore's March 24, 2000, ALERT message to the ACO concluded as follows:

> THIS SERVES AS AUTHORIZATION FOR THE ACO TO TAKE WHATEVER CONTRACTUAL ACTIONS NECESSARY TO KEEP THESE ORDERS VIABLE. THE MATERIAL ON THESE CONTRACTS ARE [sic] URGENTLY NEEDED.

32. This message was an express delegation of authority from Contracting Officer Moore to the Administrative Contracting Officer at DCMC Clearwater, empowering the Administrative Contracting Officer to take any "contractual actions necessary to keep these orders viable."

33. At the time of this ALERT message, the Government had not yet made payment for these shipments. As stated above, JGB had conditioned shipment on Capital City's payment being made to Michael Kawa, Esq. as had been suggested by the Government in an earlier effort to render the orders viable.

34. On April 5, 2000, Capital City contacted Contracting Officer Kathy M. Bader, at DCMC St. Petersburg, Florida, regarding Contract 2508, responding to "questions" asked by Contracting Officer Bader in a letter dated March 30, 2000. Capital City informed the Contracting Officer that:

> 1. Mr. Michael Kawa, Esq. is an attorney and Capital City Pipes President and CEO Mr. Lee Gilliam and JGB Enterprises, Inc President/ CEO Mr. Jay Bernhardt signed an agreement to utilize Mr. Michael Kawa, ESQ as a go-between on this contract.
>
> 2. **This Notice of Assignment is not for a loan. The purpose is for the disbursement of the funds related to the above-mentioned contract**.

(emphasis added).

Upon information and belief, this notification regarding Contract 2508 also clarified the role of Michael Kawa, Esq. in Purchase Order 4191.

35. On April 12, 2000, in a hand-written memorandum of a telephone call, Contracting Officer Moore stated, in regards to Contract 2508,

> Since this material is urgently needed, I will entertain on a one time basis of this award, changing the remittance address to a bank or whatever is agreeable.

36. While Contracting Officer Moore was referring specifically to Contract 2508 between the Government and Capital City, this shows that she was well aware of payment problems regarding Capital City, and was aware of discussions regarding change of payee. At the time she made this memorandum, payment had not yet been made on Purchase Order 4191, and she was responsible for administering Purchase Order 4191. Upon information and belief, since Contracting Officer Moore was actively administering both Contracts, she was aware that Purchase Order 4191 also provided for an escrow agreement.

37. Despite the foregoing, on April 24, 2000, without informing Michael Kawa, Esq. the Government directly paid, by EFT, the amounts due under the Purchase Order to Capital City.

38. As a result of the Government's failure to pay, Michael Kawa, Esq. is still owed $45,275.76, plus interest, from the Government under Purchase Order 4191. In addition, Michael Kawa, Esq. is still owed the check that should have been sent to his Syracuse, New York, office.

39. Due to the bankruptcy of Capital City, Michael Kawa, Esq. is required to turn a percentage of this money over to the trustee in bankruptcy; however, the Government's non-payment has prevented Michael Kawa, Esq. from properly forwarding these funds.

40. Michael Kawa, Esq. filed a certified claim for payment with the Contracting Officer on November 18, 2005. On January 13, 2006, the Contracting Officer issued a final decision denying the claim. In that final decision, the Contracting Officer represents that Capital City requested that the remittance address be changed, but does not represent that a modification was issued changing the language in the Purchase Order. Plaintiff is also unaware of any such authorized modification removing Michael Kawa, Esq. as the payee, or removing his address as the address for payment

41. On February 17, 2006, Lavern Reising, a former disbursing agent for the United States Defense Finance and Accounting Service and the United States Army prepared a sworn statement that in his opinion, since no modification was issued changing the "remit to" address, payment must be made to Michael Kawa, Esq. in accordance with the terms of the Purchase Order. (See Exhibit 1).

**Count I-Assignment**

42. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein.

43. Capital City gave the Contracting Officer multiple notices of the assignment to Michael Kawa, Esq. The offer submitted by Capital City, multiple pieces of correspondence, and an internal Government memo made it absolutely clear that manufacture, testing, packing, and delivery were the responsibility of JGB. Contracting Officer Bocsy was well aware that Capital City was a mere "dealer." The Government urgently needed hoses that JGB could provide, and suggested an escrow agreement to assure payment to JGB. Pursuant to the escrow agreement, Capital City notified Contracting Officer Bocsy three times that Michael Kawa, Esq. was to be the payee, as well as the recipient of the check in accordance with the address change. Any ambiguity or suggestion that Michael Kawa, Esq. was a mere agent of Capital City was dispelled by the fax of November 15, 1999, changing the payee from Capital City and Michael Kawa, Esq. to Michael Kawa, Esq. alone. This final message from Capital City gave no indication whatsoever that Michael Kawa, Esq. was associated with Capital City. These multiple notices were sent in the context of ongoing negotiations regarding JGB's role in the Purchase Order and JGB's concerns about receiving payment from Capital City.

44. The Contracting Officer then recognized this assignment in writing by placing Michael Kawa, Esq. in Purchase Order 4191 as the payee. Not only was this a change in the address, a new entity had expressly been placed into the Purchase Order as payee. Contracting Officer Bocsy knew that this provision would result in a check for the full amount being made out to Michael Kawa, Esq. and sent to the Syracuse, New York, address**.** The language in the Purchase Order is very clear:

**REMIT PAYMENT TO:**

**MICHAEL KAWA, ESQ.**
**300 CROWN BLDG**
**304 S. FRANKLIN ST.**
**SYRACUSE NY 13202**

(emphasis added).

The Government, in earlier contracts, had made payments directly to Capital City. The language cited above, placed in the Purchase Order by the Contracting Officer, modified this established practice. The language above also required the check to be sent to the Syracuse, New York, office of Michael Kawa, Esq., allowing him to control the check.

45. The Government waived any technical defects in assignment procedure**.** As explained above, Contracting Officer Bocsy received notice of the assignment, recognized the assignment, and typed the new payee and new address into the Purchase Order, knowing that these actions would result in full payment being forwarded to Michael Kawa, Esq. These actions constitute a waiver under the Assignment of Claims Act, resulting in a valid assignment in favor of Michael Kawa, Esq.

46. As a result of the assignment the product was delivered, and Defendant breached its obligations to Plaintiff by failing to pay Plaintiff for these deliveries and by failing to send the check to his Syracuse, New York, office. The Government accepted the deliveries made under a Purchase Order that clearly named Michael Kawa, Esq. as payee and clearly indicated that the check was to be sent to his Syracuse, New York, office. If the Government had not recognized the assignment by placing Michael Kawa, Esq. in the Purchase Order, the deliveries would have never been made, since the manufacturer JGB was unwilling to take the risk of non-payment by the "dealer" Capital City.

47. The Government also ratified the assignment to Michael Kawa, Esq**.** Before payment was made on Purchase Order 4191, Contracting Officer Moore, in an alert message

dated March 24, 1999, authorized Administrative Contracting Officers to take any necessary contractual actions to preserve the viability of Purchase Order 4191. Contracting Officer Bader, at DCMC St. Petersburg Florida, was then explicitly notified on April 5, 1999 that Michael Kawa, Esq. was an escrow agent, removing any possible confusion as to his role in any of the Contracts. Contracting Officer Moore also revealed in a memorandum dated April 12, 1999 that she was aware of possible escrow agreements to assure payment of Capital City's subcontractors. Nonetheless, payment was sent on April 24, 1999 directly to Capital City, who was not an authorized payee nor the authorized recipient of the check.

48. As stated in the affidavit of Lavern Reising, former Department of Defense Disbursing Officer, this payment was improper, and the Government is still obligated to remit payment to Michael Kawa, Esq., who is the authorized payee and the authorized recipient of the funds (Exhibit 1). Any claim that the check could not be sent to Michael Kawa, Esq.'s address is negated by Government's actions in Purchase Order 0104, where the Government sent the check for payment to Michael Kawa, Esq.'s address, allowing Michael Kawa, Esq. to control the check and protect the interests of both parties to the escrow agreement.

**Count II -Third Party Beneficiary**

49. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein.

50. The Government, a party to Purchase Order 4191, evidenced an express intent to benefit Michael Kawa, Esq. by providing for the payment of $45,275.76 to Michael Kawa, Esq. in the Purchase Order and by providing that payment be sent directly to Michael Kawa, Esq. Michael Kawa, Esq. had a legal right to be paid this $45,275.76 under the express language within the four corners of Contract 4191 and had a legal right to receive payment. A separate

escrow agreement between Capital City, JGB and Michael Kawa, Esq. provided that under certain conditions, Michael Kawa, Esq. was to release these funds to JGB and Capital City.

51. This escrow agreement was suggested by DSCC Small Business Specialist Michael Taylor to provide protection for JGB, and allow delivery of the urgently needed hose assemblies. Pursuant to this agreement, on November 9, 1999, Capital City informed the Government that the Payees for Purchase Order 4191 should be Michael Kawa, Esq. and Capital City Pipes. This instruction caused "confusion" and Capital City followed up with communications on November 10 and 15, 1999, removing the reference to Capital City as payee, and naming Michael Kawa, Esq. as the sole payee. The Contracting Officer personally typed Michael Kawa, Esq.'s name and address into Purchase Order 4191, knowing that the check for payment would be sent to Michael Kawa, Esq.

52. Capital City Pipes, a party to Purchase Order 4191, expressly intended to benefit Michael Kawa, Esq., by providing that money due to Capital City under the Purchase Order be paid to Michael Kawa, Esq. and that the check be forwarded to him. Capital City wished to be the prime contractor on Purchase Order 4191, but they had no ability to produce the needed hose assemblies, and JGB was hesitant to work with them due to their history of non-payment. This dilemma was solved by an escrow agreement between JGB and Capital City, naming Michael Kawa, Esq. as escrow agent. Pursuant to this agreement, on November 9, 1999, Capital City requested that the payees in its proposal be changed to Michael Kawa, Esq. and Capital City. This instruction caused "confusion" and Capital City followed up with communications on November 10 and 15, 1999, removing the reference to Capital City as payee, and naming Michael Kawa Esq. as the sole payee. Capital City had not only asked for an address change, but also that the payee be changed to a new entity, i.e. Michael Kawa, Esq,

clearly showing an intention to benefit Michael Kawa, Esq. as well as an intent that Michael Kawa, Esq. receive any check that the Government issued.

53. The face of the Purchase Order objectively manifested an express intention to benefit Michael Kawa, Esq. Purchase Order 4191 evidenced an express intention to benefit Michael Kawa, Esq., by providing that the sum of $45, 275.76 was to be paid directly to Michael Kawa, Esq., and that the funds be sent to his Syracuse, New York, address. Nothing on the face of the Purchase Order even suggests that payment could be made to Capital City, and Capital City's name appears nowhere in the remittance clause of the Purchase Order. Nothing on the face of the Purchase Order suggests that the check be sent to the Capital City address, but only to Michael Kawa, Esq.'s address. The Purchase Order made clear that manufacturing, testing, and shipping were to be carried out by JGB in Liverpool New York, inspection and acceptance were to be carried out by DCMC Syracuse, and payment was to be made to Michael Kawa, Esq. and payment was to be sent to the Syracuse, New York, address, allowing Michael Kawa, Esq. to control the check.

54. Michael Kawa, Esq. reasonably relied upon the objective manifestation of the Government's express intent in Purchase Order 4191 that payment should be made only to Michael Kawa, Esq. In reasonable reliance upon this Purchase Order, deliveries of the hose assemblies were made to the Defendant by JGB, as called for by the Purchase Order. These items would never have been delivered if Michael Kawa had not been assured by the plain language of the Purchase Order that payment would be made to him and him alone. This delivery gave Michael Kawa, Esq. the right to collect the full contract price from the Defendant.

55. Defendant breached its express obligations to Plaintiff by failing to pay Plaintiff. Instead, it illegally sent funds to an entity and address not allowed by the Purchase

Order, and not named as a payee anywhere in the Purchase Order. No objective reading of the Purchase Order would allow payment to Capital City in Tallahassee, Florida. As stated in the affidavit of Lavern Reising, former Department of Defense Disbursing Officer, this payment was improper. (Exhibit 1). This improper payment has also prevented Michael Kawa, Esq. from turning over funds to Capital City's trustee in bankruptcy as required by law.

56. The Government ratified the assignment to Michael Kawa, Esq., by accepting the hose assemblies produced under a Purchase Order naming Michael Kawa, Esq. as payee, and by receiving ample notice of Michael Kawa Esq.'s status before making payment on Purchase Order 4191. Contracting Officer Moore delegated authority to the Administrative Contracting Officers in Florida to take any actions necessary to keep Purchase Order 4191 viable. Contracting Officer Bader was then notified that Michael Kawa, Esq. was an escrow agent and she did not object to payment being made to Michael Kawa, Esq. at the Syracuse, New York address. Also, another Purchase Order (0104) made in February 2000 named Michael Kawa, Esq. as payee, once again confirming his role. Nonetheless, payment was still made to Capital City, rather than Michael Kawa, Esq. As explained by the affidavit of Lavern Reising, this payment was improper. (Exhibit 1). As shown by the Government's actions under Purchase Order 0104, the Government was fully capable of sending payment to Michael Kawa, Esq.'s address, as called for by Purchase Order 4191.

**<u>Count III- Improper Alteration of Remittance Address</u>**

57. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein.

58. 10 U.S.C. § 2785 provides that remittance addresses may only be altered by request of the person to whom disbursement is authorized, and by an authorized officer or employee.

59. Michael Kawa, Esq. is the person to whom disbursement was authorized under Purchase Order 4191. Under Purchase Order 4191, signed November 24 1999, Michael Kawa Esq. was designated as the one and only authorized payee. This Purchase Order was signed by Contracting Officer Bocsy, who personally typed Michael Kawa, Esq.'s name and address into the Purchase Order, knowing that it would result in payment to Michael Kawa, Esq. In addition, Michael Kawa, Esq.'s Syracuse, New York, address was the only authorized address for payment under Purchase Order 4191.

60. Michael Kawa, Esq. never requested a change in remittance address or payee. At all times during performance of the Purchase Order, Michael Kawa, Esq. was the sole designated payee, and was never informed of any proper change of payee, prior to the illegal payment to Capital City.

61. Payment for Purchase Order 4191 was not sent to Michael Kawa, Esq. After full performance of the Contract by JGB, payment was illegally sent to Capital City, which was not and never was a named payee under Purchase Order 4191, nor the named recipient of the check. A change of address and payee was never properly made at any time, and payment to Capital City was completely unauthorized and without legal basis. As shown by the Government's remittance of a check to Michael Kawa, Esq. under Purchase Order 0104, any claim that payment could not be made to Michael Kawa, Esq. under Purchase Order 4191 is untrue.

**Count IV- Implied in Fact Contract**

62. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein.

63. Michael Kawa, Esq. intended to Contract with the Government. Michael Kawa, Esq. entered into an escrow agreement with JGB and Capital City, expecting that the Government would be notified of this agreement, and would write Michael Kawa, Esq. into to the Purchase Order. Michael Kawa, Esq. entered into this escrow agreement at the suggestion of the Government, who was attempting to gain urgently needed hose assemblies, which it apparently could not otherwise acquire.

64. The Government Contracting Officer intended to contract with Michael Kawa, Esq. To assure production of the urgently needed hose assemblies, the Government suggested that JGB enter into an escrow agreement with Capital City, whereby an escrow agent would be appointed to receive the funds directly from the Government and distribute them to JGB and Capital City. Pursuant to the plan orchestrated by the Government, Michael Kawa, Esq. agreed to serve as an escrow agent, making delivery of the much needed hose assemblies possible. Capital City first proposed to the Contracting Officer that both Capital City and Michael Kawa, Esq. be the recipient of funds and that the check would be sent to Michael Kawa, Esq.'s address in Syracuse, New York. Then after confusion was noted by the Contracting Officer, reference to Capital City was dropped and just Michael Kawa, Esq.'s name and address were used.

65. There was consideration: Michael Kawa, Esq. agreed to serve as an escrow agent, and the Contracting Officer agreed, in Purchase Order 4191, to forward $45,275.76 to Michael Kawa, Esq., and to send the check to the Syracuse, New York address. Additionally, shipment of the urgently needed hose assemblies to the Government was conditioned on making Michael Kawa, Esq. the payee under Purchase Order 4191. Michael Kawa, Esq. was indeed

made the proper payee under Purchase Order 4191, and the check was to be sent to the Syracuse New York address. Based upon this, the hose assemblies were duly shipped to the Government.

66. Offer and acceptance were unambiguous. Michael Kawa, Esq. offered his services in a written escrow agreement, prepared at the suggestion of Government officials. Contracting Officer Bocsy affirmatively acknowledged this obligation in writing by establishing the payee on Purchase Order 4191 as Michael Kawa, Esq., typing his name and address into the Purchase Order with the full knowledge that the check would be sent to Michael Kawa, Esq. The Contracting Officer who signed Purchase Order 4191 had full authority to bind the Government. As a reasonable person acquainted with the circumstances, Michael Kawa, Esq. read the plain language of the Purchase Order to indicate that he would be paid the full amount due.

67. The Government ratified the agreement with Michael Kawa, Esq**.** After this Purchase Order was signed, JGB produced hose assemblies as desired by the Government, and shipped the hose assemblies directly to the Government. The Government accepted these hose assemblies, after a long course of conduct showing that JGB only intended to provide the material on the condition that payment be made to Michael Kawa, Esq. Both Michael Kawa, Esq. and the Government operated as if a contract had been formed; the Contracting Officer wrote Michael Kawa, Esq. into Purchase Order 4191 and Michael Kawa, Esq. proceeded, confident in the knowledge that the Government had bound itself to pay him directly and to send the check directly to the Syracuse, New York address,

68. By the time of payment for Purchase Order 4191, two more Contracting Officers had received ample notice of the escrow agreement. Purchase Order 0104, signed on February 10, 2000, also named Michael Kawa, Esq. as payee. Contracting Officer Moore, in an

alert message dated March 24, 1999, authorized Administrative Contracting Officers to take any necessary contractual actions to preserve the viability of Purchase Order 4191. Contracting Officer Bader, at DCMC St. Petersburg, Florida, was then explicitly notified on April 5, 1999 that Michael Kawa, Esq. was an escrow agent, removing any possible confusion as to his role in any of the Contracts. Contracting Officer Moore also revealed in a memorandum dated April 12, 1999, that she was aware of possible escrow agreements to assure payment of Capital City's subcontractors. Nonetheless, payment was sent on April 24, 1999 directly to Capital City, who was not an authorized payee nor the proper address to send the check.

69. The Government breached its obligations under Purchase Order 4191. The Government accepted the deliveries made possible by Michael Kawa, Esq.'s services as escrow agent, and then failed to make payments to Michael Kawa, Esq. under the Purchase Order. As a result, Michael Kawa, Esq. has been damaged and is owed $45,275.76, which he is legally required to forward to JGB and Capital City's trustee in bankruptcy.

**Count V-The Purchase Order Directs Payment to Michael Kawa, Esq., and Directs that the Check be Sent to Michael Kawa, Esq.'s Address**

70. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein.

71. The Contracting Officer expressly named Michael Kawa, Esq. as payee in the Purchase Order, knowing and intending that payment be sent to Michael Kawa, Esq. In addition, the Purchase Order also requires the Government to send the check directly to the Syracuse, New York, address. Pursuant to the Government's own suggestion, Michael Kawa, Esq. was named as escrow agent in an agreement between JGB and Capital City, to facilitate the delivery of urgently needed hose assemblies that Capital City could not manufacture itself. Contracting

Officer Bocsy was notified on three occasions by Capital City that Michael Kawa, Esq. was to be payee under Purchase Order 4191 and that the check should be sent directly to Michael Kawa, Esq.'s address. Contracting Officer Bocsy, with authority to bind the Government, personally typed Michael Kawa, Esq.'s name into the Purchase Order, knowing that is would result in payment to Michael Kawa, Esq. The Contracting Officer also typed Michael Kawa, Esq.'s address into the purchase order with the intention that the check would be sent to the Syracuse, New York, address.

72. The act of placing Michael Kawa, Esq. into the Purchase Order as sole payee was an affirmative acknowledgement in writing of the Government's obligation to Michael Kawa, Esq. The act of placing the Syracuse, New York, address in Purchase Order 4191 acknowledges in writing the Government's obligation to Michael Kawa, Esq. to send payment to the Syracuse, New York, address. As recited above, the Contracting Officer personally typed Michael Kawa's name into the Purchase Order as the only authorized payee. This language was not susceptible to more than one meaning.

73. As a reasonable person acquainted with the circumstances, Michael Kawa, Esq. read the plain language of the Purchase Order to indicate that he would be paid the full amount due to JGB and that the check would be sent directly to him. In reliance on this Purchase Order, Michael Kawa Esq.'s client JGB proceeded to manufacture and ship hose assemblies to the Government. This material was shipped due to the plain and clear contract language specifying that Michael Kawa, Esq., and only Michael Kawa, Esq. would be paid the amounts due by the Government. If not for the reference to Michael Kawa, Esq. in the contract, JGB would have never dealt with Capital City, and the hose assemblies never would have been delivered to the Government.

74. The Government ratified the agreement to pay Michael Kawa Esq, by accepting the hose assemblies produced under the Purchase Order naming Michael Kawa, Esq. as Payee, and by receiving ample notice of Michael Kawa, Esq.'s status before making payment on Purchase Order 4191. In fact, on February 10, 2000, the Government even entered into another Purchase Order (0104) naming Michael Kawa, Esq. as payee. Then, Contracting Officer Moore delegated authority to the Administrative Contracting Officers in Clearwater, Florida, to take any actions necessary to keep Purchase Order 4191 viable. Contracting Officer Bader was then notified that Michael Kawa, Esq. was an escrow agent. Nonetheless, payment was still made to Capital City, rather than Michael Kawa, Esq. As explained by the affidavit of Lavern Reising, this payment was improper (Exhibit 1). The Government should have sent the check under Purchase Order 4191 to Michael Kawa, Esq.'s address as called for in the Purchase Order, as it actually did in Purchase Order 0104.

75. In the alternative, even if Michael Kawa, Esq. was not the payee under Purchase Order 4191, the Government had at least bound itself in the express language of Purchase Order 4191 to send the check to Michael Kawa, Esq.'s address, giving him the opportunity to control the check and to ensure that his clients were paid. In Purchase Order 0104, the check was actually sent to Michael Kawa, Esq., and he did control and hold the check. Just as in Purchase Order 0104, the express language of Purchase Order 4191 obligated the Government, at the very least, to send the physical check to Michael Kawa, Esq., so that he could hold and control the check. The Government has failed to perform this duty, instead sending an electronic payment to an unauthorized address and payee.

**<u>Count VI-Attorneys Fees and Cost</u>**

76. Plaintiff incorporates and re-alleges each of the above averments as if fully set forth herein

77. Plaintiff qualifies as a "party" within the meaning of the Equal Access to Justice Act 28 U.S.C. § 2412(d)(2)(B).

78. Defendant's position in this matter is not substantially justified.

79. Accordingly, Plaintiff is entitled to its costs and attorney fees incurred in the pursuit of this matter.

**WHEREFORE,** Plaintiff requests that the Court enter judgment against the Defendant in the amount of $45,275.76, plus interest and attorney fees and cost of bringing this action, or such other and further relief as the Court deems just and proper. Plaintiff further states that he is owed $43,987.50 plus applicable interest, attorney fees and cost. The remaining amount of $1,288.26, plus interest, will be remitted to Capital City by care of the bankruptcy trustee or bankruptcy court.

Dated: November 16, 2006

Respectfully submitted,

s/Joseph A. Camardo, Jr.
Joseph A. Camardo, Jr.
127 Genesee St.
Auburn, New York 13021
Tel: (315)-252-3846

1

February 17, 2006

ACKNOWLEDGEMENT

I, Lavern Reising, residing at 5775 Mountain Shadow View Black Forest, CO 80908, having served as a Disbursing Officer, an agent of the United States Treasury, for the Defense Finance and Accounting Service and the United States Army from 1983 thru 1996 consider myself to be an expert witness on Government payment procedures.

I have read Purchase Contract #SP0750-00-M-4191 and attached MIRP chronology sheet for this contract. Based on my expert opinion, the Government is obligated to remit payment under contract SP0750-00-M-4191 to Mike Kawa. When the Government administratively changed the "pay to" and sent the money to the Prime Contractor, Capital City Pipes, this was an erroneous or improper payment. There was no modification issued on this contract changing the "remit to" address. Therefore, payment must be made to Mike Kawa in accordance with the terms of the contract.

Signed 2-17-06 Date

State of CO )
) ss.:
County of EL PASO )

On the 17th day of FEB in the year 2006 before me, the undersigned, personally appeared LAVERN REISING personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument the individual or the person upon behalf of which the individual acted executed the instrument.

SUBSCRIBED AND SWORN BEFORE ME THIS 17th DAY OF FEB, 20 06

NOTARY - EL PASO COUNTY - COLORADO
MY COMMISSION EXPIRES 4/13/2009

JEREMIE R. MARILL NOTARY PUBLIC STATE OF COLORADO
My Commission Expires 04/13/2009