No. 06-448C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MICHAEL KAWA, ESQ.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS AND APPENDIX

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: 202-353-0546
Fax: 202-514-8640

December 19, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

DEFENDANT'S BRIEF . . . 1

STATEMENT OF THE ISSUES . . . 1

STATEMENT OF THE CASE . . . 2

I. Nature Of The Case . . . 2

II. Statement Of Facts . . . 2

SUMMARY OF ARGUMENT . . . 7

ARGUMENT . . . 8

I. Standard Of Review . . . 8

II. Mr. Kawa Does Not Possess Standing To Bring This Suit And Is Not The Real Party In Interest . . . 9

A. Mr. Kawa Cannot Meet The Requirements Of Constitutional Standing . . 9

B. The Court Should Dismiss Mr. Kawa's Claim For Prudential Reasons . 11

III. This Court Does Not Possess Jurisdiction To Entertain Mr. Kawa's Claim Pursuant To The Contract Disputes Act Because He Is Not A "Contractor" . . . 12

IV. This Court Does Not Possess Jurisdiction To Entertain Mr. Kawa's Claim Pursuant To The Tucker Act . . . 13

A. No Express Contract Between Mr. Kawa And The Government . . . 15

B. No Implied-In-Fact Contract Between Mr. Kawa And The Government . . . 15

C. Mr. Kawa Is Not A Third-Party Beneficiary . . . 17

D. There Was No Assignment To Mr. Kawa . . . 19

E. 10 U.S.C. § 2785 Is Not Money-Mandating . . . 21

V. Mr. Kawa Is Precluded From Bringing His Claim Pursuant To The Doctrine Of Res Judicata . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**


Aerojet-General Corp. v. Askew,
511 F.2d 710 (5th Cir. 1975) . . . . . . . . . . 23

Alaska v. United States,
32 Fed. Cl. 689 (1995) . . . . . . . . . . 8

Aldridge v. United States,
59 Fed. Cl. 387 (2004) . . . . . . . . . . 9, 11

Am. Forest Res. Council v. Shea,
172 F. Supp. 2d 24 (D. D.C. 2001) . . . . . . . . . . 24

Bailey v. United States,
54 Fed. Cl. 459 (2002) . . . . . . . . . . 8, 23

Baltimore & Ohio Railroad Co. v. United States,
261 U.S. 592 (1923) . . . . . . . . . . 15

Banco Bilbao Vizcaya v. United States,
48 Fed. Cl. 29 (2000) . . . . . . . . . . 20

Booth v. United States,
990 F.2d 617 (Fed. Cir. 1993) . . . . . . . . . . 8

Brunner v. United States,
70 Fed. Cl. 623 (2006) . . . . . . . . . . 17

Catellus Development Corp. v. United States,
31 Fed. Cl. 399 (1994) . . . . . . . . . . 9

City of Cincinnati v. United States,
153 F.3d 1375 (Fed. Cir. 1998) . . . . . . . . . . 16

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) . . . . . . . . . . 15, 16

Cromwell v. County of Sac,
94 U.S. 351 (1877) . . . . . . . . . . 23

D&H Distrib. Co. v. United States,

102 F.3d 542 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 12

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Gary v. United States,
67 Fed. Cl. 202 ( 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Glass v. United States,
258 F.3d 1349 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gollehon Farming v. United States,
207 F.3d 1373 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Hamlet v. United States,
63 F.3d 1097 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Henke v. United States,
60 F.3d 795 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Indium Corp. of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

JET, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

JGB Enterprises Inc. v. United States,
63 Fed. Cl. 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Maffia v. United States,
143 Ct. Cl. 198, 163 F. Supp. 859 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Montana v. United States,
124 F.3d 1269 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,
723 F.2d 1566 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

NAACP v. Hunt,
891 F.2d 1555 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Riviera Finance of Texas, Inc. v. United States,
58 Fed. Cl. 528 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tuftco v. United States,
222 Ct. Cl. 277, 614 F.2d 740 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tyus v. Schoemehl,
93 F.3d 449 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. ITT Rayonier, Inc.,
627 F.2d 996 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Newport News Shipbuilding & Dry Dock Co.,
933 F.2d 996 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

United States v, White Mountain Apache Tribe,
537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Wall Indus. Inc. v. United States,
15 Ct. Cl. 796 (1988), aff'd, 883 F.2d 1027 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 11

Willis v. Government Accountability Office,
448 F.3d 1341 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Young Engineers Inc. v. ITC,
721 F.2d 1305 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**STATUTES**

10 U.S.C. § 2785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. §1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

31 U.S.C. § 3727(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

41 U.S.C. §§ 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

41 U.S.C. § 601(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

41 U.S.C. § 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

41 U.S.C. § 602(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## INDEX TO THE APPENDIX


| Document | Page |
|---|---|
| Escrow Agreement dated November 10, 1999 | 1 |
| Letter from Capital City Pipes dated November 10, 1999 | 4 |
| Facsimile from Capital City Pipes dated November 15, 1999 | 5 |
| Purchase Order 4191 dated November 24, 1999 | 6 |
| FAR 52.252-2 (February 1998) | 13A |
| Final Decision dated January 13, 2006 | 17 |
| Facsimile from Capital City Pipes dated November 9, 1999 | 18 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, ESQ., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS**

Pursuant to Rule 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiff Michael Kawa's second amended complaint, because Mr. Kawa lacks standing to bring his claim, because this Court lacks jurisdiction to entertain his claim, and because Mr. Kawa is barred from bringing his claim pursuant to the doctrine of res judicata. In support of this motion, we rely upon the second amended complaint, this Court's decision in JGB Enterprises Inc. v. United States, 63 Fed. Cl. 319 (2004), the following brief and attached appendix.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether Mr. Kawa possesses standing to bring a claim for monies allegedly owed JGB Enterprises, Inc. under Purchase Order 4191.

2. Whether the Court possesses subject matter jurisdiction to entertain a claim by Mr. Kawa against the United States for amounts allegedly owed JGB Enterprises, Inc. under Purchase Order 4191.

3. Whether the doctrine of res judicata bars Mr. Kawa from bringing a claim for monies allegedly owed JGB Enterprises, Inc. under Purchase Order 4191.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Michael Kawa, Esq., is an attorney for JGB Enterprises, Inc. ("JGB"). JGB Enterprises, 63 Fed. Cl. at 325. Pursuant to an escrow agreement between prime contractor Capital City Pipes, Inc. ("Capital City") and subcontractor JGB, Mr. Kawa served as an escrow agent for receipt of payments due to Capital City for manufacture and delivery of hose assemblies pursuant to several contracts between the United States and Capital City. Second Am. Compl. ¶ 18, App. at 2. In his complaint, Mr. Kawa seeks the amount of money that was owed to JGB by Capital City for work performed under SP0750-00-M-4191 ("Purchase Order 4191" or "PO 4191").

This case is related to JGB Enterprises, Inc. v. United States, 63 Fed. Cl. 319 (2004). In that case, among other things, JGB sought monies owed for work performed under PO 4191 directly against the United States. Following trial, the Court found that JGB was not a third-party beneficiary of PO 4191 because the pre-award contracting officer for PO 4191, Lu Ann Bocsy, was not aware of Mr. Kawa's role as an escrow agent. 63 Fed. Cl. at 334-35. Accordingly, the Court entered judgment in favor of the Government upon JGB's PO 4191 claim.

### II. Statement Of Facts

In 1999, the Defense Supply Center Columbus ("DSCC"), which is part of the Defense Logistics Agency, issued several sole-source contracts and purchase orders to Capital City for

hose assemblies. JGB Enterprises, 63 Fed. Cl. at 323. Capital City subcontracted the work to JGB, who manufactured and delivered the hose assemblies to the Government. Id. By late October 1999, Capital City was indebted to JGB, and JGB became concerned that Capital City would not be able to satisfy its debts. Id. Small Business Specialist, Michael Taylor, suggested that an escrow agreement could resolve JGB's payment concerns. Second Am. Compl. ¶ 6; JGB Enterprises, 63 Fed. Cl. at 324.

On November 10, 1999, JGB entered into an escrow agreement with Capital City. Second Am. Compl. ¶ 7, App. at 1-3. Under this agreement, Capital City and JGB agreed to "take all steps and execute all documents as may be required to provide that future payments of money due to Capital City from DSCC . . . shall be payable to Michael E. Kawa, Esq., as the Escrow Agent . . . ." App. at 2. Mr. Kawa was required to deposit the monies into an escrow account and distribute payment to Capital City and JGB only upon a joint statement signed by both Capital City and JGB. Id. The DSCC was not a party to the escrow agreement. Id.

On November 9, 1999, Capital City sent a facsimile to the pre-award contracting officer for PO 4191, Ms. Lu Ann Bocsy, confirming Capital City's prior offer to provide hose assemblies and requesting that the payment remittance address be changed to:

Capital City Pipes, Inc.
Michael Kawa Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 17; App. at 18. On November 10, 1999, Capital City sent a letter to Ms. Bocsy, following up on the November 9 facsimile, confirming Capital City's prior offer to provide hose assemblies, and requesting that the payment remittance address be changed to:

Michael Kawa, Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 19; App. at 4. On November 15, 1999, Capital City again sent Ms. Bocsy another facsimile, apologizing for any confusion, and requesting that payment address be changed to:

Michael Kaka. Esq.
300 Crown Building
304 S Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 20; App. at 5. As this Court previously found, none of these letters gave any explanation for the requested change, did not inform Ms. Bocsy of the escrow agreement, and did not identify Mr. Kawa's relationship with JGB. JGB Enterprises, 63 Fed. Cl. at 325-26.

This Court found that Ms. Bocsy did not know that Mr. Kawa was an attorney for JGB or that he had been appointed as an escrow agent by Capital City and JGB. JGB Enterprises, 63 Fed. Cl. at 334. When Capital City requested that Ms. Bocsy change the remittance address, she assumed that Mr. Kawa was an employee of Capital City and did not ask why Capital City wanted the remittance address to be changed. JGB Enterprises, 63 Fed. Cl. at 326. The Court stated that: "Based on the limited information provided to CO Bocsy, there was no reason for her to know the motivation for the request or Mr. Kawa's relationship to JGB." JGB Enterprises, 63 Fed. Cl. at 334.

On November 24, 1999, Ms. Bocsy issued PO 4191 to Capital City in the amount of $45,275.76 for 306 hose assemblies. Second Am. Compl. ¶ 24; App. at 6. PO 4191 states in

relevant part:

REMIT PAYMENT TO:

Michael Kawa, Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

App. at 10. PO 4191 also incorporated clauses by reference pursuant to FAR 52.252-2. App. at 11-12. One such clause was FAR 52.232-33. App. at 13B. That clause provided that all payments by the Government would be made to the contractor by electronic fund transfer ("EFT") to the EFT information in the CCR database. App. at 14. That clause further provided: "In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the CCR database." Id.

On February 8, 2000, JGB shipped the hose assemblies for PO 4191 to Defense Department Depot. Second Am. Compl. ¶ 28; JGB Enterprises, 63 Fed. Cl. at 326. On April 24, 2000, the Government paid for the hose assembles under PO 4191 by electronic fund transfer directly into Capital City bank's account. Second Am. Compl. ¶ 37, JGB Enterprises, 63 Fed. Cl. at 32-37. Capital City did not pay JGB for the hose assemblies under PO 4191. JGB Enterprises, 63 Fed. Cl. at 327.

On November 18, 2005, after the Court entered judgment in favor of the Government upon JGB's claim relating to PO 4191, but before the Court denied JGB's subsequent Rule 60(b) motion relating to PO 4191, Mr. Kawa submitted a certified claim for $45,275.76 to the contracting officer. Second Am. Compl. ¶ 40. On January 13, 2006, Ms. Bocsy denied Mr. Kawa's claim. App. at 17. She stated in relevant part:

You were neither an assignee of funds nor a third party beneficiary

> under this purchase order, and you did not have an implied-in-fact contract with the government. The government awarded the purchase order to Capital City Pipes. When Capital City Pipes asked me to change the remittance address, I did not know nor have any reason to know about your relationship to JGB. I did not intend to assign payments to you, to establish a third-party beneficiary relationship with you, or to contract with you.

Id.

On June 8, 2006, Mr. Kawa filed a complaint in this Court against the United States seeking judgment for $45,275.76. Compl. Wherefore Clause. Mr. Kawa alleged that JGB was entitled to $43,987.50, and that the remaining $1,288.26 would be remitted to Capital City by care of a bankruptcy trustee. Id. Mr. Kawa alleged that he was entitled to judgment because the contract directed payment to him, there was an implied-in-fact contract between himself and the Government, he was a third-party beneficiary to PO 4191, and because he was assigned payments under PO 4191.

On August 18, 2006, the United States filed a motion to dismiss the complaint for lack of jurisdiction, for failure to state a claim upon which relief can be granted, and because Mr. Kawa is not the real party in interest. Instead of filing a response, on November 6, 2006, Mr. Kawa filed an amended complaint and, on November 17, 2006, filed an unopposed motion for leave to file a second amended complaint, which the Court granted.

In the second amended complaint, Mr. Kawa alleged that he is entitled to $43,987.50 in his own right and that he is not bringing the claim upon behalf of JGB. Second Am. Compl. Wherefore Clause. Mr. Kawa alleged additional facts in his second amended complaint, Second Am. Compl. ¶¶ 9-15, 17, 21-23, 25, 27, 29-30, 34-36, but curiously removed the allegation that he was a local attorney for JGB. Compare Compl. ¶7 with Second Am. Compl. ¶ 18. In the

second amended complaint, he made further allegations regarding why he was legally entitled to money. For example, he specifically alleges the elements of an implied-in-fact contract, Second Am. Compl. ¶ 63-66; he alleges that the Government ratified the implied-in-fact contract, Second Am. Compl. ¶ 67; and he alleges that Capital City provided notices of assignment to the Government, Second Am. Compl. ¶ 43. Mr. Kawa also added the allegation that he is entitled to money from the United States because the Government violated 10 U.S.C. § 2785. Second Am. Compl. ¶ 57-61.

## SUMMARY OF ARGUMENT

Despite Mr. Kawa's attempts to bolster his complaint from legal challenge by amending his allegations, the Court should dismiss Mr. Kawa's claim for three reasons. First and foremost, Mr. Kawa does not possess standing to assert his claim because he suffered no "injury in fact." Pursuant to the escrow agreement, Mr. Kawa was merely an agent designated to transfer any monies received by the Government to JGB and Capital City as directed. Mr. Kawa was not liable to pay JGB or Capital City any monies if he did not receive payment from the Government. It is evident that JGB is the real party in interest, not Mr. Kawa. JGB performed the work under PO 4191 and did not receive monies for work performed under PO 4191. JGB is the one who suffered an "injury in fact." Despite Mr. Kawa's amendment of the allegations in the Wherefore Clause that he, not JGB, is entitled to $43,987.50, Mr. Kawa is required under the terms of the escrow agreement to forward any payments received by the Government to JGB and Capital City.

Second, the Court does not possess jurisdiction to entertain Mr. Kawa's claim pursuant to the Contract Disputes Act or the Tucker Act. Mr. Kawa is not a "contractor" as defined by the

CDA nor is there any privity of contract between Mr. Kawa and the Government. Mr. Kawa, further, is not a third-party beneficiary to PO 4191, nor an assignee of rights or claims arising under PO 4191. Further, although Mr. Kawa alleges a violation of 10 U.S.C. § 2785, that provision is not money-mandating and does not provide a jurisdictional basis for this Court.

Third, pursuant to the doctrine of res judicata, Mr. Kawa is precluded from bringing his claim, which is essentially JGB's claim for monies allegedly owed under PO 4191. Under this doctrine, a judgment upon the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action. Bailey v. United States, 54 Fed. Cl. 459, 474 (2002). This Court's judgment in favor of the Government upon JGB's PO 4191 claim is also binding against Mr. Kawa, because he is representing JGB's interest in this action and does not possess an independent, substantive right to any monies under PO 4191.

## ARGUMENT

### I. Standard Of Review

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or upon appeal. Booth v. United States, 990 F.2d 617, 720 (Fed. Cir. 1993); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n. 1 (Fed. Cir. 1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995).

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189; see also Reynolds, 846 F.2d at 747; Catellus Development Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). This Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

## II. Mr. Kawa Does Not Possess Standing To Bring This Suit And Is Not The Real Party In Interest

### A. Mr. Kawa Cannot Meet The Requirements of Constitutional Standing

"A fundamental jurisdictional consideration for any federal court, including Article I courts, is whether the plaintiff has constitutional standing." Aldridge v. United States, 59 Fed. Cl. 387, 388 (2004) (citing Glass v. United States, 258 F.3d 1349, 1355-56 (Fed. Cir. 2001)). "Because Article III standing implicates the court's constitutional authority to adjudicate disputes, it can be neither waived, nor assumed; thus, federal courts have an independent obligation to examine Article III standing even if the issue was not raised by the parties or addressed in the decision below." Willis v. Government Accountability Office, 448 F.3d 1341, 1343-44 (Fed. Cir. 2006). "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." Myers Investigative and Security Services, Inc. v.

United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

As the Supreme Court stated, there are three irreducible elements that must be met to establish an actual "case or controversy":

> First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted). Mr. Kawa does not meet the constitutional standing requirement because he has not suffered a concrete and particularized injury in fact.

Despite two opportunities to amend the complaint, Mr. Kawa has not alleged any personal injury arising from the Government's failure to make payment owed under PO 4191 to him. Under the terms of the escrow agreement, Mr. Kawa was required to forward any payments received by the Government to JGB and Capital City as directed. Second Am. Compl. ¶ 18; App. at 2. Where the Government did not send him any payment, Mr. Kawa was not liable to JGB or Capital City under the escrow agreement. Indeed, the escrow agreement specifically protected Mr. Kawa from any liability arising from his role as the escrow agent except for gross negligence or willful misconduct. Paragraph 4 of the agreement states:

> J.G.B. and Capital City agree and acknowledge that the Escrow Agent assumes no liability in connection with this Agreement except for gross negligence or willful misconduct . . . and that the

> Escrow Agent shall be fully protected, indemnified and held harmless in an against any action taken by him in good faith in accordance with the terms of this Escrow Agreement.

Id. Accordingly, whether the Government paid Mr. Kawa or not, he has not suffered any injury in fact and, therefore, does not have standing to bring a claim against the Government.

B. The Court Should Dismiss Mr. Kawa's Claim For Prudential Reasons

In addition to constitutional considerations, standing implicates concerns that are prudential in nature. "[P]rudential considerations call for the courts to limit access to those litigants best suited to assert a claim." Aldridge, 59 Fed. Cl. at 389. For example, the "judiciary should refrain from deciding issues involving: 1) mere generalized grievances; 2) litigants who are not 'within the zone of interest to be protected or regulated'; and 3) plaintiffs who fail to assert their own legal rights rather than those of third parties." Id. at 390. Indeed, RCFC 17 (a) provides that "[e]very action shall be prosecuted in the name of the real party in interest." The "real party in interest" to an action is defined by RCFC 17(a) as "the party that possesses the substantive right under which the suit is brought." Wall Indus. Inc. v. United States, 15 Ct. Cl. 796, 803 (1988), aff'd, 883 F.2d 1027 (Fed. Cir. 1989).

Here, this Court should refrain from entertaining Mr. Kawa's claim because he is not asserting his own legal rights but rather attempting to obtain monies allegedly owed by the Government to JGB. This Court previously considered JGB's claim against the Government under PO 4191 and rejected it after full and thorough consideration. JGB Enterprises, 63 Fed. Cl. at 334-35. There is no reason why this Court should revisit the same issues again. As we demonstrated below, Mr. Kawa does not have any independent substantive right to monies under PO 4191. See supra at 14-21. Accordingly, Mr. Kawa is not the real party in interest.

RCFC 17 (a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest." It is unnecessary here, however, to wait for ratification of the action by the real party in interest. The real party in interest is JGB, and JGB has already fully pursued its PO 4191 claim against the Government. JGB Enterprises, 63 Fed. Cl. at 334-35.

III. This Court Does Not Possess Jurisdiction To Entertain Mr. Kawa's Claim Pursuant To The Contract Disputes Act Because He Is Not A "Contractor"

Mr. Kawa alleges that this Court possesses jurisdiction to entertain his claim pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq. Second Am. Compl. ¶ 4. Because he is not a "contractor," the CDA does not provide this Court jurisdiction.

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984). Its jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. Testan, 424 U.S. at 399; Sherwood, 312 U.S. at 586.

The CDA applies to "any express or implied contract . . . entered into by an executive agency for - (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." 41 U.S.C. § 602(a). Although the CDA

applies to PO 4191, the CDA provides that only a contractor may appeal the decision of a contracting officer. JGB Enterprises, 63 Fed. Cl. at 331 (citing 41 U.S.C. §§ 609(a)(1), 605(a)). The CDA defines the term “contractor” as “a party to a government contract other than the Government.” 41 U.S.C. § 601(4). The contractor to PO 4191 is Capital City – not JGB – and not Mr. Kawa. App. at 6. The mere fact that Mr. Kawa’s name appears in the remittance address does not make him a party to PO 4191. Even if Mr. Kawa could be considered a third-party beneficiary to PO 4191, he is not a “contractor” for purposes of the CDA. See JGB Enterprises, 63 Fed. Cl. 330-31 (holding that JGB was not a “contractor” for purposes of the CDA). Because he is not a contractor, Mr. Kawa cannot rely upon the CDA as the jurisdictional basis for his complaint in this Court.

IV. This Court Does Not Possess Jurisdiction To Entertain Mr. Kawa’s Claim Pursuant To The Tucker Act

Mr. Kawa also alleges that this Court possesses jurisdiction to entertain his claim pursuant to the Tucker Act, 28 U.S.C. § 1491. Second Am. Compl. ¶ 4. The Tucker Act waives sovereign immunity for actions "founded either upon the Constitution, or any Act of Congress or any regulation of any executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §1491(a)(1). The Tucker Act, however, is “only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.” Testan, 424 U.S. at 398. Thus, “in order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States.” James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1999) (quoting Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir. 1995)).

In Fisher v. United States, 402 F.3d 1167, 1171-73 (Fed. Cir. 2005), the United States Court of Appeals for the Federal Circuit overruled en banc its prior holding in Gollehon Farming v. United States, 207 F.3d 1373, 1378-80 (Fed. Cir. 2000), that the determination of whether a source is money-mandating is a two-step process. The court of appeals held that "[f]or purposes of the case before the trial court, the determination that the source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action." Fisher, 402 F.3d at 1173. "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal–the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." Id.

Mr. Kawa relies upon five different theories in support of his claim that he is entitled to recover money from the Government. First, he alleges that there was an express contract between himself and the Government. Second Am. Compl. ¶¶ 70-75. Second, he alleges that there was an implied-in-fact contract between himself and the Government. Second Am. Compl. ¶¶ 62-69. Third, he alleges that he was a third-party beneficiary to the PO 4191. Second Am. Compl. ¶¶ 49-56. Fourth, he alleges that he was assigned payments under PO 4191. Second Am. Compl. ¶¶ 42-48. Fifth, he alleges that he is entitled to money because the Government improperly altered the remittance address in violation of 10 U.S.C. § 2785. Second Am. Compl. ¶¶ 57-61. As we demonstrate below, none of Mr. Kawa's theories have any merit. Accordingly, this Court should dismiss Mr. Kawa's amended complaint for lack of jurisdiction.

A. No Express Contract Between Mr. Kawa And The Government

Mr. Kawa alleges in his complaint that the Government breached PO 4191 because the contract directed payment to Mr. Kawa. Second Am. Compl. ¶ 70-75. PO 4191 was a contract between the Government and Capital City. Second Am. Compl. ¶ 24. Although Mr. Kawa was listed in the remittance address of PO 4191, the Government did not contract with Mr. Kawa. Based upon nothing more than the plain language of the remittance clause, a reasonable person would presume that Mr. Kawa was a representative designated to receive payments upon behalf of Capital City. Indeed, Ms. Bocsy, the contracting officer who issued PO 4191, did not know that Mr. Kawa was an attorney for JGB who had been designated an escrow agent to receive payments to be made to JGB. JGB Enterprises, 63 Fed. Cl. at 326. Instead, she reasonably assumed that Mr. Kawa was an employee of Capital City designated to receive payment for his employer. Id.

B. No Implied-In-Fact Contract Between Mr. Kawa And The Government

For an implied-in-fact contract to exist, the contract must be "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." Baltimore & Ohio Railroad Co. v. United States, 261 U.S. 592, 597 (1923). The requirements for an implied-in-fact contract, like an express contract, are: "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). For contracts with the Government, the "government representative whose conduct is relied upon must have actual

authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (citing City of El Centro, 922 F.2d at 820).

Mr. Kawa alleges in his complaint that there was an implied-in-fact contract between himself and the Government. Second Am. Compl. ¶¶ 62-69. Mr. Kawa alleges that the contracting officer intended to contract with him. Second Am. Compl. ¶ 64. Mr. Kawa's allegation that Ms. Bocsy intended to contract with Mr. Kawa, however, is erroneous and contrary to this Court's decision in JGB Enterprises. As this Court previously found after trial, Ms. Bocsy assumed that Mr. Kawa was an employee of Capital City and did not know that he was an attorney for subcontractor JGB or that he had been designated as the escrow agent. JGB Enterprises, 63 Fed. Cl. at 326. CO Bocsy, therefore, never intended to contract with anyone besides the prime contractor Capital City. Although Ms. Moore knew about JGB's non-payment problems and JGB's efforts to obtain assurance of payment through the escrow agreement and modification of the contracts, she did not become involved in administering PO 4191 until after the remittance address was changed. JGB Enterprises, 63 Fed. Cl. at 327.

Furthermore, contrary to Mr. Kawa's allegations, there is no offer, acceptance or consideration that would support an implied-in-fact contract between the Mr. Kawa and the Government. Mr. Kawa alleges that his offer of services in the written escrow agreement constituted an offer to the Government, that Ms. Bocsy typing his name and address into the PO 4191 constituted acceptance by the Government, and that consideration was Mr. Kawa's agreement to serve as an escrow agent. Second Am. Compl. ¶¶ 65-66. Mr. Kawa's allegations, however, do not support an implied-in-fact contract between Mr. Kawa and the Government,

because the escrow agreement was a contract between Capital City and JGB, and because Ms. Bocsy, the contracting officer at the time, was not aware of the escrow agreement.

Mr. Kawa further alleges that, in any event, the Government ratified an implied-in-fact contract with Mr. Kawa by accepting the hose assemblies. Second Am. Compl. ¶ 67.

To demonstrate ratification, Mr. Kawa must show that "(1) the government received a benefit from plaintiff's activities; and (2) government officials who had authority to contract had knowledge of the contract and accepted plaintiff's offer." Brunner v. United States, 70 Fed. Cl. 623, 646 (2006) (omitting internal citations); see also Gary v. United States, 67 Fed. Cl. 202, 216 ( 2005). Mr. Kawa cannot demonstrate that the Government ratified an implied–in-fact contract with him, because the Government did not receive any benefits from Mr. Kawa. Pursuant to PO 4191, the Government was entitled to delivery of the hose assemblies and accepted those hose assemblies for which it had bargained with Capital City. Acceptance of the hose assemblies, therefore, does not demonstrate any intent to ratify an implied-in-fact contract with Mr. Kawa. By accepting the hose assemblies, the Government intended only to fulfill the parties' obligations under PO 4191.

C. Mr. Kawa Is Not A Third-Party Beneficiary

Mr. Kawa is not a third-party beneficiary to PO 4191. In very limited circumstances, this Court has permitted a third-party beneficiary of a contract to bring suit upon the contract. See Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention benefit the party directly." Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1259 (Fed. Cir. 2005). "[T]he intended

beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." Id. at 1260 (quoting Montana, 124 F.3d at 1273). "In short, it is sufficient to ask in a typical case 'whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him.'" Id.

Mr. Kawa is not a third-party beneficiary to PO 4191 because Ms. Bocsy did not expressly or impliedly intend to benefit him. This Court in JGB Enterprises, 63 Fed. Cl. at 335, found that JGB was not a third-party beneficiary to PO 4191 because Ms. Bocsy was not aware of the non-payment problem, was not aware of the purpose of changing the remittance address, and was not aware of Mr. Kawa's relationship to JGB. Likewise, Mr Kawa is not a third-party beneficiary to PO 4191, because Ms. Bocsy was not aware of the non-payment problem, was not aware of the purpose of changing the remittance address, and was not aware of Mr. Kawa's relationship to JGB.

Capital City sent two letters to Ms. Bocsy requesting that the remittance address be changed to Mr. Kawa. App. at 4-5; JGB Enterprises, 63 Fed. Cl. at 334. Neither of these letters explained to Ms. Bocsy the purpose of the request nor Mr. Kawa's relationship to JGB. Id. Because neither JGB nor Capital City informed Ms. Bocsy of the purpose of the change in the remittance address, Ms. Bocsy reasonably assumed that Mr. Kawa was an employee of Capital City and that he had been designated to receive payments on behalf of Capital City. JGB Enterprises, 63 Fed. Cl. at 335. Indeed, Ms. Bocsy's assumption was reasonable given Capital City's November 9 facsimile listing requesting that the remittance address be changed to:

Capital City Pipes, Inc.
Michael Kawa, Esq.

300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

App. at 18.

Mr. Kawa further alleges that he reasonably relied upon the "the objective manifestation of the Government's express intent in Purchase Order 4191 that payment should be made only to [him]." Second Am. Compl. ¶ 54. Mr. Kawa's reliance, however, was not reasonable when he failed to explain to Ms. Bocsy who he was, what his relationship with JGB was, and why the remittance address was being revised. Mr. Kawa's reliance upon the remittance address, further, was not reasonable given FAR 52.232-33, which was incorporated into the contract by reference and stated that payment would be made to the EFT information contained in the CCR system, and that it was the contractor's responsibility to provide the correct EFT information. App. at 14. FAR 52.232-33, further, disclaimed any liability upon the part of the Government for erroneous payment when the EFT information in the CCR system was incorrect. Id. Accordingly, Mr. Kawa did not reasonably rely upon the remittance address, and he is not a third-party beneficiary to PO 4191.

D. There Was No Assignment To Mr. Kawa

The Assignment of Contracts Act prohibits the assignment of a Government contract to a third party except when "moneys due or to become due . . . are assigned to a bank, trust company, or other financing institution, including any Federal lending agency." 41 U.S.C. §§ 15(a) and (b). The Assignment of Claims Act generally prohibits the assignment of any part of a claim against the Government. 31 U.S.C. § 3727(b). A valid assignment "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of

the claim has been issued." Id. Mr. Kawa admits that he was not assigned any claim or rights pursuant to these anti-assignment statutes, but alleges, nonetheless, that the Capital City assigned payments to him and that the Government had waived any technical defects in that assignment. Second Am. Compl. ¶ 45.

Courts have recognized that, "[d]espite the bar of the Anti-assignment statute . . . the Government, if it chooses to do so, may recognize an assignment." Tuftco Corp. v. United States, 222 Ct. Cl. 277, 614 F.2d 740, 744-45 (1980) (quoting Maffia v. United States, 143 Ct. Cl. 198, 204, 163 F. Supp. 859, 862 (1958)); see also D&H Distrib. Co. v. United States, 102 F.3d 542, 546 (Fed. Cir. 1996) ("It is well-established, however, that the Government can waive the statutory prohibitions against the assignment of contract rights if the contracting officer gives clear consent to the assignment."). Courts examine the "totality of circumstances" to determine whether the Government has chosen to recognize an assignment, including whether: "(1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment." Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528, 580 (2003) (citing Tuftco, 614 F.2d 745-46). "At bottom, the purported assignee must show an affirmative manifestation of the 'meeting of the minds' between the assignee and the government, sufficient to satisfy the standard measure of assent in contract law." Banco Bilbao Vizcaya v. United States, 48 Fed. Cl. 29, 34 (2000).

Mr. Kawa alleges that Capital City gave Ms. Bocsy multiple notices of assignment, Second Am. Compl. ¶ 43, and that Ms. Bocsy recognized the assignment by typing his name and

address into the remittance clause. Second Am. Compl. ¶ 44. Contrary to his allegation, however, Capital City never provided Mc. Bocsy any notice of assignment. Rather, Capital City sent three letters to Ms. Bocsy requesting that she modify the remittance address. App. at 4-5, 18. These letters did not identify Mr. Kawa as anyone other than a representative for Capital City. Id. Ms. Bocsy, therefore, did not know that Mr. Kawa was JGB's attorney serving as an escrow agent responsible for forwarding any payments received by the Government to JGB and Capital City. JGB Enterprises, 63 Fed. Cl. at 334. Accordingly, there was no "meeting of the minds" between Capital City, JGB, Mr. Kawa and the Government regarding any assignment of payments under PO 4191.

E. 10 U.S.C. § 2785 Is Not Money-Mandating

In his second amended complaint, Mr. Kawa contends that he is entitled to money because the Government violated 10 U.S.C. § 2785. Second Am. Compl. at ¶¶ 57-61. Section 2785 was enacted into law on October 5, 1999 and states in relevant part:

> The Secretary of Defense . . . shall prescribe regulations setting forth controls on alteration of remittance addresses. Those regulations shall ensure that –
> (1) a remittance address for a disbursement that is provided by an officer or employee of the Department of Defense authorizing or requesting the disbursement is not altered by any officer or employee of the department authorized to prepare the disbursement; and
> (2) a remittance address for a disbursement is altered only if the alteration –
> (A) is requested by the person to whom the disbursement is authorized to be remitted; and
>
> (B) is made by an officer or employee authorized to do so who is not an officer or employee referred to in paragraph (1).

10 U.S.C. § 2785. Even assuming that the Government did violate 10 U.S.C. § 2785, Mr. Kawa is not entitled to any money damages pursuant to section 2785.

For decades, the Supreme Court had stated that a "statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (quoting Mitchell v. United States, 463 U.S. at 217)). The Supreme Court recently stated in United States v, White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003), that "[i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' . . . a fair inference will do." Since that statement, there has been confusion about whether White Mountain altered the Mitchell test. Fisher, 402 F.3d at 1174.

In any event, for the purpose of this case, under either the new or old formulation, 10 U.S.C. § 2785 is not money-mandating. No fair inference can be drawn from section 2785 that the Government must pay money for failing to prescribe regulations setting forth controls on alteration of remittance addresses, or for improperly altering remittance addresses in violation of the statute and implementing regulation. Because Mr. Kawa has failed to establish that he is entitled to money from the Government under any contract, statute, or regulation, this Court does not possess jurisdiction to entertain his claim.

V. Mr. Kawa Is Precluded From Bringing His Claim Pursuant To The Doctrine Of Res Judicata

In addition, Mr. Kawa's claim is barred by the doctrine of res judicata. Res judicata, or claim preclusion, is the well-established doctrine that "provides that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Bailey v. United States, 54 Fed. Cl. 459, 474 (Fed. Cl. 2002) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)). Essentially, res judicata prevents plaintiffs and their privies "from asserting the same transactional facts under different cause of action." Young Engineers Inc. v. ITC, 721 F.2d 1305, 1314 (Fed. Cir. 1983). Res judicata applies "not only as to every matter which was offered and received to sustain or defeat [a plaintiff's previous] claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 (1877).

Res judicata applies when: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (2) the second claim is based on the same set of transactional facts as the first." JET, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000). A plaintiff is a "privy" to a party who brought an earlier suit when the party to the original suit "is so closely aligned with the non-party [plaintiff's] interests as to be its virtual representative." Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1572 (Fed. Cir. 1983) (finding that issue preclusion applied to a plaintiff when the plaintiff was virtually represented in previous litigation); see also Tyus v. Schoemehl, 93 F.3d 449, 455-58 (8th Cir. 1996); NAACP v. Hunt, 891 F.2d 1555, 1560-61 (11th Cir. 1990); United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980); Aerojet-General Corp. v. Askew, 511 F.2d

710, 719 (5th Cir. 1975); Am. Forest Res. Council v. Shea, 172 F. Supp. 2d 24, 30-34 (D. D.C. 2001).

Mr. Kawa's claim is barred by the doctrine of res judicata because all three elements are met here. First, Mr. Kawa is a privy of JGB. Mr. Kawa previously represented JGB in his capacity as an attorney and was designated as an escrow agent under an escrow agreement, which was designed to provide greater assurance of payment to JGB. Mr. Kawa does not have any personal interest in receiving funds from the Government under PO 4191 and has no independent substantive right to monies against the Government under PO 4191. Although Mr. Kawa has re-phrased the Wherefore Clause in the second amended complaint to allege that he is entitled to $43,987.50, this amount must be forwarded to JGB pursuant to the escrow agreement. App. at 2.

Second, there has been a final judgment upon the merits upon JGB's PO 4191 claim. In JGB Enterprises, 63 Fed. Cl. at 334-35, this Court held that JGB was not a third-party beneficiary to PO 4191, and therefore could not recover $43,987.50 from the Government. Third, it is evident that Mr. Kawa's claim arises out of the "same set of transactional facts" as JGB's PO 4191 claim. They both involve JGB's non-payment problem, the escrow agreement entered into by Capital City and JGB to address that problem, the modification of the remittance address to Mr. Kawa under PO 4191, and the Government's electronic payment of monies under PO 4191 to Capital City. Compare Second Am. Compl. ¶¶ 16-37 with JGB Enterprises, 63 Fed. Cl. at 326-27. Because the Court has already considered these facts in issuing its final decision in favor of the Government upon JGB's PO 4191, Mr. Kawa should not be permitted to re-litigate JGB's claim for JGB's sole benefit.

CONCLUSION

For the reasons stated above, we respectfully request that the Court dismiss Mr. Kawa's claim, because Mr. Kawa does not possess standing to bring his claim, this Court does not possess jurisdiction to entertain his claim, and because Mr. Kawa is barred from bringing his claim pursuant to the doctrine of res judicata.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Franklin E. White

FRANKLIN E. WHITE, JR.
Assistant Director

s/ Nancy M. Kim

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0546
Fax: (202) 514-8640

December 19, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 19, 2006, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Nancy M. Kim