No. 06-448C
(Judge George W. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MICHAEL KAWA

Plaintiff,

v.

UNITED STATED,

Defendant.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS

JOSEPH A. CAMARDO, JR.
127 Genesee Street
Auburn, NY 13021
Tel: (315) 252-3846
Fax: (315) 252-3508

Attorney for Plaintiff

# TABLE OF CONTENTS


| | PAGE |
|---|---|
| PLAINTIFF'S BRIEF | 1 |
| STATEMENT OF THE ISSUES | 1 |
| STATEMENT OF THE CASE | 2 |
| I. Nature of the Case | 2 |
| II. Statement of Facts | 3 |
| SUMMARY OF ARGUMENT | 11 |
| ARGUMENT | 12 |
| I. Standard of Review | 12 |
| II. Mr. Kawa Does Have Standing | 17 |
| A. Mr. Kawa meets the Requirements for Constitutional Standing | 17 |
| B. The Court Should Not Dismiss Mr. Kawa's Claim for Prudential Reasons | 20 |
| III. The Court does possess Jurisdiction to Entertain Mr. Kawa's Claim pursuant to the Contract Disputes Act | 22 |
| IV. The Court does possesses Jurisdiction to Entertain Mr. Kawa's Claim pursuant to the Tucker Act. | 23 |
| A. There was an Express Contract between Mr. Kawa and the Government | 23 |
| B. There was an Implied in Fact Contract Between Mr. Kawa and the Government | 24 |
| C. Mr. Kawa is a Third Party Beneficiary | 25 |
| D. There was an Assignment to Mr. Kawa | 29 |
| E. 10 U.S.C. § 2785 is Money Mandating | 31 |

| | | |
|---|---|---|
| V. | The Assignment of Claim Act is an Independent Basis of Jurisdiction | 33. |
| VI. | <u>Res</u> <u>Judicata</u> and Issue Preclusion do not Apply | 34 |
| CONCLUSION | | 40 |

# TABLE OF AUTHORITIES

**CASES** **PAGES(s)**


| | |
|---|---|
| Aaron v. US. 65 Fed. Cl. 29 (2005) | 18 |
| Alaska v. United States, 32 Fed. Cl. 689 (1995) | 13 |
| Albright v. Oliver, 510 U.S. 266 (1994) | 16, 17 |
| Appeal of Floorpro, Inc. 04-1 BCA ¶ 32571, ASBCA No. 54143 (2004) | 28, 29 |
| Bailey v. United States 54 Fed. Cl. 459 (2002) | 38 |
| Bittinger v. Tecumseh Products Company, 123 F.3d 877 (6th Cir. 1997) | 37, 38 |
| Bituminous Coal Operator's Assoc. Inc. v. Connors, 867 F.2d 625 (D.C. Cir. 1989) | 19 |
| Bell v. Hood, 327 U.S. 678 (1946) | 14 |
| Canadyne-Georgia Corp. v. NationsBank, N.A. (South), 183 F.3d 1269 (11th Cir.1999) | 17 |
| Carpenter's Health and Welfare Trust Fund for California v. Bla-Delco Const., Inc., 8 F.3d 1365 (9th Cir. 1993) | 19 |
| Catellus Development Corp. v. United States, 31 Fed. Cl. 399 (1994) | 13 |
| Chaudhary v. Stevens, 2005 WL 1923231 (E.D. Va.) | 39 |
| City of El Centro v. United States, 922 F.2d 816 (Fed. Cir. 1990) | 24 |
| Erikson v. United States, 12 Cl.Ct. 754 (1987) | 26 |
| Firestone Tire & Rubber Co. v. United States, 195 Ct.Cl. 21 (1971) | 27 |
| Fischer v. United States 402 F.3d 1167 (Fed. Cir. 2005) | 32 |
| Flexfab, LLC v. United States, 62 Fed.Cl. 139 (2004) | 26 |
| Florida Power & Light Co. v. United States, 41 Fed. Cl. 477 (1998) | 37 |
| Frank & Breslow, LLP v. United States, 43 Fed.Cl. 65 (1999) | 27 |
| Guardsman Elevator Co., Inc., v. United States, 50 Fed. Cl. 577 (2001) | 13 |

Hebah v. United States, 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970) 26

Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. 1985) 14

ITT Arctic Servs., Inc. v. United States, 207 Ct.Cl. 743 (1975) 27

Japan Whaling Assoc. v. American Cetacean Society, 478 U.S. 221 (1986) 20

JET Inc., v. Sewage Aeration Systems, 223 F.3d 1566 (Fed. Cir. 1983) 38

JGB Enterprises Inc. v. United States, 63 Fed. Cl. 319 (2004) passim

Lasalle Bank National Association v. Nomura Asset Capital Corp 180 F.Supp.2d 465 (S.D.N.Y 2001) 19

Lujan v. Defenders of Wildlife 504 U.S. 555 (1992) 19, 20

Maneely v. United States, 68 Ct.Cl. 623 (1929) 26

Martin v. American Bancorporation Retirement Plan 407 F.3d 643 (4th Cir. 2005) 39

Mason v. US, 198 Ct. Cl. 599 (1972) 18, 20

Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1997) 26, 28

Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566 (Fed. Cir. 1983) 35, 36, 37

McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936) 13

Northwest Bank v. U.S. 37 Fed. Cl. 605 (1997) 22

Perri v. United States, 340 F.3d 1337 (Fed.Cir.2003) 32

Phonometrics, Inc. v. Hospitality Franchise Systems, Inc. 203 F.3d 790 (Fed. Cir. 2000) 17

Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1988) 13, 14, 15

Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528 (2003) 29, 30, 34

Samish Indian Nation v. United States, 419 F.3d 1355 (Fed. Cl. 2005) 32

Scarfo v. Ginsberg 175 F.3d 957 (11th Cir., 1999) 15

Scheuer v. Rhodes, 416 U.S. 232 (1974). 12, 17, 23

Schneider Moving & Storage Company v. Robbins, 466 U.S. 364 (1984) 19

Sizova v. National Institute of Standards and Technology, 282 F.3d 1320 (10th Cir, 2002) 15

Spruill v. Merit Systems Protection Board 978 F.2d 679 (Fed. Cir. 1992) 13, 14

Sullivan v. Potter 2006 WL 785289 (D.D.C., 2006) 37

Summerfield Housing v. U. S., 42 Fed.Cl. 160 (1998) 27

Thomas Funding Corp. v. U.S., 15 Cl. Ct. 495 (1988) 34

Total Medical Management, Inc. v. United States, 29 Fed. Cl. 296 (1993) 13, 14

Tuftco Corp. v. United States, 222 Ct.Cl. 277 (1980) 29

Twin City Shipyard, Inc. v. U.S., 21 Cl. Ct. 582 (1990) 34

Tyus v. Schoemehl 93 F.3d 499 (8th Cir, 1996) 38

United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942 (7th Cir. 2003) 14

Wheeler v. Hurdman, 825 F.2d 257 (10th Cir, 1987) 15

United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003) 31, 32, 33

Willamson v. Tucker, 645 F.2d 404 (5th Cir. 1981) 15, 16


**STATUTES**


Assignment of Claims Act 31 U.S.C. § 3727 passim

Contract Disputes Act, 41 U.S.C. § 602(a) passim

Tucker Act, 28 U.S.C. § 1491(a)(1) passim

FAR 52.232-33 28, 29

10 U.S.C. § 2785 passim

# INDEX TO THE APPENDIX


| DOCUMENT | | PAGE(s) |
|---|---|---|
| 1. | Letter from SBA to Mr. Taylor dated May 6, 1999 | 1 |
| 2. | Quotation from JGB rejected by DSCC due to 8(a) set aside | 2-12 |
| 3. | Request for quote from Contracting Officer Bocsy to Capital City | 13-24 |
| 4. | Record of Conversation between Contracting Officer Bocsy and Thelma Williams of Capital City dated June 15, 1999 | 25 |
| 5. | Letter from Capital City to Contracting Officer Bocsy dated June 18, 1999 | 26 |
| 6. | Letter from Capital City to Contracting Officer Bocsy dated June 23, 1999 | 27 |
| 7. | Letter from Capital City to Contracting Officer Bocsy dated June 23, 1999 | 28 |
| 8. | Letter from Capital City to Contracting Officer Bocsy dated July 8, 1999 | 29 |
| 9. | DSCC inter-office memorandum dated July 15, 1999 | 30 |
| 10. | Letter from Capital City to Contracting Officer Bocsy dated September 20, 1999 | 31 |
| 11. | Letter from Capital City to Contracting Officer Bocsy dated September 24, 1999 | 32 |
| 12. | Letter from Contracting Officer Mathews to Capital City dated November 2, 1999 | 33 |
| 13. | Letter from JGB to Michael Taylor dated October 27, 1999 | 34-35 |
| 14. | Fax from Capital City to Contracting Officer Bocsy dated November 9, 1999 | 36 |
| 15. | Escrow agreement dated November 10, 1999 | 37-38 |
| 16. | Letter from Capital City to Contracting Officer Bocsy dated November 10, 1999 | 39 |
| 17. | Fax from Capital City to Contracting Officer Bocsy dated November 15, 1999 | 40 |

| | | |
|---|---|---|
| 18. | Record of Conversation between Contracting Officer Bocsy and Thelma Williams of Capital City dated November 16, 1999 | 41 |
| 19. | Purchase Order 4191 dated November 24, 1999 | 42-50 |
| 20. | Purchase Order 0104 | 51-55 |
| 21. | "Alert" message sent by Contracting Officer Moore dated March 24, 2000 | 56-58 |
| 22. | Letter from Capital City to Kathy M. Bader dated April 5, 2000 | 59 |
| 23. | Record of Conversation between Contracting Officer Moore and Thelma Williams of Capital City dated April 12, 2000 | 60-61 |
| 24. | Final Decision of Contracting Officer Bocsy | 62 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448 |
| | ) | |
| THE UNITED STATES, | ) | (Judge George W. Miller ) |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Michael Kawa hereby opposes Defendant's motion to dismiss Plaintiff's second amended complaint, filed pursuant to RCFC 12(b)(1) and 12(b)(6). As will be shown, the Court has jurisdiction under the Contract Disputes Act and the Tucker Act, as well as an independent basis for jurisdiction under the Assignment of Claims Act. The Court should note that in its supplemental motion to dismiss, the Government fails to address the question of jurisdiction under the Assignment of Claims Act, only addressing the issue under the heading of Tucker Act jurisdiction. Mr. Kawa has stated a claim, Mr. Kawa has standing, and Mr. Kawa is not barred from bringing his claim by the doctrine of res judicata. Simply put, this is a case where Mr. Kawa was the designated payee and recipient of a check under a Government contract, but the payment and check were never sent to him.

**STATEMENT OF THE ISSUES**

1. Whether a RCFC 12(b)(1) motion may properly be made arguing that since the final merits of the Plaintiff's claim are lacking, it should be dismissed in the pre-answer stage for lack of jurisdiction, and whether the Plaintiff should bear the burden

of proving his case by a preponderance of the evidence in response to such a pre-answer motion.

2. Whether Mr. Kawa, expressly named in the payment clause of a Government contract has standing to bring suit to recover a wrongfully diverted payment.

3. Whether the Court has subject matter jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., the Tucker Act, 28 U.S.C. § 1491(a) (1), the Assignment of Claims Act, 31 U.S.C. § 3727, 41. U.S.C. § 15, and 10 U.S.C. § 2785.

4. Whether Mr. Kawa, expressly named in the payment clause of a Government contract, has stated a claim as an assignee, a third party beneficiary, a contracting party, and under 10 U.S.C. § 2785.

5. Whether res judicata bars Mr. Kawa from bringing suit under the doctrine of "virtual representation," based upon a previous suit to which he was not a party, and whether issue preclusion bars Mr. Kawa from litigating certain issues decided in a previous case to which he was not a party.

## STATEMENT OF THE CASE

### I. Nature of the Case

On June 8, 2006, Mr. Kawa filed a complaint against the United States, alleging the existence of jurisdiction under the Contract Disputes Act, 41 U.S.C. § 601 et. seq. and the Tucker Act, 28 U.S.C. § 1491(a)(1), and asserting substantive rights flowing from express and implied contracts, an assignment, and third party beneficiary standing. This complaint was later amended to add an exhibit.

The Government filed a motion to dismiss this complaint on September 18, 2006, on the grounds that the Court does not possess subject matter jurisdiction under the

Contract Disputes Act or the Tucker Act, Mr. Kawa was not "the real party in interest," and because of the doctrine of res judicata. The motion also argued that Mr. Kawa failed to state a claim as a third party beneficiary, assignee, or contracting party.

On November 17, 2006, Mr. Kawa filed the final version of his second amended complaint, asserting jurisdiction under the Contract Disputes Act, the Tucker Act, and adding allegations of jurisdiction under the Assignment of Claims Act, and 10 U.S.C. § 2785. Causes of action for assignment, third party beneficiary, express and implied contracts, and violation of 10 U.S.C. § 2785 were thoroughly pleaded, addressing any objections asserted in the Defendant's first motion to dismiss.

On December 19, 2006, the Government filed a supplemental motion to dismiss, again asserting that the Court lacks subject matter jurisdiction, and that Mr. Kawa lacks standing, has failed to state a claim, and is barred from bringing suit under res judicata.

## II. Statement of Facts

Capital City was, at all times relevant to this claim, a business located in Tallahassee, Florida, that was certified by the United States Small Business Administration ("SBA") under the 8(a) program. (App. at p.1).[1] Beginning in 1998, DSCC "set aside" its requirements for hose assemblies, previously supplied by JGB, for Capital City. (App. at pp. 2-12); (Comp. at ¶ 8).[2]

On April 30, 1999, Contracting Officer Bocsy forwarded a copy of solicitation number SP0750-99-Q-5778 to Capital City, requesting a quote for certain hose assemblies. (App. at pp. 13-24); (Comp. at ¶ 9). On June 15, 1999, Contracting Officer Bocsy called Capital City, as part of ongoing negotiations, to further discuss the offer,

---

[1] "App. at p. 1" means "Appendix at page 1."
[2] "Comp. at ¶ 1" means the final version of the second amended complaint filed on 11/17/06, paragraph 1.

informing them that their price was too high and that it would need to drop by 38%. (App. at 25) On June 18, 1999, Capital City submitted an offer of $190.65 for each hose assembly, "Quoting the manufacturer: Titan Industries." (App. at p. 26) (Comp. at ¶ 10).

By letter dated June 23, 1999, Capital City advised Contracting Officer Bocsy that it was going to use JGB to assemble and supply the hose assemblies, directly setting forth the quotes given by JGB to Capital City. The quote from JGB was cheaper than previously quoted manufactures, and included packaging and shipping to destination from JGB. This quote was provided to Contracting Officer Bocsy again on the same date, and on July 8, 1999. (App. at pp. 27, 28, 29); (Comp. at ¶ 11).

On July 15, 1999 the Government Pre-award Monitor, pursuant to an inter-office memorandum, certified that the solicitation was an 8(a) set-aside and that Capital City was going to be a "dealer," with JGB supplying the hose assemblies. This memorandum stated that a certificate of competence for Capital City was not needed, since "inspection and acceptance must be at actual place of MFG. of hose Assy." Under the section of the memo pertaining to performance and quality history of Capital City, the memo states "ASAP," apparently meaning that the Government considered this an urgent order. (App. at p. 30); (Comp. at ¶ 12).

By letter dated September 20, 1999, Capital City further advised Contracting Officer Bocsy that "[t]he assembly of this product will be done **by JGB** Enterprises, Inc. at their location, Liverpool, NY (61125)" (emphasis in original). (App. at p. 31); (Comp. at ¶ 13). JGB was also responsible for testing. As part of ongoing negotiations, a letter from Capital City to Contracting Officer Bocsy, dated September 24, 1999, stated "JGB

Enterprise, Inc will do the assembly and the pressure testing will be done at their plant in Liverpool, NY." (App. at p. 32); (Comp. at ¶ 14).

Due to past non-payment by Capital City, JGB doubted that it would be properly paid by Capital City, and was reluctant to enter into a contract to supply the much needed hose assemblies. (App. at p. 33). JGB feared that it would construct and ship the hose assemblies directly to the Government, and would then never receive payment from the "dealer," Capital City. (Comp. at ¶ 15). On October 27, 1999, Mr. Zywicki wrote Mr. Taylor (DSCC Small Business Specialist) and informed him that Capital City was delinquent on over $360,000 to JGB and that JGB had stopped production pending resolution of the matter. He asked Mr. Taylor to "[p]lease contact me immediately with a proposed solution" and sent a "cc" of his letter to both the Contracting Officer and legal counsel at DSCC, among others. (Zywicki Declaration, Exhibit A); (App. at p. 36).

During several conversations with Mr. Taylor over the next two weeks, Mr. Taylor suggested to Mr. Zywicki a proposed solution to the problem, where JGB and Capital City would enter into an escrow agreement, using Michael Kawa, Esq. as escrow agent. (App. at pp. 37-38) (Comp. at, ¶16).

On November 9, 1999, Capital City advised Contracting Officer Bocsy that the check for Purchase Order 4191 was to be made out to Michael Kawa, Esq. and Capital City, two different parties. The check was also to be sent to a different address, that of Michael Kawa, Esq., not Capital City:

Also, I am requesting a change of Payment Remittance Address:

**Capital City Pipes, Inc.**
**Michael Kawa Esq.**
**300 Crown Bldg**
**Syracuse, NY 13202**

(App. at p. 36); (Comp. at ¶ 17).

On November 10, 1999, Capital City and JGB entered into an escrow agreement whereby Michael Kawa, Esq. was appointed as an escrow agent for receipt of payments under all DSCC-Capital City contracts under which JGB was the subcontractor. Under the escrow agreement, Capital City agreed to execute the necessary documents to ensure that all payments under the remaining Capital City prime contracts would be payable to Michael Kawa, Esq., who would then distribute the appropriate amounts to JGB and Capital City. (App. at pp. 37-36). It was JGB's, as well as Michael Kawa, Esq.'s, intention not to ship any hose assemblies to the Government unless it was paid. (Kawa Declaration, ¶ 4). At the time of signing this agreement, Michael Kawa believed "[b]y entering into this agreement, I was facilitating and making possible the Government's receipt of urgently needed military materials." (Kawa Declaration, ¶ 4).

Capital City followed up with a letter to Contracting Officer Bocsy dated November 10, 1999, clarifying that Capital City was no longer the payee by stating:

> I requested a change in the payment remittance address:
>
> **Michael Kawa, Esq.**
> **300 Crown Bldg.**
> **304 S. Franklin Street**
> **Syracuse, NY 13202**

(App. at p. 39); (Comp. at ¶ 19).

The conflict between the November 9, 1999, letter and the November 10, 1999, letter apparently caused "confusion" and on November 15, 1999, Capital City sent a fax to Contracting Officer Bocsy reinforcing that Capital City was no longer the payee, and establishing that Capital City and Michael Kawa, Esq. were two separate parties. The fax stated:

Good Morning, Luann, I apologize fot (sic) the confusion this may have caused. We are requesting the payment address be changed to:

MICHAEL KAKA (sic), ESQ.
300 CROWN BLDEG (sic)
304 S FRANKLIN STREET
SYRACUSE, NY 13202

If you have any questions please call me
THANK YOU

(App. at p. 40), (Comp. at ¶ 20).

The next day, on November 16, 1999, Contracting Officer Bocsy telephoned Capital City regarding an increase in quantity. (App. at p. 41); (Comp. at 21).

As a result of Capital City's offer on June 23, 1999, and the ongoing negotiations regarding the change of payee, DSCC ultimately awarded Purchase Order 4191 on November 24, 1999 to Capital City. Purchase Order 4191 was in the amount of $45,275.76 for 306 hose assemblies, and was signed by Contracting Officer Bocsy on November 19, 1999. (App. at pp. 42-50). Contracting Officer Bocsy complied with Capital City's requests of November 10 and 15, 1999, and personally typed Michael Kawa, Esq.'s name and address into Purchase Order 4191, knowing that the check for payment would be sent to Michael Kawa, Esq. The language in the Purchase Order read:

**REMIT PAYMENT TO:**

**MICHAEL KAWA, ESQ.**
**300 CROWN BLDG**
**304 S. FRANKLIN ST.**
**SYRACUSE NY 13202**

(emphasis added) (App. at p. 47); (Comp. at ¶ 24).

No proper modification was ever entered into to remove Michael Kawa, Esq. as the payee, or to change the address for payment. Mr. Kawa was provided with a copy of the Purchase Order, and "believed that the payment clause bound the Government to

make payment to me." (Kawa Declaration, ¶ 8). The Government needed the hose assemblies "ASAP," according to the memorandum of July 15, 1999, (App. at p. 30) and the Contracting Officer placed Michael Kawa, Esq.'s name and address in the Purchase Order to facilitate speedy production of the hose assemblies.

Purchase Order 4191's inspection and packaging clauses identified JGB and provided that DCMC Syracuse was the office responsible for "acceptance/inspection at origin." The Purchase Order waived certain tests based upon the fact that JGB was doing the actual manufacturing, stating "FIRST ARTICLE TEST WAIVED BASED UPON JGB ENTERPRISES USING HOSE FOR FAT APPROVED SOURCE GOODYEAR TIRE AND RUBBER (73842)." (App. at p. 44), (Comp. at ¶ 26).

After signing the Purchase Order, pre-award Contracting Officer Bocsy was replaced by post-award Contracting Officer Moore. Michael Taylor, DSCC Small Business Specialist, discussed the possibility of using an escrow agreement to resolve the JGB non-payment problems with Contracting Officer Moore. Contracting Officer Moore also kept Michael Taylor informed about discussions regarding establishment of a joint bank account for JGB and Capital City. Contracting Officer Moore was apparently aware of the course of dealings leading to the designation of Michael Kawa, Esq. as payee in Purchase Order 4191. (Comp. at ¶ 27).

Based on the Purchase Order citing Mr. Kawa as the payee, JGB shipped the items for Purchase Order 4191 directly to the Defense Department Depot on February 8, 2000 and sent the required DD-250s directly to the Government. The DD-250s are the requisite shipping and payment documents that have been authorized by the Government. The Government accepted this delivery made under Purchase Order 4191, which named

Michael Kawa, Esq. as payee. Mr. Kawa "expected that payment would be made to me as clearly called for by Purchase Order 4191. When the Government accepted this delivery, under the Purchase Order calling for payment to be made to me, there was no further doubt in my mind that payment would have to me made according to the remittance clause." (Kawa Declaration, ¶ 9).

Directly after shipping under Purchase Order 4191, the Government signed another Purchase Order naming Michael Kawa, Esq. as payee. On or about February 10, 2000, a Government supply officer in Gulfport, Mississippi, issued Purchase Order N62604-00-P-0104 for hose assemblies from Capital City. (App. at pp. 51-55) (Comp. at ¶ 29). Once again, JGB was to perform essentially all the work relating to the order, with Capital City as a mere dealer. Based on previous discussions with the Government and the previous payment problems, the remittance address in this Purchase Order stated "Michael Kawa, Esq., 300 Crown Bldg., 304 S. Franklin Street, Syracuse, New York 13202." (App. at p. 53). The check for Purchase Order 0104 was sent to the address of Michael Kawa, Esq. and Michael Kawa, Esq. was able to exert control over this check, eventually assuring that payment was received by JGB. (Comp. at ¶ 30).

On March 24, 2000, DSCC Contracting Officer Phyllis Moore sent an "ALERT" message to Capital City's ACO at DCMC Clearwater with an attached list of all contracts and purchase orders awarded to Capital City, including Purchase Order 4191. (App. at pp. 56-58). DCMC Clearwater was the office administering Purchase Order 4191, as stated on the face of the Purchase Order. Moore requested that the ACO "maintain surveillance" of these contracts/orders. (App. at p. 56). Moore's March 24, 2000, ALERT message to the ACO concluded as follows:

> THIS SERVES AS AUTHORIZATION FOR THE ACO TO TAKE WHATEVER CONTRACTUAL ACTIONS NECESSARY TO KEEP THESE ORDERS VIABLE. THE MATERIAL ON THESE CONTRACTS ARE [sic] URGENTLY NEEDED.

(App. at p. 56); (Comp. at ¶ 31).

At the time of this ALERT message, the Government had not yet made payment for these shipments under Purchase Order 4191. As stated above, JGB had conditioned shipment on Capital City's payment being made to Mr. Kawa, as had been suggested by the Government in an earlier effort to render the orders viable. (Comp. at ¶ 33).

On April 5, 2000, Capital City contacted Contracting Officer Kathy M. Bader, at DCMC St. Petersburg, Florida, regarding Contract 2508 (another DSCC contract with Capital City as prime contractor and JGB as subcontractor), responding to "questions" asked by Contracting Officer Bader in a letter dated March 30, 2000. Capital City informed the Contracting Officer that:

> 1. Mr. Michael Kawa, Esq. is an attorney and Capital City Pipes President and CEO Mr. Lee Gilliam and JGB Enterprises, Inc President/ CEO Mr. Jay Bernhardt signed an agreement to utilize Mr. Michael Kawa, ESQ as a go-between on this contract.
>
> 2. **This Notice of Assignment is not for a loan. The purpose is for the disbursement of the funds related to the above-mentioned contract.**

(emphasis added) (App. at p. 59); (Comp. at ¶ 34).

On April 12, 2000, in a hand-written memorandum of a telephone call, Contracting Officer Moore stated, in regards to Contract 2508,

> Since this material is urgently needed, I will entertain on a one time basis of this award, changing the remittance address to a bank or whatever is agreeable.

(App. at p. 61) (Comp. at 35).

At the time Contracting Officer Moore made this memorandum, payment had not yet been made on Purchase Order 4191, and she was responsible for administering Purchase Order 4191.

On April 24, 2000, without informing Mr. Kawa, the Government directly paid, by EFT, the amounts due under the Purchase Order to Capital City. Capital City did not pay JGB for the items shipped under Purchase Order 4191. If Michael Kawa "had known that the Government would not honor its written obligations, I never would have agreed to serve as escrow agent for PO 4191, and the Government would not have received the urgently needed hose assemblies." (Kawa Declaration, ¶ 14). As explained in the Affidavit of Lavern Reising, this action was contrary to proper procedures.

Due to the bankruptcy of Capital City, Mr. Kawa is required to turn a percentage of this money over to the trustee in bankruptcy; however, the Government's non-payment has prevented Mr. Kawa from properly forwarding these funds. (Comp. at 39).

On January 13, 2006, Contracting Officer Bocsy denied Mr. Kawa's claim for the funds under Purchase Order 4191. (App. at p. 62).

## SUMMARY OF ARGUMENT

Mr. Kawa has stated a claim as a third party beneficiary, assignee, contracting party, and for violation of 10 U.S.C.§ 2785. The Court has jurisdiction under the Contract Disputes Act, the Tucker Act, the Assignment of Claims Act, and 10 U.S.C. § 2785.

Defendant contends, pursuant to RCFC 12(b)(1) that the Court lacks subject matter jurisdiction because, essentially, Plaintiff's causes of action fail on the merits. As will be shown, this argument is a transparent and inappropriate attempt to avoid

answering the Plaintiff's complaint, and a doomed attempt to procure a more favorable standard of review. Plaintiff regards this portion of the supplemental motion to dismiss as utterly frivolous. Additionally, in its supplemental motion to dismiss, the Government neglects to even discuss the independent basis of jurisdiction under the Assignment of Claims Act as asserted in the Plaintiff's second amended complaint.

Defendant also argues that Mr. Kawa lacks standing to bring the claim, for both Constitutional and prudential reasons. As will be shown, the rules of the Court of Federal Claims, as well as its valid case law, have allowed similarly situated persons to bring suit.

Finally, Defendant also argues that the complaint is barred by res judicata, despite the fact that Mr. Kawa has never before brought suit regarding this matter. The Government relies upon the questionable doctrine of "virtual representation," presenting it as well settled law. To the contrary, application of relevant Court of Federal Claims precedent shows that virtual representation is used with the utmost reluctance by the Court of Federal Claims and the Federal Circuit, and does not apply to Mr. Kawa.

## ARGUMENT

### I. STANDARD OF REVIEW

The standard of review as asserted in the Government's motion to dismiss is completely erroneous. The Government's pre-answer motion to dismiss is an attack on the merits of JGB's case, and thus the Court should accept all of the allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). However, the Government has styled its argument as a factual attack upon the Court's subject matter jurisdiction, hoping to procure a different standard of review under which JGB bears the burden of establishing jurisdiction (and its case) by a preponderance of the evidence.

This transparent and frivolous attempt at burden shifting has been tried many times before, and has been conclusively rejected by the Federal Courts.

The Government cites McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995) and Catellus Development Corp. v. United States, 31 Fed. Cl. 399 (1994) for the proposition that once jurisdiction is challenged, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, and may not merely rely upon allegations in his complaint.

However, there is another side to the story. If the evidentiary facts that establish jurisdiction are "an element of the claim" the facts will be construed against the moving party, as in a summary judgment motion, and the plaintiff will not bear the burden. As stated in Guardsman Elevator Co., Inc., v. United States, 50 Fed. Cl. 577, 580 (2001): "the law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven. To establish jurisdiction over its breach of contract claim in this case, plaintiff therefore must adequately plead contractual privity with the United States or one of the exceptions to privity that affords a basis for suit." *Citing* Total Medical Management, Inc. v. United States, 29 Fed. Cl. 296 (1993); Spruill v. Merit Systems Protection Board 978 F.2d 679 (Fed. Cir. 1992).

Total Medical Management, Inc. v. United States, 29 Fed. Cl. 296 (1993) held:

> Defendant maintains that no contract existed and that, consequently, the court lacks jurisdiction. However, the existence or not of a contract is usually not a jurisdictional question. Depending on the circumstances, the existence of a contract may be a question of fact and law.. . . the important point is that questions of law, like issues of fact, can only 'be decided after and not before the court has assumed jurisdiction'. . . Defendant's argument that no contract existed

thus challenges plaintiff's case on the merits, not the court's jurisdiction. . . **It would be unfair to dismiss a substantial or non-frivolous complaint for lack of jurisdiction without giving the pleader a chance to prove the soundness of what appear to be legally sufficient allegations. . . Therefore, where the motion is brought under Rule 12(b)(1) exclusively but the challenge goes to the merits (as when the moving party does not assume the truth of the allegations) the motion will be denied.** (emphasis added). Id. at 299, 300.

While recognizing that certain decisions have allowed the moving party to go beyond the face of the pleadings in a factual attack upon jurisdiction, the Total Medical Court held : "the end result in practice is much the same: the pleader is entitled to whatever procedures are reasonably necessary to prove its case, including an evidentiary hearing if need be." Id. at 301.

Similarly, Spruill v. Merit Systems Protection Board 978 F.2d 679 (Fed. Cir. 1992), in a lengthy discussion, thoroughly rebutted the notion that attacks on the merits could be cast as jurisdictional objections. It is important to note that Spruill was decided after Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1991) (cited by the Government at page 8 of its supplemental motion to dismiss), and deals more directly with the current situation. Spruill held that:

"[t]he distinction between lack of jurisdiction and failure to state a claim upon which relief can be granted, is an important one: '[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy. Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. . ." Id. at 687. *citing* Bell v. Hood, 327 U.S. 678, 682 (1946).

In a statement that could refer to the current situation, the Spruill Court noted that "Unfortunately, in suits against the Federal Government these two notions [jurisdiction and the merits of the case] have not always been kept separate." Id. at 688.

As well as Federal Circuit and Court of Federal Claims cases, numerous cases from other Circuits back up Mr. Kawa's position. *See* United Phosporhus, Ltd. v. Angus

Chem. Co., 322 F.3d 942, 947 (7th Cir. 2003), holding that if the jurisdictional objection goes to an element of the claim "the motion would be properly treated under Rule 56 summary judgment standards. Summary judgment on the merits can be granted if, construing the facts against the moving party, there is no genuine issue of material fact and that party is entitled to judgment as a matter of law." According to Sizova v. National Institute of Standards and Technology, 282 F.3d 1320, 1324 (10th Cir, 2002), there is an exception to the general rule cited by the Government when "subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case" *citing* Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir, 1987). Scarfo v. Ginsberg 175 F.3d 957, 960 (11th Cir., 1999), *cert denied* 529 U.S. 1003 (2000) held that "When faced with factual disputes regarding subject matter jurisdiction, the district court serves as the fact-finder and may weigh the evidence, provided that the challenge to subject matter jurisdiction does not implicate an element of the cause of action." Willamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981) persuasively explains why the Government's attempt to shift the burden of its 12(b)(1) motion onto the plaintiff should be rejected:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) (for failure to state a claim upon which relief can be granted) or Rule 56 (summary

> judgment)-both of which place greater restrictions on the district court's discretion. The court must take the plaintiff's allegations as true when a Rule 12(b)(6) motion is raised, and in addition must determine that no genuine issue of material fact exists when a Rule 56 motion is granted.

Examining the Government's arguments regarding jurisdiction, it is clear that they are indistinguishable from the merits of Mr. Kawa's claim. Under section III of its supplemental motion to dismiss, the Government argues that the Contract Disputes Act does not provide jurisdiction, since Michael Kawa did not have an express or implied contract with the Government. However, Mr. Kawa's complaint properly alleges the elements of implied and express contracts. In essence, the Government is asking the Court to decide the case backwards, finding facts and disposing of the merits of Mr. Kawa's claim at the pre-answer stage, then, after it has essentially decided the case, dismissing for lack of jurisdiction! This is precisely the procedure forbidden by Willamson. Similarly, section IV of the Government's supplemental motion to dismiss argues that the Tucker Act gives no jurisdiction, since none of Mr. Kawa's substantive theories "have any merit." Section IV goes not to extensively argue the merits of each and every theory advanced by Mr. Kawa, going far beyond an attack on the face of the pleadings.

If the Government wishes to argue the sufficiency of Mr. Kawa's allegations at the pre-answer stage, it may do so under RCFC 12(b)(6) "Failure to State a Claim." However, as the Government well knows, the standards of 12(b)(6) are not favorable to it, which explains the bizarre attempt to shoehorn its detailed factual arguments into the form of a 12(b)(1) motion for lack of subject matter jurisdiction. Under RCFC 12(b)(6), the Court must accept "well pleaded" allegations as true. Albright v. Oliver, 510 U.S.

266, 267 (1994). Scheuer v. Rhodes, 416 U.S. 232, (1974) *overruled on other grounds by* Harlow v. Fitzgerald, 427 U.S. 800 (1982) held that:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

In Phonometrics, Inc. v. Hospitality Franchise Systems, Inc**.** 203 F.3d 790, 794 (Fed. Cir. 2000), the Federal Circuit quoted Canadyne-Georgia Corp. v. NationsBank, N.A. (South), 183 F.3d 1269, 1275-76 (11th Cir.1999) for the proposition that "[t]he Federal Rules 'do not require a claimant to set out in detail the facts upon which he bases his claim.' ··· [A] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." This is the true standard under which the Government's motion to dismiss should be reviewed.

## II. MR. KAWA DOES HAVE STANDING

### A. Mr. Kawa meets the Requirements for Constitutional Standing.

Michael Kawa is expressly named in Purchase Order 4191 as the payee as well as the person entitled to receive the physical check. Thus, there should be no question of standing. However the Government argues that his duties as an escrow agent after receipt of the funds somehow strip him of standing. This assertion is demonstrably incorrect, since the Rules of the Federal Court of Claims expressly provide that "[a]n executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or

in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought." RCFC 17(a). Mr. Kawa contracted with Capital City and JGB to receive certain moneys, hold these monies, and then disburse the moneys for the benefit of both JGB and Capital City. His services as escrow agent encompassed the duties of a "bailee" as well as the fiduciary duties of a "trustee of an express trust."

In light of this, the Government's claim that an escrow agent may not constitutionally bring suit is extremely odd. If an escrow agent lacks the necessary "personal injury" to bring suit, so would trustees and bailees. The logical conclusion of the Government's argument is that RCFC 17(a) expressly allows suit by a large number of persons with no Constitutional standing. The Government has not pointed out case law supporting their indirect attempt to cast RCFC 17(a) as unconstitutional.

Pursuant to RCFC 17(a), the Court of Federal Claims has allowed suits by trustees and administrators, who were seeking to claim money for the ultimate benefit of another. In Aaron v. US. 65 Fed. Cl. 29, 31 (2005), the Court of Federal Claims held a bankruptcy trustee to be a real party in interest, since the bankruptcy estate took possession of all claims that had belonged the debtor. Obviously, the trustee was not going to pocket the money received in the suit, and he was bound to turn it over the bankruptcy estate. Aaron is directly contrary to the Government's erroneous argument in this case that since Mr. Kawa must eventually turn over the money to another, he cannot sue.

Mason v. US, 198 Ct. Cl. 599 (1972) allowed administrators of an estate to sue the Government regarding a tax matter, rejecting the argument that the heirs were the only real parties in interest. The Court stated "the plaintiffs may sue as duly authorized

administrators on behalf of the estate, out of the funds of which the disputed tax was paid before distribution of the estate's assets to the heirs." Id. Once again, the fact that an administrator must eventually turn over any money gained to another was no obstacle in Mason.

Lasalle Bank National Association v. Nomura Asset Capital Corp 180 F.Supp.2d 465, 470 (S.D.N.Y. 2001) held that a trustee with power to "hold, manage and dispose of assets" for the benefit of the beneficiaries was a "real party to the controversy." An escrow agent is a very similar party. In this case, Michael Kawa had the authority to receive payments due to Capital City from the Government, and hold those payments until presented with a document signed by both Capital City and JGB authorizing the release of the moneys. The Government, in its motion to dismiss, does not explain why an escrow agent is so different from other fiduciaries, who have been allowed to bring suit. For more examples of trustees bringing suit, see Carpenter's Health and Welfare Trust Fund for California v. Bla-Delco Const., Inc., 8 F.3d 1365 (9th Cir. 1993); Bituminous Coal Operator's Assoc. Inc. v. Connors, 867 F.2d 625 (D.C. Cir. 1989); Schneider Moving & Storage Company v. Robbins, 466 U.S. 364 (1984).

The Government cites Lujan v. Defenders of Wildlife 504 U.S. 555 (1992) in support of their argument that Mr. Kawa did not suffer an "injury in fact," but the very words cited by the Government undermine their argument : "First the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest. . ." Id. at 560. As Mr. Kawa is arguing, he had a legally protected interest, and right, to receive payment under Purchase Order 4191. It is this legal interest that gives standing, not the final destination of the moneys to be recovered by Mr. Kawa. Contrary to the implication of

the Government's argument, direct monetary harm to the Plaintiff's pocketbook need not result from this invasion of a legally protected interest. Even aesthetic or emotional harm may suffice. The Lujan Court stated that "Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." Id. at 563. And "[i]t is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist." Id. at 565. In Japan Whaling Assoc. v. American Cetacean Society, 478 U.S. 221, 230 (1986) a group of whale watchers and whale enthusiasts were found to have standing to sue whalers, since "they undoubtedly have alleged a sufficient 'injury in fact' in that the whale watching and studying of their members will be adversely affected by continued whale harvesting. . ."

Considering the foregoing, Mr. Kawa submits that the violation of his legally protected right to receive payment is more than sufficient to confer standing, particularly since as stated in his enclosed Declaration, he entered into an escrow agreement suggested by the Government, saw his name actually written into the Purchase Order, and then found that the Government took his client's product and simply ignored their obligation to pay him. (Kawa Declaration, ¶ 5).

**B. The Court Should Not Dismiss Mr. Kawa's Claim for Prudential Reasons.**

The Government argues, at page 11, that Mr. Kawa is not the litigant best suited to assert the claim, and is not a real party in interest under RCFC 17(a), requiring a dismissal for "prudential reasons." The Government's claim that RCFC 17(a) supports a dismissal for prudential reasons is utterly baseless, since as explained above, RCFC 17(a) expressly allows suits by trustees and representatives.

The Government also points out that "This Court previously considered JGB's claim against the Government under PO 4191 and rejected it after full and thorough consideration" This statement is correct; the Court did consider JGB's claim. What the Court did not consider was Mr. Kawa's claim. The infirmities that prevented JGB from recovering in the previous litigation do not apply to Mr. Kawa. In essence, JGB was unable to recover because when Contracting Officer Boscy established Michael Kawa, Esq. as the payee and remittance address on Purchase Order 4191, she supposedly did not know that he was an escrow agent for JGB. JGB Enterprises, 63 Fed. Cl. at 334. Absolutely everyone involved knew that the check was to be sent to Michael Kawa, as his name and address were on the face of Purchase Order 4191. (Zywicki Declaration, ¶ 7). Because "CO Boscy testified that she did not know that Michael Kawa was affiliated in any way with JGB" the Court found that "JGB was not in privity with the Government concerning that contract, and cannot maintain a suit for damages against the Government resulting from the payment to Capital City rather than to Kawa on PO 4191." JGB Enterprises, 63 Fed. Cl. at 334. The natural implication of the decision in JGB is that Mr. Kawa himself is the proper party to recover the moneys from the Government under Purchase Order 4191. Also, due to Mr. Kawa's express naming in the Purchase Order, he is able to assert causes of action under assignment and under 10 U.S.C. § 2785 that were never raised by JGB in the prior action.

The Government wants to have it both ways: in JGB they argued that since the Contracting Officer supposedly only knew of Mr. Kawa, JGB had no privity, and now they argue that Kawa has no standing, because he was an escrow agent for JGB. The Government hopes that these two arguments will dovetail neatly, effectively preventing

anyone from holding them to account. The Court of Federal Claims addressed just such a situation in Northwest Bank v. U.S. 37 Fed. Cl. 605 (1997), where a prime contractor on a U.S. Navy project assigned payments due to it to the subcontractor's bank, since the subcontractor doubted that it would receive payment. Id. at 606. Instead of paying the bank, the Government paid the prime contractor, who cashed the check and declared bankruptcy. The sub-contractor paid the bank, who had financed the subcontractor, what it was owed, leaving the bank in a position analogous to Mr. Kawa:

> Defendant moved to dismiss the complaint because [the subcontractor] was not in privity of contract with the United States. [the subcontractor] amended the complaint to substitute its bank as plaintiff. With the Bank as sole plaintiff, the Government then moved to dismiss for lack of standing. **The Government argued that because the Bank had been paid, the Bank cannot maintain this action. The Government's position is that no one may bring a claim to recover for the Government's mistake-the subcontractor lacks privity of contract and the Bank lacks standing.** Id. at 607.

In Northwest Bank, the Court addressed this obvious injustice by allowing the subcontractor to re-enter the action, and the entering judgment for the "plaintiffs," both the bank and the subcontractor. Id. at 610. In the current situation, the Court should allow Mr. Kawa's case to go forward, as it is free from the supposed defects that allowed the Government to escape payment of its just debts in the JGB case.

## III. THE COURT DOES POSSESS JURISIDICTION TO ENTERTAIN MR. KAWA'S CLAIM PURSUANT TO THE CONTRACT DISPUTES ACT.

As admitted by the Government, at page 12, the Contract Disputes Act applies to "any express or implied contract. . ." The Government goes on to state that "Because he is not a contractor, Mr. Kawa cannot rely upon the CDA as the jurisdictional basis for his complaint." However, Mr. Kawa is expressly named on the face of Purchase Order 4191 as the payee and the party to whom the check is to be sent. Furthermore, in his

complaint, Mr. Kawa alleges each and every element of implied in fact and express contracts with the Government. As explained in great detail above, these allegations must be judged by the standards applicable to RCFC 12(b)(6) "failure to state a claim for which relief can be granted," and the Court should accept all of the allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accepting the allegations as true, Mr. Kawa would be a "contractor" and there is jurisdiction under the Contract Dispute Act.

## IV. THE COURT DOES POSSESS JURISDICTION TO ENTERTAIN MR. KAWA'S CLAIM PURSUANT TO THE TUCKER ACT.

As with Contract Disputes Act, the Government argues that "[n]one of Mr. Kawa's theories have any merit. Accordingly, this Court should dismiss Mr. Kawa's amended complaint for lack of jurisdiction." The Government appears to be quite confused: if Mr. Kawa's theories have no merit, the Court should dismiss for failure to state a claim, not lack of jurisdiction. Once again, under the proper standard, the second amended complaint is clearly not dismissible, as each and every theory is thoroughly pleaded, and certainly states a claim. The Plaintiff regards this attempt to argue the merits of the case in a pre-answer motion under the guise of a jurisdictional objection to be completely improper, frivolous, and burdensome. Nonetheless, Plaintiff is forced to address the Government's inappropriate factual arguments, to correct numerous erroneous statements found therein.

### A. There was an Express Contract Between Mr. Kawa and the Government.

The Government states on page 15 of its supplemental motion to dismiss that "Based upon nothing more than the plain language of the remittance clause, a reasonable person would presume that Mr. Kawa was a representative designated to receive

payments upon behalf of Capital City." In fact, the remittance clause of Purchase Order 4191 gives absolutely no indication that Mr. Kawa has any connection with Capital City. The Purchase order makes clear that JGB in Syracuse, New York, is manufacturing and shipping directly to the Government, and lists Mr. Kawa, with a New York address, in the remittance clause. If anything, a reasonable person would presume a link between Mr. Kawa and JGB.

In any case, whether or not Contracting Officer Bocsy knew of the link between JGB and Mr. Kawa is utterly irrelevant to Mr. Kawa's independent claim asserted in this action. The Government does not even address the question of whether Mr. Kawa has stated a claim for breach of contract, merely making irrelevant statements regarding Contracting Officer Bocsy's knowledge of JGB.

## B. There Was an Implied in Fact Contract Between Mr. Kawa and The Government.

As stated by the Government at page 15 of its supplemental motion to dismiss, the elements of an implied in fact contract are "1) mutuality of intent to contract; 2) consideration; and 3) lack of ambiguity in offer and acceptance." Quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). As stated in Mr. Kawa's second amended complaint, paragraphs 62 to 66, Mr. Kawa intended to contract with the Government, entering into a escrow agreement suggested by the Government, expecting that the Government would place his name in future purchase orders. The Government accepted this offer by placing Michael Kawa in Purchase Order 4191 as payee. As consideration for his services, the Government promised to forward him $45,275.76. This formed an implied contract. The later ratification of this contract, alleged in paragraph 67 of the complaint, removed any doubt as to Mr. Kawa's status as a

contracting party. As explained in the attached affidavit of Lavern Reising, this obligated the Government to pay Mr. Kawa.

On page 17 of its supplemental motion to dismiss, the Government makes an argument against ratification of an implied in fact contract that is simply irrational. Stating that in order to show ratification, Mr. Kawa must prove "(1) that the government received a benefit from plaintiff's activities and (2) government officials who had authority to contract had knowledge of the contract and accepted plaintiffs offer," the Government argues that "the Government did not receive any benefits from Mr. Kawa," since "the Government was entitled to delivery of the hose assemblies." While the Government may have regarded itself as entitled to the hoses, it would not have gotten the hoses unless Mr. Kawa served as an escrow agent. (Kawa Declaration, ¶ 14). Employees of JGB clearly communicated to the Government that they would not ship any material unless they were assured of payment. (App. at pp. 34-35). The services of Mr. Kawa, in an escrow agreement suggested by the Government allowed the Government to receive the hose assemblies. As detailed in the plaintiff's second amended complaint, and in the affidavit of Mr. Kawa (¶ 9), by the time the Government accepted and paid for these goods, the Contracting Officer knew of Mr. Kawa's status. Receipt of a benefit and knowledge by the Government are clearly pleaded in Mr. Kawa's second amended complaint. This is a clear case of ratification.

## C. **Mr. Kawa is a Third Party Beneficiary**

There is no question that a the Court of Federal Claims has jurisdiction to hear Mr. Kawa's third party beneficiary claim : "It is settled law in this circuit, however, that an intended third-party beneficiary of a government contract may sue under the Tucker

Act." JGB Enterprises v. United States, 63 Fed. Cl. 319 (2004) *citing* Flexfab, LLC v. United States, 62 Fed.Cl. 139, 144-45 (2004); Erikson v. United States, 12 Cl.Ct. 754, 757 (1987); Hebah v. United States, 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970); Maneely v. United States, 68 Ct.Cl. 623, 629, 1929 WL 2450 (1929).

There is also no question that Mr. Kawa's second amended complaint states a claim for recovery as a third party beneficiary. ¶ 50 explains that the Government intended to benefit Mr. Kawa by providing in Purchase Order 4191 that $45,275.76 be sent to him. ¶52 explains that Capital City, the other party to Purchase Order 4191 also intended to benefit Mr. Kawa, since they specifically requested that payment be made to Mr. Kawa. In ¶53, Mr. Kawa explains that the face of the Purchase Order 4191 evidenced an express intent to benefit him, and ¶54 shows that this reliance was reasonable. ¶55 alleges breach. ¶56 alleges ratification. Accepting these facts as true, a claim has been stated, since, as the Government states in its supplemental motion to dismiss "In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly" *quoting* Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1259 (Fed. Cir. 2005) and "In short, it is sufficient to ask in a typical case 'whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right upon him" quoting Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997).

In the face of this precedent, and in the face of a correctly and very thoroughly pleaded count in the second amended complaint, the Government, under the heading of Tucker Act Jurisdiction, attempts to discredit the merits of Mr. Kawa's case by

continuing to emphasis the Contracting Officer's knowledge of JGB, which is irrelevant to Mr. Kawa's personal claim. The Government argues, on page 18 of its motion, that "Mr. Kawa is not a third-party beneficiary to PO 4191, because Ms. Bocsy was not aware of the non-payment problem, was not aware of the purpose of changing the remittance address, and was not aware of Mr. Kawa's relationship to JGB." However, Ms. Bocsy was well aware that by placing Mr. Kawa's name and address into PO 4191, a check for over $40,000 would be sent to Mr. Kawa. That is the essence of his third party beneficiary claim. What Mr. Kawa was to do with this money, or who he would eventually give it to, are totally irrelevant. The Purchase Order directed funds specifically to Michael Kawa, and Michael Kawa is bringing this action.

A robust body of case law supports Mr. Kawa's claim that he was an intended third party beneficiary, base upon the objective meaning of Purchase Order 4191, and his reasonable reliance thereon. Frank & Breslow, LLP v. United States, 43 Fed.Cl. 65, 67 (1999) ("The test for a third party beneficiary relationship . . . is one of reasonable reliance"). Despite the Government's many arguments to the contrary, this is an objective test. *See* Firestone Tire & Rubber Co. v. United States, 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971); ITT Arctic Servs., Inc. v. United States, 207 Ct.Cl. 743, 524 F.2d 680, 684 (1975). Summerfield Housing v. United States, 42 Fed.Cl. 160, 166 (1998) stated:

> Contract interpretation ordinarily begins with the plain meaning of the provision in question. *S.W. Aircraft Inc. v. United States,* 213 Ct.Cl. 206, 551 F.2d 1208, 1212 (Ct.Cl.1977). The court must construe the contract by its plain and unambiguous language. *National Rural,* 14 Cl.Ct. at 136. "The language of a contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 351 F.2d 972, 975 (1965). "Generally, the plain language of a contract controls, and only language which is reasonably susceptible to more than one meaning may be considered ambiguous." *Thermal Electronic, Inc. v. United States,* 25 Cl.Ct. 671,

> 673 (1992) *citing Neal & Co. v. United States,* 19 Cl.Ct. 463, 471 & n. 4 (1990), *aff'd,* 945 F.2d 385 (Fed.Cir.1991); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 457 (1985), *aff'd,* 785 F.2d 325 (Fed.Cir.1985). An ambiguity does not exist simply on the basis that the parties assert different interpretations of the contract. *Thermal,* 25 Cl.Ct. at 673.

Despite this, the Government states that Mr. Kawa's reliance upon the plain and unambiguous language of the contract (see Kawa Declaration, ¶ 8, 10) was not reasonable, since "FAR 52.232-33, which was incorporated into the contract by reference and stated that payment would be made to the EFT information contained in the CCR system. . ." As a matter of common sense, a party should not be expected to disregard the clear language of a contract in favor of a cryptic FAR provision incorporated only by reference. Furthermore, the Armed Services Board of Contract Appeals, a body with extensive experience and expertise in such matters, has held that such FAR clauses do not render reliance unreasonable. In Appeal of Floorpro, Inc. 04-1 BCA ¶ 32571, ASBCA No. 54143 (2004), in an exact parallel to the current matter, the Government contacted the sub-contractor, Floorpro, to install floor coating. However, instead of contracting directly with Floorpro, the Government suggested that Floorpro enter into a subcontract agreement with an 8(a) contractor, who had no apparent ability to do the work. After the 8(a) contractor was paid for its first invoice, it failed to pay Floorpro. After discussions with the Government, the contract was modified to provide for a two party check to be sent to Floorpro's address. Instead, the Government wired the money directly to the 8(a) contractor, who did not pay floorpro. Despite the fact that the contract incorporated by reference FAR 52.232-33, the Board found Floorpro stated a claim as a third party beneficiary, quoting Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997) for the proposition that "One way to ascertain such intent is to ask whether the beneficiary

would be reasonable in relying on the promise as manifesting an intention to confer a right on him" and stating "We hold that there was nothing in that clause [FAR 52.232-33] that would prevent jurisdiction in this direct subcontract appeal based on the third-party beneficiary exception to the privity rule."

**D. There was an Assignment to Mr. Kawa**

As the Defendant recognizes, the Government may waive the technical requirements of the Anti-Assignment Act, and such waivers are determined by a totality of the circumstances test, including whether: "(1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment." Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528, 530 (2003). It is important to note that the Rivera factors are merely examples, and Rivera quoted Tuftco Corp. v. United States, 222 Ct.Cl. 277 (1980) for the proposition that : "It is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments." Id. at 530.

The particular circumstances of this case are a powerful case for assignment. First of all, it is critical that the assignment was actually suggested by DSCC personnel. (Comp. at ¶ 16). Second, this assignment was suggested by the Government for the specific purpose of inducing JGB to ship materials that the Government urgently needed and could not otherwise acquire; and, in this context, Mr. Kawa was written into

Purchase Order 4191. (Comp. at ¶ 24, 25). Most critically, after the signing of the Purchase Order, Contracting Officer Moore was informed by Mr. Taylor of the existence of the escrow agreement (Comp. at ¶ 27), sent an "ALERT" message pertaining to Purchase Order 4191 (Comp. at ¶ 31), and even authorized placing Mr. Kawa into another Capital City/JGB contract while she was administering Purchase Order 4191 (Kawa Declaration, ¶ 10). This was an unambiguous ratification. After all of this, and after accepting the goods, payment was inexplicably made to Capital City.

The Government continues to argue that Contracting Officer Bocsy's knowledge of Mr. Kawa's relationship with JGB is dispositive. It is not. Any reasonable person would have known that Contracting Officer Bocsy's actions would have resulted in Capital City's payment of over $40,000 being sent to Mr. Kawa. The Government is essentially arguing, without any apparent basis, that for an assignment to be effective, the Government must be aware of the assignee's precise legal relationship to each and every involved party, and must know who, if anyone, the assignee is eventually obligated to pay.

In any case, the Government ignores the fact that by the time payment was actually made on Purchase Order 4191, the post-award Contracting Officer Moore either knew or should have known that Michael Kawa was an escrow agent and that Capital City had attempted to direct its payments under Purchase Order 4191 to Michael Kawa. Under a totality of the circumstances test, when the Government accepts and retains material, knowing that it only received this material due to an attempted assignment, this should certainly constitute a wavier according to Rivera.

## E. 10 U.S.C. § 2785 Is Money Mandating

In its supplemental motion to dismiss, the Government does not seriously contest that it violated 10 U.S.C. § 2785, and the attached affidavit of Lavern Reising establishes that the Government was bound to make payment according to the language of the Purchase Order; however, the Government wishes to be excused from paying for its fault, on the grounds that 10 U.S.C. § 2785 is not "money mandating."

The most recent Supreme Court guidance regarding whether a statute is money mandating is United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003), cited by the Government in its brief as stating "[i]t is enough. . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be "lightly inferred,' . . . a fair inference will do." A close examination of White Mountain shows that 10 U.S.C. § 2785 is indeed money mandating, and thus supports Tucker Act jurisdiction.

In White Mountain, an Indian tribe brought suit under a 1932 statute that stated that Fort Apache would be "held by the United States in trust for the White Mountain Apache Tribe." Id. at 469. The United States failed to maintain the Fort, and the tribe sued for breach of the "fiduciary duty to 'maintain protect, repair and preserve' the trust property." Id. at 469. As the statute in question sets up an express trust, and gave the Government control and occupation of the Fort, the Court found that the statute "permits a fair inference that the Government is subject to duties as a trustee and liable in damages for breach." Id. at 476.

The Court in White Mountain emphasized that no express money mandating language was needed: "To the extent that the Government would demand an explicit provision for money damages to support every claim that might be brought under the Tucker Act, it would substitute a plain and explicit standard for the less demanding requirement of fair inference that the law was meant to provide a damages remedy for breach of a duty." Id. at 477.

In Samish Indian Nation v. United States, 419 F.3d 1355 (Fed. Cl. 2005) the Court held that even when a statutory scheme gives the Government discretion in disbursing moneys (which 10 U.S.C. § 2785 does not), it is money mandating if it: "include statutes: (1) that provide 'clear standards for paying' money to recipients; (2) that state the 'precise amounts' that must be paid; or (3) as interpreted, compel payment on satisfaction of certain conditions." *citing* Perri v. United States, 340 F.3d 1337, 1342-43 (Fed.Cir.2003). In Fischer v. United States 402 F.3d 1167, 1174 (Fed. Cir. 2005) a service member sued under a statute that provided that upon determination that a service member is disabled "the Secretary may retire the member, with retired pay. . ." The Federal Circuit found the statute money mandating, holding "**He wants the money that would have been his due had he been discharged in the manner to which he claims he was entitled, and he wants the necessary steps taken to position himself for that result. . . That is a classic Tucker Act suit for money and the related remedies the trial court is authorized to grant.**" Id. at 1175.

Looking to the current situation, 10 U.S.C. § 2785 is clearly money mandating. If an obligation to hold a property in trust is money mandating, then explicit requirements and instructions regarding Government procedures for the payment of money certainly

are. After all, the entire purpose of 10 U.S.C. § 2785 is to direct money to "the person to whom the disbursement is authorized to be remitted. . ." and to prevent unauthorized alterations of remittance addresses. The section deals with money, and nothing but money, leading to the inference that a proper remedy to the wrong would be to provide the injured party with the payment that should have been directed to them. Also, just as the law of trust guided the Court in White Mountain, the law of contracts should guide the Court in this instance. It goes without saying that if a debtor carelessly or maliciously sends the creditor's payment to an unauthorized party, the debtor is still liable to the creditor. That simple scenario is exactly what happened in the present case.

Finally, it should be noted that the Government's res judicata based arguments are totally inapplicable the 10 U.S.C. § 2785 cause of action. Since Mr. Kawa was the "person to whom disbursement is authorized to be remitted" under Purchase Order 4191, JGB could probably not have even brought suit under the section of law, and thus it is ludicrous to suggest that Mr. Kawa's interests under this section were adequately represented in the JGB case.

## V. THE ASSIGNMENT OF CLAIMS ACT IS AN INDEPENDENT BASIS OF JURISDICTION

In Mr. Kawa's second amended complaint, he asserts the independent jurisdictional basis of the Assignment of Claims Act. The Government's supplemental motion to dismiss does not coherently address this issue; rather the Government discusses the merits of Mr Kawa's assignment claim on page 19, in its section dealing with Tucker Act jurisdiction. Accordingly, we have addressed the merits above, in section "D" under the heading of Tucker Act jurisdiction.

However, the Assignment of Claims Act itself gives the Court jurisdiction over an assignee's claims for wrongful payment. Thomas Funding Corp. v. U.S., 15 Cl. Ct. 495, 502 (1988) stated "[a]s has long been recognized by this court and its predecessor, the Court of Claims, an assignee to the proceeds of a Government contract under the Assignment of Claims Act is entitled to sue the government. . ." and "this court has jurisdiction under the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15, only for plaintiff's claim for wrongful payment." Likewise, Twin City Shipyard, Inc. v. U.S., 21 Cl. Ct. 582, 589 (1990) indicated that even in the absence of Tucker Act or Contract Disputes Act jurisdiction, an assignee may sue the Government to recover proceeds paid out to a third party. Riviera Finance of Texas, Inc. v. U.S., 58 Fed. Cl. 528, 530 (2003), allowed an assignee to recover with no discussion of jurisdiction under the Tucker Act or Contract Disputes Act, implicitly confirming that the Assignment of Claims Act is a sufficient independent basis for jurisdiction.

## VI. RES JUDICATA AND ISSUE PRECLUSION DO NOT APPLY.

The Government argues that Mr. Kawa is preclude from bringing suit, since he was "virtually represented" by JGB in a prior litigation, which involved different parties, causes of action, and material facts.

As an initial matter, the Government fails to clearly distinguish between the doctrines of res judicata and issue preclusion. Throughout its supplemental motion to dismiss, without even offering a legal justification, the Government attempts to use issues of fact and law decided in JGB against Mr. Kawa in the present litigation. (for example, see pages 13, 15, 16, 18, 21). The use of a previously decided issue of law or fact against a party who did not appear in the previous litigation is called "issue preclusion." Issue

preclusion does not prevent a party from maintaining suit, rather it merely precludes a party from re-litigating certain questions. The Government seems to assume that it is automatically entitled to issue preclusion, but this is not the case. Mother's Restaurant Inc. v. Mama's Pizza, Inc., cited by the Government in the res judicata portion of its brief, actually gives the Federal Circuit test for **issue preclusion**: "(1) the issues to be concluded are identical to those used in the present action; (2) in that action the issues were raised and 'actually litigated'; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully represented in the prior action." Id. at 1569. The Government does not satisfy this test since: (1) Mr. Kawa was expressly named by in the remittance clause of Purchase Order 4191, allowing him to bring causes of action under contract, assignment, and 10 U.S.C. § 2785 not available to JGB, (2) Mr. Kawa's unique claims were not actually litigated, (3) facts regarding Mr. Kawa's personal claims were not necessary and essential to the prior action, and (4) due to their different legal stances, Mr. Kawa was not adequately represented by JGB.

Res judicata, on the other hand, is a doctrine where a party, or its privy, is completely precluded from bringing suit, since the party has already litigated the matter at issue. Obviously, Mr. Kawa has not personally litigated the matter at issue. By indiscriminately citing a mixture of non-binding precedent and precedent regarding issue preclusion, the Government attempts to argue that Mr. Kawa is barred from bringing suit in this matter, due to "virtual representation." The Government states that res judicata is a "well established doctrine" and goes on to claim that "A plaintiff is a 'privy' to a party who brought an earlier suit when the party to the original suit 'is so closely aligned with

the non-party [plaintiff's] interests as to be its **virtual representative**." (emphasis added) *citing* Mother's Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566,1572 (Fed. Cir. 1983). What the Government fails to acknowledge is that while res judicata may be well established, the "virtual representation" doctrine which it relies upon is controversial, uncertain, is treated with the utmost caution by the Court of Federal Claims and the Federal Circuit, and has been rejected or severely limited by other Circuits. In addition, even if virtual representation is to be accepted in theory, it does not apply to Mr. Kawa, since he is asserting different legal rights than those asserted by JGB.

Mother's, 723 F.2d 1566, relied upon by the Government to establish that virtual representation applies to Kawa, is actually inapplicable. As noted above, it dealt with issue preclusion, which does not actually preclude a part from bringing suit, and is thus a less drastic doctrine. The Government has not cited a single case where the Court of Federal Claims, or the Federal Circuit, has applied the doctrine of virtual representation in a true res judicata situation. In Mothers, a subsidiary of a restaurant had previously sued without success, and the parent corporation brought suit. The Court held that "Similarly, a non-party who 'controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party'" Id. at 1572. Mr. Kawa did not and does not control JGB, and did not control JGB's presentation of the prior suit. Mother's also stated that issue preclusion applies "If the parties to the original action disputed the issue and the trier of fact resolved it" Id. at 1570. The issue of Michael Kawa's status as an assignee, third party beneficiary, and contracting party was never decided in JGB. In fact, since 10 U.S.C. § 2785 protects "the person to whom the disbursement is authorized to be

remitted" this cause of action could likely be brought only by Mr. Kawa himself. As has been repeatedly pointed out, and is apparent from the decision in JGB, the prior case turned upon facts regarding the knowledge of the Contracting Officers that do not apply to Mr. Kawa.

In any case, the Court of Federal Claims has been most reluctant to extend the precedent of Mothers beyond the narrow facts of that decision. Florida Power & Light Co. v. United States, 41 Fed. Cl. 477, 492 (1998) *reversed on other grounds by* 198 F.3d 1358 (Fed. Cir. 1999) referred to virtual representation as a "narrow doctrine" and stated Mothers was "the only case in which the Federal Circuit has expressly applied virtual representation." Florida Power & Light also stated that "*Res judicata* operates against a very small population." Id. at 484. In fact, if res judicata operates against a very small population in the Federal Circuit, res judicata based upon virtual representation apparently operates against no one at all, which explains the Government's reliance upon the precedent of other Circuits.

In any case, regarding the supposedly persuasive precedent cited by the Government, several recent Federal cases cast increasing doubt upon the validity of the doctrine of virtual representation. "As a preliminary matter, the viability of the 'virtual representation' doctrine is far from certain" Sullivan v. Potter 2006 WL 785289 (D.D.C., 2006). As a matter of fact, virtual representation has been outright rejected by the Sixth Circuit, stating "[t]he 'virtual representation' standard converts the traditional doctrine of res judicata from a relatively clear set of rules to a vague principle relying on balancing the equities as a result of a close inspection and analysis of the relationship between the

parties in each individual case." Bittinger v. Tecumseh Products Company, 123 F.3d 877, 881 (6th Cir. 1997).

The Government also cites Tyus v. Schoemehl 93 F.3d 499 (8th Cir, 1996) in support of its virtual representation arguments. The actual language of this case is worthy of a closer look, as the case puts forth three categories of persons who will be considered to be in privity: "(1) a nonparty who controls the original action; (2) a successor-in-interest to a prior party; and (3) a non-party whose interests were adequately represented by a party to the original action." Id. at 454. Mr. Kawa did not control the prior action, and is not a successor in interest. His interests were obviously not adequately represented by JGB, since JGB's claim failed for a reason not applicable to Mr. Kawa's.

Turning more directly to the Government's points, the Government states that res judicata applies when: "(1) there is identity of parties (or their privies); (2) there has been and earlier final judgment on the merits of a claim; and (2) the second claim is based on the same set of transactional facts as the first." *citing* JET Inc., v. Sewage Aeration Systems, 223 F.3d 1566, 1572 (Fed. Cir. 1983). The more recent case of Bailey v. United States 54 Fed. Cl. 459, 474 (2002), not cited by the Government, contains the same test. According to the Government, "all three elements are met here."

First, the Government asserts that Mr. Kawa is "a privy of JGB." However, the Government neglects to apply any of the tests for determining privity, such as found in Tyus v. Schoemehl, 93 F.3d at 454. Instead the Government makes several irrelevant statements, such as "Mr. Kawa previously represented JGB in his capacity as an attorney. . ." [not in the JGB litigation], and "although Mr. Kawa has re-phrased the Wherefore

Clause in the second amended complaint to allege that he is entitled to $43,987.50, this amount must be forwarded to JGB. . ." Once again, Mr. Kawa did not control JGB or the previous litigation, is not successor in interest, and was not adequately represented in the previous litigation. The facts regarding Mr. Kawa are sharply different from the facts regarding JGB. Mr. Kawa's name and address were on the face of PO 4191, while JGB was behind the scenes. JGB's lack of visibility was what led to the failure of its claim on Purchase Order 4191. The legal analysis used in JGB is simply not applicable to a claim by Kawa, and the JGB decision leads to the conclusion that Mr. Kawa, the named third party beneficiary, is actually the better plaintiff. This difference in rights eliminates the privity needed for res judicata: "[t]o be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents **precisely the same legal right** in respect to the subject matter involved." (emphasis added) Martin v. American Bancorporation Retirement Plan 407 F.3d 643, 651 (4th Cir. 2005); Chaudhary v. Stevens; 2005 WL 1923231 (E.D. Va.).

Second, the Government asserts that "there has been a final judgment upon JGB's PO 4191 claim." This is true; there has been a judgment upon JGB's claim. What there has not been is a judgment on Mr. Kawa's claim, which is substantially different, due to his being expressly named in Purchase Order 4191. Also, the statement that "Mr. Kawa should not be permitted to re-litigate JGB's claim for JBG's sole benefit" is factually inaccurate. As clearly explained in the complaint, Mr. Kawa served as an escrow agent for both Capital City Pipes and JGB, with an obligation to turn money over to both parties. When Mr. Kawa collects the payment due under PO 4191 from the Government, he will be bound turn a portion over to Capital City's trustee in bankruptcy.

**CONCLUSION**

When considered under the proper standard, Plaintiff's second amended complaint may only be dismissed if it fails to allege facts under which jurisdiction lies, or "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." This is simply not the case, as each and every clause of action is properly and thoroughly pleaded. In so far as the Defendant has deviated from this clear standard, it has engaged in a colossal waste of the Court's and the Plaintiff's time and resources.

Furthermore, res judicata and issue preclusion are completely inapplicable, since Mr. Kawa is asserting different causes of action, based upon different material facts, than JGB asserted in previous litigation. Mr. Kawa has standing in his own right, as the only party who may hold the Government to account for its misdeeds. Arguments to the contrary are merely an attempt by the Government to have it both ways, and to prevent anyone from bringing a claim to recover for the Government's mistake. Mr. Kawa asks only that he be given a chance to prove his case on the merits.

Respectfully Submitted,
s/ Joseph A. Camardo, Jr.
Joseph A. Camardo, Jr.
127 Genesee Street
Auburn, NY 13021
Tel: (315) 252- 3846
Fax: (315) 252 -3508
*Attorney for Defendant*

February 2, 2007