# In the United States Court of Federal Claims

No. 06-448 C
Filed June 28, 2007
TO BE PUBLISHED

|  |  |
|---|---|
| MICHAEL KAWA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) | Subject matter jurisdiction; Tucker Act, 28 U.S.C. § 1491; constitutional standing; injury-in-fact; real party in interest; RCFC 17(a); escrow agent; trustee; bailee; 10 U.S.C. § 2785; money-mandating statute; implied contract; Contract Disputes Act, 41 U.S.C. § 601 *et seq.*; third-party beneficiary; assignment of right to payment; *res judicata*; issue preclusion; claim preclusion; privity |

Joseph A. Camardo, Jr., Auburn, New York, for plaintiff.

Nancy M. Kim, Trial Attorney, Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's supplemental motion to dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Defendant filed its motion ("Def.'s Mot.," docket entry 18) on December 19, 2006. Plaintiff Michael Kawa, Esq., filed his opposition to defendant's motion ("Pl.'s Opp'n.," docket entry 20) on February 2, 2007. Defendant filed its reply ("Def.'s Reply," docket entry 22) on March 12, 2007.

The Court concludes, for the reasons set forth below, that plaintiff has standing, is a real party in interest, and has pleaded facts sufficient to survive the Government's jurisdictional challenge. Furthermore, contrary to the Government's argument, Mr. Kawa's claim is not barred by the claim preclusion aspect of *res judicata* because there are factual issues as to whether he was in privity with the plaintiff in a prior action against the United States. Therefore, the Court denies the Government's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## *BACKGROUND*[1]

Beginning in 1998, the Defense Supply Center Columbus ("DSCC") set aside its requirements for hose assemblies, previously supplied by JGB Enterprises, Inc. ("JGB"), for Capital City Pipes ("Capital City") under the 8(a) Business Development Program ("8(a) BD Program"). Second Amended Complaint ("Sec. Am. Compl.," docket entry 15) ¶ 8; *JGB Enters.*, 63 Fed. Cl. at 323. The purpose of the 8(a) BD Program, established as part of the Small Business Act, "is to assist eligible small disadvantaged business concerns compete [sic] in the American economy through business development." 13 C.F.R. § 124.1 (2007). To qualify for admission to the 8(a) BD Program, a small business concern must be "unconditionally owned and controlled by one or more socially and economically disadvantaged individuals who are of good character and citizens of the United States"; the small business concern must also demonstrate the potential for success. 13 C.F.R. § 124.101 (2007). On April 30, 1999, pre-award Contracting Officer ("CO") Lu Ann Bocsy forwarded a copy of solicitation number SP050-99-Q-5778 to Capital City, requesting a quote for certain hose assemblies. Sec. Am. Comp. ¶ 9. As Capital City and the DSCC negotiated, Capital City informed the DSCC that it intended to subcontract the work to JGB. *Id.* ¶ 11.

JGB was concerned that it would not be paid by Capital City for the hose assemblies it assembled and delivered to the DSCC, *id.* ¶ 15, so DSCC Small Business Specialist Michael Taylor suggested that JGB enter into an escrow agreement with Capital City pursuant to which the escrow agent would receive funds directly from the DSCC and would, in turn, disperse those funds to JGB and Capital City. *Id.* ¶ 16. On November 9, 1999, Capital City sent a facsimile to Ms. Bocsy, confirming Capital City's prior offer to provide hose assemblies under Purchase Order 4191, and requesting that the payment remittance address be changed to:

> Capital City Pipes, Inc.
> Michael Kawa Esq.
> 300 Crown Building
> 304 S. Franklin Street
> Syracuse, NY 13202

*Id.* ¶ 17; Def.'s Mot. 3. On November 10, 1999, Capital City and JGB entered into an escrow agreement under which plaintiff was appointed escrow agent for the receipt of payments under all DSCC-Capital City contracts for which JGB was the subcontractor. Sec. Am. Compl. ¶ 18.

Also on November 10, 1999, Capital City sent a letter to CO Bocsy, as a follow-up to its facsimile, requesting that the payment remittance address be changed to:

---

[1] The facts set forth herein do not constitute findings of fact by the Court. All of the stated facts are either undisputed or alleged and assumed to be true for purposes of the pending motion. For the purpose of the *res judicata* analysis, the Court has taken judicial notice of undisputed matters of record from *JGB Enterprises, Inc. v. United States*, 63 Fed. Cl. 319 (2004).

>Michael Kawa Esq.
>300 Crown Building
>304 S. Franklin Street
>Syracuse, NY 13202

*Id.* ¶ 19.  Furthermore, to resolve any confusion that inconsistencies between the facsimile and letter may have caused, Capital City sent another facsimile to CO Bocsy on November 15, 1999, reiterating that the payment remittance address was to be changed to:

>Michael Kawa Esq.
>300 Crown Building
>304 S. Franklin Street
>Syracuse, NY 13202

*Id.* ¶ 20.

On November 24, 1999, the DSCC awarded Purchase Order 4191 to Capital City.  The purchase order was for 306 hose assemblies, for a total cost to the DSCC of $45,275.76.  *Id.* ¶ 24.  Pursuant to Capital City's November 10 and 15 requests, Purchase Order 4191 listed plaintiff as the party to whom the DSCC should remit payment.  *Id.*

JGB shipped the hose assemblies purchased under Purchase Order 4191 to the Defense Department Depot on February 8, 2000, and sent the required documentation to the Government.  The Government accepted delivery of the hose assemblies.  *Id.* ¶ 28.  In spite of the remittance address on Purchase Order 4191, on April 24, 2000, without informing plaintiff, the Government paid Capital City directly by electronic funds transfer the amount due under Purchase Order 4191.  *Id.* ¶ 37.  Capital City did not pay JGB for the hose assemblies.  *JGB Enters.*, 63 Fed. Cl. at 327.

JGB sued the Government for payment under Purchase Order 4191.  *JGB Enters.*, 63 Fed. Cl. at 330.  This Court held that JGB was neither a third-party beneficiary of the purchase order nor was it in privity of contract with the Government.  *Id.* at 326–27.  On February 18, 2005, JGB appealed and the Government cross-appealed from the Court's judgment in that case.  JGB has since withdrawn its appeal.  Although the Government's cross-appeal from the Court's judgment in *JGB Enterprises* is still pending in the United States Court of Appeals for the Federal Circuit (Docket No. 05–5065) (oral argument held on May 11, 2007), the issue on appeal is unrelated to plaintiff's claim in this case and will not affect the outcome in *JGB Enterprises* with respect to liability.

*DISCUSSION*

I.   **Standard of Review**

Plaintiff is responsible for setting forth a jurisdictional basis for his claims.  *See* Rule 8(a)(1) of the Rules of the United States Court of Federal Claims ("RCFC") (the complaint must contain "a short and plain statement of the grounds upon which the court's jurisdiction depends").  "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  When the Court hears a jurisdictional challenge, "its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court must accept as true the facts alleged in the complaint, and must construe such facts in the light most favorable to the pleader.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (holding that courts are obligated "to draw all reasonable inferences in plaintiff's favor").

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where "the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy."  *Holland v. United States*, 59 Fed. Cl. 735, 738 (2004) (citing *N.Y. Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed. Cir. 1999)).  In considering the Government's motion to dismiss, the Court must assume the truth of all well-pleaded allegations in plaintiff's Second Amended Complaint and draw all reasonable inferences in plaintiff's favor.  *Perez v. United States*, 156 F.3d 1366, 1370 (1998).  If "plaintiff can prove no set of facts in support of his claim that would entitle him to relief," his claim is properly dismissed on a motion pursuant to RCFC 12(b)(6).  *Southfork Sys. v. United States*, 141 F.3d 1124, 1131 (Fed. Cir. 1998).

II.   **The Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction Is Denied Because Plaintiff Has Alleged an Injury-in-Fact, Is a Real Party in Interest, and Has Pleaded Facts Sufficient to Confer Jurisdiction upon the Court**

Like all federal courts, the Court of Federal Claims is a court of limited jurisdiction.  *Phaidin v. United States*, 28 Fed. Cl. 231, 233 (1993); *Dynalectron Corp. v. United States*, 4 Cl. Ct. 424, 428 (1984).  Absent congressional consent to entertain a claim against the United States, the Court lacks authority to grant relief.  *See United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Congressional consent to suit in the Court of Federal Claims, which thereby waives sovereign immunity, must be explicit and strictly construed.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

The Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), constitutes a waiver of sovereign immunity.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The Tucker Act grants the Court jurisdiction over claims for money damages against the United States founded either upon the

Constitution, a federal statute or regulation, or upon an express or implied contract with the United States.

The Tucker Act does not itself create a substantive right of action enforceable against the United States. *Testan*, 424 U.S. at 398. Plaintiff must therefore identify another source of law that creates the substantive right and demonstrate that such source of law mandates compensation. *Mitchell*, 463 U.S. at 216–17. The other source of law must be "reasonably amenable to the reading that it mandates a right of recovery in damages." *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003)). If the Court determines that the source of law identified by plaintiff meets the money-mandating test, it will "declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (en banc). On the other hand, "[i]f the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction." *Id.*

> A. <u>Plaintiff Has Alleged an Injury-in-Fact Sufficient to Confer Standing to Bring this Suit, and Plaintiff Is a Real Party in Interest</u>

"A fundamental jurisdictional consideration for any federal court, including Article I courts, is whether the plaintiff has constitutional standing." *Aldridge v. United States*, 59 Fed. Cl. 387, 388 (2004) (citing *Glass v. United States*, 258 F.3d 1349, 1355–56 (Fed. Cir. 2001)). "Article III of the United States Constitution limits the function of the federal courts to resolving matters that involve only actual 'cases' or 'controversies.'" *Sterling Sav. v. United States*, 57 Fed. Cl. 234, 236 (2003) (citing *McKinney v. United States Dep't of Treasury*, 799 F.2d 1544, 1549 (Fed. Cir. 1986)). Because the issue of standing implicates the Court's constitutional authority, it cannot be waived or assumed. *Willis v. Gov't Accountability Office*, 448 F.3d 1341, 1343–44 (Fed. Cir. 2006). Rather, "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]." *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"To establish standing, a plaintiff must show that he suffered an injury-in-fact that is both fairly traceable to the challenged conduct of the defendant and likely redressable by a favorable judicial decision." *Figueroa v. United States*, 466 F.3d 1023, 1029 (Fed. Cir. 2006) (citing *DaimlerChrysler Corp. v. Cuno*, --- U.S. ---, ---, 126 S. Ct. 1854, 1861 (2006)). The Government asserts that plaintiff lacks standing because he has failed to allege an injury-in-fact. Def.'s Mot. 10. The Government points to the fact that, under the escrow agreement, plaintiff was not liable to JGB or Capital City unless he received money from the Government; in fact, the Government argues, under the escrow agreement, plaintiff's liability was limited to instances of gross negligence or willful misconduct. *Id.* Although the Government did not remit payment to plaintiff, because he had no liability to JGB or Capital City, the Government argues, plaintiff

suffered no injury, and therefore lacks standing to pursue this action. *Id.* at 11. In addition, the Government argues that plaintiff is not asserting his own legal rights but is instead attempting to obtain payment for JGB and is, therefore, not the real party in interest. *Id.*

Plaintiff responds that he has suffered an injury-in-fact because he did not receive the "physical check" due him under Purchase Order 4191. Pl.'s Opp'n 17.[2] He also maintains that "he had a legally protected interest, and right, to receive payment," and it is this interest, not the ultimate destination of the monies, that is important when ascertaining constitutional standing. *Id.* at 19. Furthermore, he argues, under RCFC 17(a), a bailee and the trustee of an express trust both have standing to sue in their own names, as real parties in interest, without joining any other party. *Id.* at 17–18. According to plaintiff, the duties of an escrow agent encompass "the duties of a 'bailee' as well as the fiduciary duties of a 'trustee of an express trust.'" *Id.* at 18. Plaintiff asserts that, because their functions are substantially similar, it would not make sense for bailees and trustees to have standing while escrow agents do not, and plaintiff cites cases in which trustees and administrators of estates were held to have standing to sue. *Id.* at 18–20.

The Government replies that an escrow agent differs from a trustee or bailee in two significant ways: (1) while a trustee holds legal title to the property in a trust, and a bailee acquires a possessory interest in the property, an escrow agent does not possess any interest in the property in an escrow account; and (2) an escrow agent's duties and responsibilities are significantly narrower than those of a trustee or bailee. Def.'s Reply 3–4.

The Government has argued both that plaintiff lacks standing to sue and that plaintiff is not a real party in interest with regard to the alleged cause of action. Although these two arguments are related, they must be analyzed separately. *Am. Mar. Transp., Inc. v. United States*, 18 Cl. Ct. 283, 290 (1989). "The court must first determine that the litigant satisfies the core standing requirements to assure itself that it has the judicial power to address the litigant's claims. Then, it must determine whether any prudential limitations restrain the court from

---

[2] If plaintiff ultimately proves that he is entitled to the actual physical check because the Government has breached a contract to which he was a party, or of which he was a third-party beneficiary, or pursuant to which he was the assignee from Capital City of the right to receive payment, as plaintiff alleges, the damages to which he would likely be entitled would be *de minimis*, or nominal in nature. "'Nominal damages' ordinarily are awarded where, although the plaintiff has established the merits of his claim, he has not shown any actual damages. The nominal damages, frequently $1 or sometimes $.06, are intended to vindicate the plaintiff's institution of the law suit." *Hubbard v. United States,* 480 F.3d 1327, 1331 (Fed. Cir. 2007); *see* RESTATEMENT (SECOND) OF CONTRACTS § 346 cmt. b (1981) ("Although a breach of contract by a party against whom it is enforceable always gives rise to a claim for damages, there are instances in which the breach causes no loss. . . . In [such an instance] the injured party will nevertheless get judgment for nominal damages . . . ."). According to the theory plaintiff has advanced to establish injury-in-fact, he would only be entitled to the value of the physical check or the right to receive it and not to the amount due under Purchase Order 4191.

exercising that power." *Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674, 677 n.4 (2002) (citations omitted).

With regard to standing, "where the likelihood of proving damages is minimal, a party's status, rather than the merits of the claim, is the proper focus of a standing inquiry." *Sterling Sav.*, 57 Fed. Cl. at 237. Plaintiff alleges that he was entitled to receive the physical check from the Government and was injured by "the violation of his legally protected right to receive payment." Pl.'s Opp'n 17, 20. The Government argues that plaintiff did not suffer an injury because he was required to forward any payment he received to JGB and Capital City. Def.'s Mot. 10. In *American Maritime Transport*, 18 Cl. Ct. at 290–91, the Court of Claims held that plaintiff had standing to sue for a subsidy where the Government had refused to make payment; the fact that plaintiff was contractually obligated to forward payment to a party with whom it had contracted did not strip the plaintiff of standing. It follows that in the instant case, plaintiff has standing to sue despite his obligation to forward any recovery to JGB and Capital City.

The Government also argues that plaintiff has no injury because he was protected from liability under the escrow agreement with JGB and Capital City. Def.'s Mot 10. In *Castle v. United States*, 301 F.3d 1328, 1339–41 (Fed. Cir. 2002), a *Winstar*-related case, the Federal Circuit held that plaintiffs had standing to sue even though they were not entitled to damages for the Government's alleged breach of contract. Because the plaintiffs in *Castle* were not individually contractually obligated to recapitalize the troubled thrift they had acquired, but did so voluntarily, they were not individually subject to financial liability and were therefore not entitled to recover damages. *Id.* at 1340. Similarly, here, plaintiff has standing to sue even though he is not subject to liability under the escrow agreement with JGB and Capital City. Furthermore, "[t]his is not a case in which a nominal plaintiff with a tenuous individual interest seeks to vindicate a very generalized or societal harm." *Am. Mar. Transp.*, 18 Cl. Ct. at 291 (citations omitted). Accordingly, plaintiff has standing to bring this suit.

In addition to the requirement of constitutional standing, RCFC 17(a) provides that every action "shall be prosecuted in the name of the real party in interest." "A determination of who is a real party in interest is made with reference to the substantive rights at issue. Thus, a party who possesses the right sought to be enforced is a real party in interest, even though another party may be the beneficiary of the eventual recovery." *Am. Mar. Transp.*, 18 Cl. Ct. at 290 (citing *Proctor v. Gissendaner*, 579 F.2d 876, 880 (5th Cir. 1978)) (internal citation omitted). Furthermore, a real party in interest, such as an "executor, administrator, guardian, bailee, [or] trustee of an express trust . . . may sue in that person's own name without joining the other party for whose benefit the action is brought." RCFC 17(a). Plaintiff alleges that as an escrow agent, his duties were analogous to those of a bailee or the trustee of an express trust and he is, as a result, a real party in interest. Pl.'s Opp'n 18. The Government argues that an escrow agent, unlike a bailee or trustee, acquires no interest in the escrowed property or monies, has significantly more limited duties, and is therefore not a real party in interest. Def.'s Reply 3–4.

The real parties in interest enumerated by RCFC 17(a) "are not exceptions to, but illustrations of, the rule." FED. R. CIV. P. 17 advisory committee's note (1966 Amendments); *see generally Flowers v. United States*, 75 Fed. Cl. 615, 624 n.29 (2007) ("In general, the rules of this court are patterned on the FRCP.  Therefore, precedent under the FRCP is relevant to interpreting the rules of this court . . . ."). As such, their enumeration carries "no negative implication to the effect that there are not other instances of recognition as the real party in interest of one whose standing as such may be in doubt." FED. R. CIV. P. 17 advisory committee's note (1966 Amendments). Therefore, the absence of "escrow agent" from the list of enumerated parties in RCFC 17(a) does not preclude an escrow agent from being a real party in interest.

Pursuant to the escrow agreement with JGB and Capital City, plaintiff was to receive payment from the Government for work done under all DSCC-Capital City contracts for which JGB was a subcontractor; then, plaintiff was to distribute the appropriate funds to JGB and Capital City.  Sec. Am. Compl. ¶ 18.  Plaintiff alleges that his duties encompassed those of a bailee or trustee.  Pl.'s Opp'n 18.  A bailee is a "person who receives personal property from another" and "who holds the property for a certain purpose under an express or implied-in-fact contract"; although a bailee has possession of the property, the bailor retains title.  BLACK'S LAW DICTIONARY 151–52 (8th ed. 2004).  A trustee, by contrast, is "[o]ne who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." *Id.* at 1553.  An escrow agent is defined as "[t]he third-party depository of an escrow," *id.* at 69, which is a "legal document or property delivered . . . to a third party to be held by the third party for a given amount of time or until the occurrence of a condition." *Id.* at 584.  Because a bailee and an escrow agent both hold property, without title, for a specific time or purpose, the role of an escrow agent appears to this Court to be similar to that of a bailee.  Because plaintiff's duties and responsibilities under the escrow agreement are similar to the duties and responsibilities of a bailee, and because the Government has not identified any difference between a bailee and an escrow agent for purposes of RCFC 17(a), the Court finds that plaintiff is a real party in interest.

Because the Court finds that plaintiff has standing to bring this suit and is a real party in interest, the Court denies the Government's RCFC 12(b)(1) motion based on those grounds.

      B.      <u>Defendant's Other Grounds For Dismissal Under RCFC 12(b)(1) Fail</u>

The Government presents several other grounds on which it asserts the Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction. However, construing the facts alleged in the Second Amended Complaint in the light most favorable to plaintiff, this Court concludes that those grounds are unavailing.

        1.        Although 10 U.S.C. § 2785 Is Not a Money-Mandating Statute, This Court Nonetheless Has Jurisdiction Under the Tucker Act Because Plaintiff Alleges a Contractual Relationship and Third-Party Beneficiary Status

Plaintiff alleges that this Court has jurisdiction under the Tucker Act because (1) the Government altered the remittance address in contravention of 10 U.S.C. § 2785 (2000), Sec. Am. Compl. ¶¶ 57–61; (2) plaintiff entered into an express or implied-in-fact contract with the Government, *id.* ¶¶ 62–69, 70–75; and (3) plaintiff was a third-party beneficiary of Purchase Order 4191, *id.* ¶¶ 49–56.

        a.        Section 2785 of Title Ten of the United States Code Is Not a Money-Mandating Statute

For the reasons set forth below, this Court concludes that 10 U.S.C. § 2785 does not provide a basis for the Court's jurisdiction over this action because the statute is not money-mandating. Under the statute,

> The Secretary of Defense, acting through the Under Secretary of Defense (Comptroller), shall prescribe regulations setting forth controls on alteration of remittance addresses. Those regulations shall ensure that—
>
>   (1) a remittance address for a disbursement that is provided by an officer or employee of the Department of Defense authorizing or requesting the disbursement is not altered by any officer or employee of the department authorized to prepare the disbursement; and
>
>   (2) a remittance address for a disbursement is altered only if the alteration—
>
>     (A) is requested by the person to whom the disbursement is authorized to be remitted; and
>
>     (B) is made by an officer or employee authorized to do so who is not an officer or employee referred to in paragraph (1).

10 U.S.C. § 2785.

Because the Tucker Act, as a waiver of sovereign immunity, must itself be strictly construed, the Court "does not strictly construe the substantive law against the claimant" in determining whether a statute is money-mandating for the purpose of Tucker Act jurisdiction. *Samish Indian Nation v. United States*, 419 F.3d 1355, 1364 (Fed. Cir. 2005); *see White Mountain Apache Tribe*, 537 U.S. at 473 ("While the premise to a Tucker Act claim will not be 'lightly inferred,' a fair inference will do." (quoting *Mitchell*, 463 U.S. at 218)). Furthermore, where the text of a statute leaves the Government some discretion in making payment on claimed

funds, the statute may still be construed as money-mandating if it "(1) . . . provide[s] 'clear standards for paying' money to recipients; (2) . . . state[s] the 'precise amounts' that must be paid; or (3) as interpreted, compel[s] payment on satisfaction of certain conditions." *Samish Indian Nation*, 419 F.3d at 1364 (quoting *Perri v. United States*, 340 F.3d 1337, 1342–43 (Fed. Cir. 2003)).  The statute relied upon by plaintiff does none of those things; rather, it calls for the Secretary of Defense to prescribe regulations and indicates what should be included in those regulations.  Because 10 U.S.C. § 2785 does not provide for the payment of money, state a precise amount of money, or otherwise compel the payment of money, it does not provide a basis for this Court to entertain an action for damages for the Government's alleged violation of that provision.

                b.        Plaintiff Has Pleaded that the Government Breached an Express or Implied Contract to Which He Was a Party

Tucker Act jurisdiction is not limited to money-mandating statutes.  "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).  Plaintiff alleges that he entered into an express or implied-in-fact contract with the Government.

The Government asserts that "none of Mr. Kawa's theories [of contract] have any merit.  Accordingly, this Court should dismiss Mr. Kawa's amended complaint for lack of jurisdiction." Def.'s Mot. 14.  Although the Government may be correct that ultimately the Court will determine that plaintiff's theories are without merit, plaintiff has pleaded a jurisdictional basis for his implied contract claim.  An implied-in-fact contract requires "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (citing *Russell Corp. v. United States*, 210 Ct. Cl. 596, 609, 537 F.2d 474, 482 (1976)).  Additionally, when the United States is a party to the alleged contract, "the Government representative 'whose conduct is relied upon must have actual authority to bind the government in contract.'" *City of El Centro*, 922 F.2d at 820 (quoting *Juda v. United States*, 6 Cl. Ct. 441, 452 (1984)).[3]

In the Second Amended Complaint, plaintiff alleges that he and the Government both intended to contract. Sec. Am. Compl. ¶¶ 63–64.  He claims that the shipment of hose assemblies constituted consideration for the Government's agreement to make payment to him. *Id.* ¶ 65.  Plaintiff also alleges that the escrow agreement, "prepared at the suggestion of Government officials," constituted an offer, and CO Bocsy's act of typing plaintiff's name and address on the purchase order constituted acceptance of that offer. *Id.* ¶ 66.  Finally, he asserts that the CO "who signed Purchase Order 4191 had full authority to bind the Government." *Id.*

---

     [3] The elements required to create a contract implied-in-fact are the same as those required to create an express contract. *See Thomas Funding Corp. v. United States*, 15 Cl. Ct. 495, 500 (1988).

The Government disagrees with plaintiff's assertions, arguing there was no intent to contract, the delivery of hose assemblies did not constitute consideration, and there was no offer and acceptance. Def.'s Mot. 16–17.

The Government's arguments challenge the factual bases of plaintiff's assertions rather than the legal sufficiency of plaintiff's allegations that his claim is founded upon an express or implied contract. The Federal Circuit has acknowledged that "[c]onfusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction." *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687 (Fed. Cir. 1992). Tucker Act jurisdiction is conferred upon this Court when a party alleges an implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1). Here, plaintiff has alleged an implied contract with the Government as a basis not only for relief, Sec. Am. Comp. ¶¶ 62-69, but for jurisdiction as well. Pl.'s Opp'n. 24–25. "[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven." *Total Med. Mgmt. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing *Spruill*, 978 F.2d at 686). In other words, a "well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citing *Spruill*, 978 F.2d at 686).[4] When read in the light most

---

[4] In a discussion of subject matter jurisdiction over a contract claim in *Maniere v. United States*, 31 Fed. Cl. 410, 414–15 (1994), Judge Yock characterized the view set forth in the text as the "minority approach." Alternatively, and pursuant to what Judge Yock described as the "majority approach," when a party challenges the pleader's factual basis for jurisdiction and moves to dismiss under RCFC 12(b)(1), "the favorable presumption for the nonmovant's factual allegations ends." *Id.* at 413–14. Accordingly, the court looks beyond the pleadings to decide for itself "those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's motion." *Id.* at 414 (quoting *Mark Smith Constr. Co. v. United States*, 10 Cl. Ct. 540, 541 n.1 (1986)). The minority approach, by contrast, "considers such questions of fact as inappropriate for resolution under a Rule 12(b)(1) consideration." *Id.* at 414. Judge Yock ultimately applied the majority approach in *Maniere*, reasoning that he was bound to do so by an en banc decision of the Federal Circuit. *See Cruz v. Dep't of the Navy*, 934 F.2d 1240 (Fed. Cir. 1991) (en banc) (reviewing jurisdictional principles governing appeal of findings made by administrative judge to Merit Systems Protection Board following plaintiff's resignation from Navy).

Since the en banc decision in *Cruz*, a three-judge panel of the Federal Circuit has endorsed what Judge Yock described as the minority approach. *Spruill*, 978 F.2d 679. Judge Plager, writing for the panel, stated that "failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is 'without jurisdiction' is to obscure the nature of the defect." *Id.* at 687. In *Spruill*, as in *Cruz*, the petitioner challenged the decision of the Merit Systems Protection Board to dismiss his appeal for lack of subject matter jurisdiction. *Id.* at 680. Judge Plager acknowledged language in *Cruz* that seems to allow a court to rule on factual issues when

---

necessary to determine jurisdiction: "Here the Board never had jurisdiction. . . . That Cruz' resignation was not *found* to have been voluntary until November 25, 1988 does not change its voluntary nature at its birth on February 16, 1988. The Board had no jurisdiction at that point and did not acquire jurisdiction thereafter." *Id.* at 688 (quoting *Cruz*, 934 F.2d at 1247). Judge Plager explained, however, that the question being addressed in *Cruz* was:

> whether a pendent claim of discrimination could be decided by the MSPB when the principal issue—whether there was an involuntary removal—had already been decided, both by the MSPB and by this court, against the employee. The court correctly concluded that, absent proof of a cause of action for involuntary removal, there was nothing to which the discrimination claim could append.

*Id.* at 689. Judge Plager stated, in sum, that where "a nonfrivolous claim for relief has been asserted before the Board, and the outcome is determined by whether the facts support that claim, a decision by the Board that they do not is a failure to prove the claim, not a lack of jurisdiction in the Board." *Id.*

Were this Court to adopt what Judge Yock described as the majority approach, plaintiff's allegations of a contract implied-in-fact would likely be insufficient to survive the Government's motion to dismiss under RCFC 12(b)(1). In *JGB Enterprises*, 63 Fed. Cl. at 326, this Court found that, although CO Bocsy had complied with Capital City's requests to change the remittance address to that of plaintiff, she did not know why Capital City had requested the change. If the Court were to look beyond the pleadings and consider factual findings from *JGB Enterprises* in ruling on the Government's motion, without having in any way prejudged the matter, it is doubtful that plaintiff could show an intent by CO Bocsy to contract with him. There remains some question, however, as to the extent of the opportunity plaintiff must be given to support his jurisdictional allegations under the majority approach.

There is some authority for the proposition that, where the "jurisdictional issue is intertwined with the merits of the case," the decision on a motion to dismiss for lack of subject matter jurisdiction "should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004). More particularly, where "a decision on the jurisdictional issue constitutes at the same time a ruling on the merits, the courts have counseled against deciding the merits of the case summarily under the auspices of deciding the jurisdictional issue, without going to trial." *Truckee-Carson Irrigation Dist. v. United States*, 14 Cl. Ct. 361, 369 (1988) (citing *Cont'l Cas. Co. v. Dep't of Highways*, 379 F.2d 673, 674–75 (5th Cir. 1967)) (applying exception that court may dismiss where it appears, beyond legal certainty, that plaintiff cannot meet burden of basic jurisdictional requirement). In the instant case, the allegations relating to jurisdiction and to the merits of plaintiff's claim are necessarily intertwined, because plaintiff has pleaded an express or implied contract with the Government both as a basis for jurisdiction and as a basis for recovery on the

favorable to plaintiff, the facts alleged in the Second Amended Complaint adequately support this Court's exercise of subject matter jurisdiction under the Tucker Act.

                c.        <u>Plaintiff Has Pleaded that He Was an Intended Third-Party Beneficiary of Purchase Order 4191</u>

In the Second Amended Complaint, plaintiff alleges he was an intended third-party beneficiary of Purchase Order 4191, Sec. Am. Compl. ¶¶ 49–56, and he asserts that his status as such provides yet another basis for the Court to exercise Tucker Act jurisdiction. Pl.'s Opp'n 25–26. Privity of contract is generally required before a party may sue the Government directly. *See JGB Enters.*, 63 Fed. Cl. at 330 (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1551 (Fed. Cir. 1983)). Within the Federal Circuit, however, it is settled law that an intended third-party beneficiary of a government contract may bring an action under the Tucker Act. *Flexfab, L.L.C. v. United States*, 62 Fed. Cl. 139, 144–45 (2004); *Erikson v. United States*, 12 Cl. Ct. 754, 757 (1987); *Hebah v. United States*, 192 Ct. Cl. 785, 792, 428 F.2d 1334, 1339 (1970); *Maneely v. United States*, 68 Ct. Cl. 623, 629 (1929). To establish his status as a third-party beneficiary, plaintiff "must demonstrate that the contract not only reflects the express or implied intention to benefit [him], but that it reflects an intention to benefit [him] directly." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1259 (Fed. Cir. 2005) (quoting *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001)). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him." *Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997).

Plaintiff alleges that the Government demonstrated an "express intent" to benefit him when it placed his name on Purchase Order 4191 as payee. Sec. Am. Compl. ¶ 50. Plaintiff alleges that Capital City "expressly intended" to benefit him, as well, when it requested that the Government forward the check for payment due under the purchase order to him. *Id.* ¶ 52. Plaintiff further alleges that the express intent of the Government and Capital City is manifested on the face of the purchase order. *Id.* ¶ 53. If plaintiff had not relied upon this manifestation of intent, JGB would not have delivered the hose assemblies to the Government. *Id.* ¶ 54.

The Government challenges the allegation that CO Bocsy intended to benefit plaintiff and contests the reasonableness of plaintiff's reliance. Def.'s Mot. 18–19. However, the

---

merits. Consequently, this Court will deny the Government's RCFC 12(b)(1) motion at this time. The Court will address the merits of plaintiff's claim when they are presented to the Court, either on a motion for summary judgment or at trial.

As discussed in Section III.A, *infra*, issue preclusion would not bar litigation of plaintiff's contract claims, notwithstanding this Court's findings in *JGB Enterprises* that CO Bocsy did not know why Capital City requested the change in the remittance address and did not intend to benefit JGB when she complied with Capital City's request to make that change.

Government's contentions raise questions of fact going to both the jurisdictional basis for and the merits of plaintiff's claim and, as discussed in Section II.B.1.b, *supra*, those questions are not suitable for resolution on this record.[5] Construing the facts alleged in the Second Amended Complaint in the light most favorable to plaintiff, this Court has subject matter jurisdiction under the Tucker Act based on plaintiff's allegation that he was a third-party beneficiary.

        2.      The Contract Disputes Act Does Not Preclude the Court From Exercising Jurisdiction Over Plaintiff's Claim

Plaintiff alleges that the Court possesses jurisdiction to entertain his breach of contract theories pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq* (2000). Sec. Am. Compl. ¶ 4. The CDA governs "any express or implied contract . . . entered into by an executive agency." 41 U.S.C. § 602(a). Although the CDA applies to Purchase Order 4191, only a contractor may appeal the decision of a CO. *See JGB Enters.*, 63 Fed. Cl. at 331 (citing 41 U.S.C. §§ 609(a)(1), 605(a)). The CDA defines a "contractor" as "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). The Government argues that Capital City, and not JGB or plaintiff, is the contractor under Purchase Order 4191. Def.'s Mot. 13. However, as discussed in Section II.B.1.b, *supra*, whether plaintiff entered into an implied-in-fact contract with the Government is a question of fact going to the merits of plaintiff's claim, and is not suitable for resolution on this record.

        3.      Plaintiff Has Pleaded that the Government Recognized an Assignment of Payment Under Purchase Order 4191

Plaintiff also alleges that this Court has jurisdiction to hear his claim pursuant to the Assignment of Claims Act of 1940, as amended, 31 U.S.C. § 3727 (2000), and the Assignment of Contracts Act, 41 U.S.C. § 15 (2000). Sec. Am. Compl. ¶ 4. The "assignment" of a claim is defined as "(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim." 31 U.S.C. § 3727(a). While 31 U.S.C. § 3727(b) sets forth the procedure for

---

[5] In *JGB Enterprises*, this Court found that, with regard to Purchase Order 4191, "CO Bocsy, 'the only individual[] involved with authority to contract on behalf of the government, could not have intended to benefit [JGB] because [she] had no knowledge of the purpose of [changing] the remittance address.'" 63 Fed. Cl. at 335 (quoting *Flexfab*, 62 Fed. Cl. at 148–49). Furthermore, because neither Capital City nor JGB explained to CO Bocsy the vendor payment problem, and because they failed to explain plaintiff's role in receiving payment, "JGB was not 'reasonable in relying on the [remittance clause in PO 4191] as manifesting an intention to confer a right on [it].'" *Id.* (quoting *Mont. v. United States*, 124 F.3d at 1273 (Fed. Cir. 1997)). Given CO Bocsy's testimony in *JGB Enterprises*, but without having in any way prejudged the matter, it is doubtful plaintiff could prove that CO Bocsy intended to benefit *him* or that *his* reliance on the remittance clause in Purchase Order 4191 was reasonable. As discussed in Section III.A, *infra*, however, issue preclusion would not bar plaintiff from litigating those issues.

assigning a claim, 41 U.S.C. § 15 expressly prohibits the transfer of a contract or order, or any interest therein. 41 U.S.C. § 15 ("[A]ny such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned."). However, "[d]espite the bar of the Anti-Assignment statute (41 U.S.C. § 15), the Government, if it chooses to do so, may recognize an assignment." *Tuftco Corp. v. United States*, 222 Ct. Cl. 277, 285–86, 614 F.2d 740, 745 (1980) (quoting *Maffia v. United States*, 143 Ct. Cl. 198, 203, 163 F. Supp. 859, 862 (1958)). In the Second Amended Complaint, plaintiff alleges that Capital City provided CO Bocsy with notice of an assignment to plaintiff of Capital City's right to payment under Purchase Order 4191, that CO Bocsy recognized the assignment by changing the remittance address and designating plaintiff, a new entity, in the purchase order as payee, and that the Government thereby "waived any technical defects in the assignment procedure." Sec. Am. Compl. ¶¶ 42–48.

The Government argues that, although Capital City thrice requested a change in the remittance address, Capital City never provided CO Bocsy with any notice of assignment, nor did it identify plaintiff as "anyone other than a representative for Capital City." Def.'s Mot. 21. According to the Government, there was no "meeting of the minds" among Capital City, JGB, plaintiff, and the Government with regard to an assignment of payment due under the purchase order. *Id.*

Plaintiff responds that the Government, rather than addressing the alleged assignment as a basis for jurisdiction, has attacked his claim on its merits. Pl.'s Opp'n 33–34. The Government replies that plaintiff "may not maintain his action pursuant to the Anti-Assignment Act if he is not an assignee falling within the exception to the general prohibition against assignments." Def.'s Reply 9.

An assignee of the proceeds of a government contract is entitled to recover payment for work performed under the contract. *See Thomas Funding Corp.*, 15 Cl. Ct. at 502. However, due to lack of contractual privity with the Government, an assignee may not bring an action for breach of contract. *Id.* Rather, the assignee may only sue the Government to recover withheld funds where it is alleged that funds have been wrongfully paid out to a third party. *Id.*; *see also Twin City Shipyard, Inc. v. United States*, 21 Cl. Ct. 582, 588–89 (1990) (finding no basis for assignee to maintain claim where parties stipulated no payment to third party).

> Under the Assignment of Claims Act, once notice of the assignment is duly given to the government, it has a duty to make payments directly to the assignee for work performed by the assignor. . . . As any failure to fulfill this duty is an actionable offense on the part of the government, this court has jurisdiction under the Assignment of Claims Act, 31 U.S.C. § 3727, 41 U.S.C. § 15, only for plaintiff's claim for wrongful payment.

*Thomas Funding Corp.*, 15 Cl. Ct. at 502.

Although the Assignment of Claims Act sets forth formal requirements for providing notice, "an assignment is still considered valid if the Government chooses to recognize it despite its legal invalidity." *Riviera Fin. of Tex., Inc. v. United States*, 58 Fed. Cl. 528, 530 (2003). Furthermore,

> [i]t is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments.

*Tuftco Corp.*, 222 Cl. Ct. at 287, 614 F.2d at 746. Plaintiff has pleaded an assignment of the right to payment under Purchase Order 4191, recognition of the assignment by the Government, and wrongful payment by the Government to Capital City. Sec. Am. Compl. ¶¶ 42–48. Construing the facts pleaded in the Second Amended Complaint in the light most favorable to plaintiff, this Court has jurisdiction over plaintiff's claim that he was the assignee from Capital City of the right to receive payment under Purchase Order 4191. The Government raises factual questions regarding the existence and validity of the alleged assignment and the recognition of the assignment by the Government. As discussed in Section II.B.1.b, *supra*, such questions of fact relate to both the jurisdictional basis for and the merits of plaintiff's claim and, therefore, are not suitable for resolution on this record.

### III. The Government's Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted Is Denied Because the Government Has Failed to Establish on this Record that Plaintiff Was in Privity with JGB

In addition to its argument relating to subject matter jurisdiction, the Government also argues that, even if the Court has jurisdiction, it is required to dismiss plaintiff's claim under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted on the basis that plaintiff's claim is barred by *res judicata*. Def.'s Mot. 23. *Res judicata* is an affirmative defense more commonly asserted in the defendant's answer than a motion to dismiss. *See* RCFC 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . res judicata . . . ."). However, "[t]his defense may be raised on motion to dismiss when . . . it is apparent from the [complaint] itself that the matter is one formerly adjudicated." *Rodes*, 225 Ct. Cl. 672, 674 (1980).

The Court must accept all material facts alleged in the Second Amended Complaint as true in ruling on the Government's motion to dismiss. *See Roth*, 73 Fed. Cl. at 148 (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991). However, the Court "is not limited to the four corners of the complaint" and may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." WRIGHT &

16

MILLER § 1357. Accordingly, the Court will consider plaintiff's allegations in the Second Amended Complaint as well as pertinent data from the prior litigation between JGB Enterprises and the Government in ruling on the Government's motion to dismiss for failure to state a claim upon which relief can be granted.

    A.    <u>Plaintiff's Claim Is Not Barred by *Res Judicata*</u>

*Res judicata* "consist[s] of two preclusion concepts: 'issue preclusion' and 'claim preclusion.'" *Carson v. Dep't of Energy*, 398 F.3d 1369, 1375 n.8 (Fed. Cir. 2005) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). In describing the difference between issue and claim preclusion, the Federal Circuit explained:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Sharp Kabushiki Kaisha v. Thinksharp, Inc.*, 448 F.3d 1368, 1370 (Fed. Cir. 2006) (quoting *Migra*, 465 U.S. at 77 n.1). Consequently, "the preclusive breadth of" issue preclusion is narrower than that of claim preclusion "in that it applies to judicial resolution of specific factual issues or elements within different claims." *Franklin Sav. Corp. v. United States*, 56 Fed. Cl. 720, 736 (2003).

It is unclear from its briefs whether the Government is arguing that issue preclusion or claim preclusion prevents plaintiff from maintaining this action. *See, e.g.*, Def.'s Mot. 23–24; Def.'s Reply 12–14. Accordingly, this analysis will consider both concepts.

In order for the issue preclusion aspect of *res judicata* to prevent plaintiff from litigating an issue, the Government must demonstrate that: "(i) the issue previously adjudicated is identical with that now presented, (ii) that issue was 'actually litigated' in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action." *Kroeger v. United States Postal Serv.*, 865 F.2d 235, 239 (Fed. Cir. 1988) (quoting *Thomas v. Gen. Services Admin.*, 794 F.2d 661, 664 (Fed. Cir. 1986)). In the prior case, the Court found that JGB was not a third-party beneficiary of Purchase Order 4191 and was not in privity with the Government with respect to that purchase order. *JGB Enters.*, 63 Fed. Cl. at 335.

Here, plaintiff argues that he entered into an express or implied-in-fact contract with the Government, that he was a third-party beneficiary of Purchase Order 4191, and that Capital City assigned him its right to receive payment under the purchase order. Whether plaintiff entered into such contracts, was an intended beneficiary, or was an assignee are all issues that were

neither litigated nor decided in the prior case.  As a result, issue preclusion does not prevent plaintiff from bringing this action based on those theories.

In order for claim preclusion to preclude plaintiff's action where the current claim was not litigated in the prior proceeding, "there must be (1) an identity of parties or their privies, (2) a final judgment on the merits of the prior claim, and (3) the second claim must be based on the same transactional facts as the first and should have been litigated in the prior case."  *Sharp Kabushiki Kaisha*, 448 F.3d at 1370 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979)).  The Government argues that the first criterion, that plaintiff and JGB were in privity, was met: "Mr. Kawa previously represented JGB in his capacity as an attorney and was designated as an escrow agent under an escrow agreement . . . . Although Mr. Kawa . . . allege[s] that he is entitled to $43,987.50, this amount must be forwarded to JGB pursuant to the escrow agreement."  Def.'s Mot. 24.

Plaintiff responds that whether he served as an attorney to JGB (he did not represent JGB in the prior litigation) or served as an escrow agent is irrelevant to the issue of privity.  The Government, according to plaintiff, has failed to establish privity.  Pl.'s Opp'n 38–39.

> Largely because the determination of identity between litigants for the purpose of establishing privity is a factual question, "there is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel.  Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same."

*Martin v. United States*, 30 Fed. Cl. 542, 550 (1994) (quoting *Lowell Staats Mining Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1274–75 (10th Cir. 1989)) (internal citation omitted).  Courts have found privity in certain relationships, such as where the parties have a "concurrent relationship to the same property (*i.e.* trustee and beneficiary), [a] successive relationship to the same property (*i.e.* seller and buyer); or [where the parties] represent[] the interests of the same person."  *Id.* (quoting *Lowell Staats Mining Co.*, 878 F.2d at 1275).  The Government has not argued that plaintiff and JGB have a concurrent or successive relationship to the same property; rather, the Government has advanced the theory of virtual representation as the basis for its argument that plaintiff and JGB are in privity.  *See* Def.'s Mot. 23.

The Federal Circuit in *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 (Fed. Cir. 1983), the only controlling authority cited by the Government in support of its argument, stated that "a non-party may be bound by a judgment if one of the parties to the earlier suit is so closely aligned with the non-party's interests as to be its virtual representative."  In *Tyus v. Schoemehl*, 93 F.3d 449, 455 (8th Cir. 1996), another case cited by the Government, the Eighth Circuit suggested that, "[d]ue to the equitable and fact-intensive nature of virtual representation, there is no clear test for determining the applicability of the doctrine."  The Eighth Circuit set forth a number of "guiding principles" for finding virtual representation, including identity of

interests; "a close relationship between the prior and present parties; participation in the prior litigation; apparent acquiescence;" and deliberate maneuvering by the present party "to avoid the effects of the first action." *Id.* at 455 (quoting *Petit v. City of Chi.*, 766 F. Supp. 607, 612 (N.D. Ill. 1991)). Additionally, the Eighth Circuit stated that "adequacy of representation, which is best viewed in terms of incentive to litigate," and the nature of the issue to be decided, specifically, whether the issue is of one of public or private law, should also be taken into account. *Id.* at 455–56 (internal citation omitted).

Although plaintiff did not represent JGB in the prior litigation, *see* Sec. Am. Compl. ¶ 6, the extent to which he previously represented JGB in his capacity as an attorney is unclear on this record. *See JGB Enters.*, 63 Fed. Cl. at 325 (describing plaintiff as "JGB's local attorney"). The parties agree, however, that plaintiff served as escrow agent for both JGB and Capital City. *See, e.g.*, Sec. Am. Compl. ¶ 18; Def.'s Mot. 3. The Government argues that "it is apparent that [plaintiff] and JGB's interests [are] so closely aligned that there is no concern whatsoever that [plaintiff's] rights are being prejudiced by barring his claim. . . . [A]s an escrow agent, his only responsibility was to disburse any funds received in accordance with written instructions." Def.'s Reply 14. Plaintiff maintains that virtual representation "does not apply to [him], since he is asserting different legal rights than those asserted by JGB." Pl.'s Opp'n 36.

> The opportunity to be heard is an essential requisite of due process of law in judicial proceedings. And as a State may not, consistently with the Fourteenth Amendment, enforce a judgment against a party named in the proceedings without a hearing or an opportunity to be heard, so it cannot, without disregarding the requirement of due process, give a conclusive effect to a prior judgment against one who is neither a party nor in privity with a party therein.

*Postal Tel. Cable Co. v. Newport*, 247 U.S. 464, 476 (1918) (internal citations omitted). Based on the record before the Court, the Government has not satisfied its burden of demonstrating that plaintiff is representing the interests of JGB, virtually or otherwise, as opposed to his own or those of Capital City. The Government has not shown that plaintiff's relationship with JGB meets the Eighth Circuit's criteria for virtual representation as set forth in *Tyus*, nor has it proposed an alternative test to establish privity. Furthermore, it is not "apparent from the [complaint] itself that the matter is one formerly adjudicated." *Rodes*, 225 Ct. Cl. at 674. Therefore, the Government's RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted must be denied.

## *CONCLUSION*

Because plaintiff has standing to bring this action, and has adequately pleaded a contract with the Government, third-party beneficiary status, and the assignment of Capital City's right to payment under Purchase Order 4191, the Court has jurisdiction under the Tucker Act over plaintiff's claim as set forth in the Second Amended Complaint. Therefore, the Government's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) is DENIED.

      Because there remain factual issues with respect to whether plaintiff was in privity with JGB, plaintiff's action is not, on this record, precluded by the claim preclusion aspect of *res judicata*. Therefore, the Government's motion to dismiss pursuant to RCFC 12(b)(6) is DENIED.

      The Court will be in touch with counsel shortly in order to schedule a telephonic status conference to consider the course of future proceedings in this case.

      IT IS SO ORDERED.

                                                                                                       _s/ George W. Miller_  
                                                                                         GEORGE W. MILLER  
                                                                                         Judge