IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, Plaintiff, | ) | |
| v. | ) | No. 06-448C |
| THE UNITED STATES, Defendant. | ) | (Judge George W. Miller ) |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S FOURTH MOTION FOR AN ENLARGEMENT OF TIME TO CONDUCT DISCOVERY AND FIRST MOTION FOR PERMISSION TO SERVE ADDITIONAL INTERROGATORIES**

Plaintiff, Michael Kawa, respectfully Replies to the Response of defendant United States, filed on February 6, 2008. Before addressing defendant's arguments in a point by point manner, plaintiff wishes to provide the Court with a graphic example of the problems faced by plaintiff with respect to the recent discovery.

As mentioned in plaintiff's original motion, the existence of the additional documents was discovered essentially by chance on January 8, 2008, during the deposition of Ms. Kathryn Bader. Ms. Bader revealed that she had brought into the deposition room documents that she had "retained for training purposes" while employed at DCMC Clearwater:

Q. Okay. What did you do to prepare for this deposition here today outside of speaking with your attorney?
A. Nothing other than speaking with her.
Q. Okay.
A. I pulled documentation that I had in my files.
Q. You pulled documentation out of your files?
A. Correct.
Q. You have files?
A. I have information that I have retained, yes.
Q. And where would that information be?
A. Currently in this room.

Q. You brought that information with you to the room?
A. Correct.
Q. And if you're now working in Virginia, what would you be doing with that information?
A. It was retained for training purposes at that time.
Q. What do you mean it was retained for training purposes?
A. Processes, like Notice of Assignment, are unusual in a contract administrator job. I retained documentation applicable to the Notice of Assignment in order to use it at a future date.
Q. Did you seek permission to do this?
A. No permission was necessary.
Q. So tell me specific -- let's identify the documents that you have.

(Exhibit "A," pages 28-28).

Ms. Bader's file had not provided to plaintiff prior to deposition, and thinking that such documents would likely be highly relevant, counsel for plaintiff properly requested that such be marked as exhibits. Counsel for defendant refused:

MR. CAMARDO: I've asked Ms. Bader and the stenographer -- I've requested the stenographer mark these documents that Ms. Bader brought with her in to the deposition room. I've spoken to Counsel to try to resolve the situation. Apparently, Counsel has refused to let me -- or the stenographer mark those documents so I can see them. I also want to refer back to my previous request for production of documents number three that states specifically, "Produce all DCMC documents, communications, and files relating to purchase order 4191, Michael Kawa and/or JGB." So we can have the stenographer mark this for us in the deposition transcript where I've requested those documents be marked and to be identified and that the witness is, on the advice of Counsel, is refusing to do so.

MS. COHEN: In response I'd like to say that we produced all documents responsive-- all non-privileged documents responsive to all of your document requests, including document request number three. Ms. Bader did not bring these documents to the deposition room. She merely brought them for me to see separate from the deposition process simply because I happened to be at her office today, having nothing to do with the deposition, and again, any relevant documents have been produced. (Exhibit "A" pages 30, 31).

Having no other choice, counsel for plaintiff continued on with the deposition of Ms. Bader. However, on the critical subject of whether Ms. Bader knew who Mr. Kawa was prior to the erroneous payment being made on Contract 4191, Ms. Bader became

extremely difficult and evasive. Again, this point was crucial, since Ms. Bader was a member of a contracting team expressly delegated authority by Contracting Officer Moore to administer Purchase Order 4191. When asked if she knew who Mr. Kawa was prior to payment on Purchase Order 4191, Ms. Bader stated: "I cannot confirm on April 24 that I knew who Michael Kawa was." (Exhibit "A," page 69). When asked again, she stated "On April 24 of 2000, it was irrelevant to me who Michael Kawa was." (Exhibit "A," page 70). When asked if she knew Mr. Kawa was a "go between" on Purchase Order 4191, she stated "I have no idea" and again stated "I have no idea." (Exhibit "A," page 71).

In light of this, counsel for plaintiff was amazed to find, at page 98 of the new documentation final turned over on January 24, 2008, a handwritten note on a DCMC Fax transmittal sheet from Contracting Specialist Bader, dated <u>before</u> payment was made on Purchase Order 4191, indicating: "Mike says there is an escrow acct between JGB and Cap. City and Mr. Kawa is the attorney who controls it." (Exhibit "B"). Had counsel for plaintiff had this document during the January 8, 2008 deposition, it is submitted that Ms. Bader's evasions would have been brought to an abrupt halt. To be completely frank with the Court, counsel for plaintiff feels that both itself and counsel for JGB Enterprises Inc. ("JGB") in the previous litigation have experienced the utmost difficulty in getting straight answers from Government witnesses in the absence of documents. This is why the issue of possible improper destruction or suppression of documents is so important. Plaintiff would be reckless allow discovery to conclude with so many questions unanswered regarding the Government's documentation.

Moving on to the arguments in the first paragraph of defendant's response, by stating that eight out of fifty pages were turned over as part of discovery in another case, the Government admits that: 1). none of the pages were previously provided in this case; and 2). forty two pages were not provided as discovery responses even in the previous case. Thus, as stated previously, all of this documentation is new in this case, and nearly every page is new even considering documentation turned over in the JGB case. Among the forty two pages not disclosed during discovery in either case are numerous documents of the highest relevancy, such as notices of assignment to Mr. Kawa. (Exhibit "C"). Plaintiff respectfully invites the Court to examine such documents for itself.

Defendant's next argument is that the new documents "presumably" were turned over in response to FOIA requests made by JGB in September of 2002. Defendant has submitted nothing to substantiate this contention, other than two (2) unsigned documents not on letterhead, with no detailed indication of what enclosures accompanied them, and no proof that they were even sent. In any case, the two *pro se* FOIA requests made by JGB were actually quite narrow, asking for information regarding sole source rationales, price or technical evaluations of Capital City Pipes, copies of contracts, pre-award surveys, and documents evaluating the financial management or technical capabilities of Capital City Pipes. As JGB did not even ask for correspondence or full contracting files, it is not "highly likely" that the January 24, 2008 documents were provided at that time. Furthermore, counsel for plaintiff has again queried JGB, who indicates that they did not receive the new documents in response to their FOIA. In any case, the proposition that a FOIA response discharges the Government's responsibilities to give full and honest discovery responses in litigation is unsupportable. Again, it appears undisputed that at

least 42 pages were never turned over in the JGB litigation. This is despite the Government's representation in the JGB case, in their Supplemental Response to Plaintiff's First Set of Request for Production of Documents dated October 3, 2003, that all documents relevant to Purchase Order 4191 and Contract 2508 had been turned over.

Regarding the destruction of files, counsel for defendant states that she believed that the files were disposed of "well before there was any indication that there would be litigation concerning the Capital City/JGB contracts at issue in JGB and this litigation." This statement is simply erroneous, since there were only a few days between final payment of Contract 2508 and the first indications of litigation. Payment on Purchase Order 4191 was made on April 24, 2000. JGB v. U.S., 63 Fed. Cl. 319, 326 (2004). Payment on Contract 2508 was made on May 18, 2000. JGB at 329. On May 31, 2000, JGB sent a letter clearly demanding payment on Purchase Order 4191 and Contract 2508. (Exhibit "D"). Among others, this letter was sent to the DSCC Contracting Officers, DSCC Legal Counsel, and the Commander of DCMC Clearwater. This demand led to a certified claim on September 28, 2000, and from that point until the present there have been essentially continuous claims, negotiation, litigation, and appeals pending "concerning the Capital City/JGB contracts at issue in JGB and this litigation." During what time period could documents have possibly been properly destroyed? If documents were indeed destroyed in the face of pending litigation, it is submitted that plaintiff has surely been severely prejudiced, and plaintiff has every right to determine exactly who authorized this destruction, exactly what was destroyed, and exactly when it was destroyed.

Defendant continues, arguing that even the new documentation does not justify more interrogatories. As should be seen from the example cited in the beginning of this Reply, plaintiff had good reason not to rush into the deposition of Ms. Moore a few days after the revelation that documents were destroyed, and after the revelation that a considerable quantity of new documents had somehow failed to surface in more than seven years of litigation and claims. Defendant argues that the obligation to supplement the Government's previous responses is sufficient. However, plaintiff wishes to ask both specific questions regarding the document destruction, and specific questions regarding the new documents before proceeding to another deposition. When plaintiff served the first set of interrogatories, plaintiff had no idea that documents had been destroyed and obviously did not ask questions about such destruction. Supplementation of the current responses is not sufficient.

Finally, defendant refers to the initial Court conference regarding discovery in this matter, wherein a short discovery schedule was set based on defendant's representation that all documents had been disclosed already. As we now know, such is not the case, and new dimensions of this matter have been opened up by the recent discovery, such as DCMC's knowledge of the escrow agreement prior to payment on Purchase Order 4191. Plaintiff resents the fact that previous extensions on consent are now being used in an attempt to paint plaintiff as dilatory, when defendant waited until January 24, 2008 to turn over the new documents, and waited until January 24, 2008 to reveal the grave fact that contract files had been destroyed by DCMC Clearwater.

## CONCLUSION

For the above reasons, plaintiff must have an extension of discovery and must be allowed to serve additional interrogatories. The previous restricted schedule was premised upon the defendant's assertion that the factual issues and evidence in this lawsuit would mirror the earlier JGB litigation. Such is not proving to be the case, and plaintiff must be allowed to explore the momentous new issues that have arisen in the last month.

Dated: February 8, 2008

**Camardo Law Firm P.C.**

s/Joseph A. Camardo, Jr.
Joseph A. Camardo, Jr.
127 Genesee Street
Auburn, New York 10321
Tel: (315) 252-3846
Fax: (315) 252-3508

Attorney for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448C |
| | ) | |
| THE UNITED STATES, | ) | (Judge George W. Miller ) |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February 2008, a copy of the foregoing Reply to Defendants Response to Plaintiff's Fourth Motion for an Enlargement of Time to Conduct Discovery and First Motion for Permission to Serve Additional Interrogatories was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing though the Court's system.

s/Joseph A. Camardo, Jr.