# A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MICHAEL KAWA,

Plaintiff,

vs. INDEX No.: 06-448C

THE UNITED STATES,

Defendant.

_____________________________________________/

Deposition of KATHRYN BADER, held on January 8, 2008, in the General Counsel's Library at the Defense Contracts Management Agency, 6350 Walker Lane, Alexandria, Virginia, commencing at 10:00 a.m., before Neal R. Gross, Court Reporter and Notary Public in and for the State of Virginia.

Q. Okay. Have you ever seen this document before?
A. No.
Q. Would this have been part of the contract file?
A. Yes, but not with the annotations as shown on this page.
Q. Well, what sort of annotations would it have been with?
A. It would not have had the quote information in block 16, I believe, the large -- block 12.
Q. What -- so this would not be part of any contract file that you were maintaining?
A. The RFQ 5778 was part of the contract.
Q. What part of what contract?
A. The 4191 contract.
Q. So you recall that, then? You recall a 4191 contract?
A. Only from documentation that I've discussed with my lawyer.
Q. Okay. What did you do to prepare

for this deposition here today outside of speaking with your attorney?
A. Nothing other than speaking with her.
Q. Okay.
A. I pulled documentation that I had in my files.
Q. You pulled documentation out of your files?
A. Correct.
Q. You have files?
A. I have information that I have retained, yes.
Q. And where would that information be?
A. Currently in this room.
Q. You brought that information with you to the room?
A. Correct.
Q. And if you're now working in Virginia, what would you be doing with that information?
A. It was retained for training purposes at that time.
Q. What do you mean it was retained for training purposes?

A. Processes, like Notice of Assignment, are unusual in a contract administrator job. I retained documentation applicable to the Notice of Assignment in order to use it at a future date.

Q. Did you seek permission to do this?

A. No permission was necessary.

Q. So tell me specific -- let's identify the documents that you have.

MR. CAMARDO: Stenographer, are you there? I'm going to ask you to mark with exhibit numbers each and every piece of correspondence that Ms. Bader has brought to the room with her.

MS. COHEN: Objection. We have not produced that information to you. You have not made a formal document --

MR. CAMARDO: She brought it to the room with her and I'm asking the stenographer to mark them. I want to ask questions about them.

MS. COHEN: Can we go off the record, please?

MR. CAMARDO: I'm sorry?

MS. COHEN: Can we go off the record on this, please?

MR. CAMARDO: Sure.

(Whereupon, the above-entitled matter went off the record at 10:30 a.m. and resumed at 10:32 a.m.)

MR. CAMARDO: I've asked Ms. Bader and the stenographer -- I've requested the stenographer mark these documents that Ms. Bader brought with her in to the deposition room. I've spoken to Counsel to try to resolve the situation. Apparently, Counsel has refused to let me -- or the stenographer mark those documents so I can see them. I also want to refer back to my previous request for production of documents number three that states specifically, "Produce all DCMC documents, communications, and files relating to purchase order 4191, Michael Kawa and/or JGB."

So we can have the stenographer mark this for us in the deposition transcript where I've requested those documents be marked and to be identified and that the

witness is, on the advice of Counsel, is refusing to do so.

MS. COHEN: In response I'd like to say that we produced all documents responsive -- all non-privileged documents responsive to all of your document requests, including document request number three. Ms. Bader did not bring these documents to the deposition room. She merely brought them for me to see separate from the deposition process simply because I happened to be at her office today, having nothing to do with the deposition, and again, any relevant documents have been produced.

MR. CAMARDO: Well, no --

MS. COHEN: We'd be willing to consider an additional document -- written document request.

MR. CAMARDO: Okay. Well, you've got our request. Our request is very clear. Those documents were brought in to the deposition room and if they've been produced before, certainly there should be no objection to identifying those documents now,

but be that as it may, we'll just continue with the deposition.

BY-MR.CAMARDO:

Q. I want to direct your attention back to Exhibit-5, document 0206. Before we got off on to these other documents, I think you testified, Ms. Bader, you've never seen this document before?

A. There is no document 0206 in Section 5.

Q. I'm sorry. It's in Section 4. It's the same document we were just looking at a minute ago, 0206. It's in Exhibit-4. I stand corrected, but you know that we were looking at 0206.

A. I have it now.

Q. Okay. Well, it should've been open. We were just talking about it, but, anyways, is it your testimony you've never seen this document before?

A. No.

Q. You've seen this document before?

A. No. It is my testimony that I have not seen this document before.

consult your records to -- what records would you have to consult?
A. Probably the 2508 records that I kept to see when I started the Notice of Assignment actions. If the dates are --
Q. Well --
A. If the date predates, then, yes, I would've known.
Q. Well, haven't you seen that record already here this morning in your deposition?
A. The Notice of Assignment actions? No.
Q. Then let's direct your attention to document 240, the first document I asked you about, a letter dated April 5.
A. All right.
Q. You knew who Michael Kawa was prior to April 24, 2000, correct?
A. Well, at that time, I told you, I did not know if I had this file at that time.
Q. Ma'am, I want an answer to my question, please. I asked you a very simple question.

Prior to April 24, you knew who Michael Kawa was, correct?

MS. COHEN: Objection; argumentative.

MR. CAMARDO: I'm not being argumentative. I'd like to have a yes or no answer.

THE WITNESS: I cannot confirm on April 24 that I knew who Michael Kawa was.

BY-MR.CAMARDO:

Q. In light of your document 240, you can't confirm who Michael Kawa was?

A. Correct.

Q. Well, let's read paragraph one. I remind you you're under oath right now and you're bound to cooperate with me. I think paragraph number one, and I'll read it to you, says Michael Kawa, Esquire, is an attorney, and Capital Cities Pipe's President and CEO, Mr. Lee Gilliam, and JGB Enterprises, Inc./CEO, Mr. Jay Bernhardt, signed an agreement to utilize Mr. Michael Kawa, Esquire, as a go-between on its contract. Do you see that?

A. That's what it states.

Q. So you knew Mr. Kawa was the go-between prior to -- he was the go-between between JGB and Capital Cities prior to April 24; is that a fair statement?

MS. COHEN: Objection; asked and answered and argumentative.

Q. Is that a fair statement? Prior to April 24.

A. I stated earlier that I would've received this letter --

Q. Can I get an answer to my question? It's either yes or no.

MS. COHEN: Mr. Camardo, can you please not interrupt the witness in her --

MR. CAMARDO: I'd like to have an -- I've sat her now for five minutes trying to get a yes or no answer to the question. It's either yes or no.

THE WITNESS: On April 24 of 2000, it was irrelevant to me who Michael Kawa was.

BY-MR.CAMARDO:

Q. I didn't ask if it was irrelevant to you. Do you understand my question?

A. I stated before --
Q. Prior -- let me ask you the question one more time, the last time I'm going to ask the question. I'll ask it one more time, very simple.
Prior to April 24, you knew that Michael Kawa was the go-between between Capital Cities and JGB; is that correct?
MS. COHEN: Objection; asked and answered.
Q. It's either yes or no.
A. I have no idea.
Q. You have no idea in light of your -- in light of document 240?
MS. COHEN: Objection; asked and answered.
Q. Do you understand my question? In light of 240, document 240, you have no idea?
A. I have no idea.
Q. Okay. That's your testimony. Thank you.
MR. CAMARDO: We're concluding, unless you've got some questions you want to

ask, Meredyth.

MS. COHEN: Can we take a five-minute break, please? I may have some questions.

MR. CAMARDO: Sure.

MS. COHEN: Thank you. Off the record.

(Whereupon, the above-entitled matter went off the record at 11:31 a.m. and resumed at 11:36 a.m.)

MS. COHEN: Okay, we're back on the record. I just have a couple of questions for you, Ms. Bader.

MR. CAMARDO: Sure.

EXAMINATION

BY-MS.COHEN:

Q. You said that you were assigned to Capital City's contracts at some point in 2000; is that right?

A. Correct.

Q. What is being assigned to a contractor mean? What duties does it involve?

A. All contracts that come in for