No. 06-448C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MICHAEL KAWA, ESQ.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX

---

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: 202-353-7978
Fax: 202-514-8624

May 9, 2008

Attorneys for Defendant

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. There Was No Express Or Implied-In Fact Contract Between Mr. Kawa And The Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III. Mr. Kawa Is Not A Third-Party Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV. There Was No Assignment To Mr. Kawa . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V. Mr. Kawa Is Precluded From Bringing His Claim Pursuant To The Doctrine Of *Res Judicata* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VI. Mr. Kawa Is Not Entitled To Interest Pursuant To The Contract Disputes Act Because He Is Not A "Contractor" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .... 13

Bailey v. United States,
54 Fed. Cl. 459 (2002) .... 12, 13, 25

Baltimore & Ohio Railroad Co. v. United States,
261 U.S. 592 (1923) .... 14

Banco Bilbao Vizcaya v. United States,
48 Fed. Cl. 29 (2000) .... 24

Brunner v. United States,
70 Fed. Cl. 623 (2006) .... 18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .... 13

City of Cincinnati v. United States,
153 F.3d 1375 (Fed. Cir. 1998) .... 14

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) .... 14

Cromwell v. County of Sac,
94 U.S. 351 (1877) .... 26

D&H Distrib. Co. v. United States,
102 F.3d 542 (Fed. Cir. 1996) .... 23

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (Fed. Cir. 2005) .... 19, 20

Gary v. United States,
67 Fed. Cl. 202 (2005) .... 18

Hunsaker v. United States,
66 Fed. Cl. 129 (2005) .... 16

JET, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) .................... 26

J.G.B. Enterprises Inc. v. United States,
63 Fed. Cl. 319 (2004) .................... 1-3, 5-8, 14-16, 20-22, 24, 28, 29

Lowell Staats Mining Co. v. Phila.Elec. Co.,
878 F.2d 1271 (10th Cir. 1989) .................... 27

Kawa v. United States,
77 Fed. Cl. 294 (2007) .................... 2, 27

Maffia v. United States,
143 Ct. Cl. 198, 163 F. Supp. 859 (1958) .................... 23

Martin v. United States,
30 Fed. Cl. 542 (1994) .................... 26, 27

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) .................... 13

Montana v. United States,
124 F.3d 1269 (Fed. Cir. 1997) .................... 19, 20

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979) .................... 25, 26

Riviera Finance of Texas, Inc. v. United States,
58 Fed. Cl. 528 (2003) .................... 23

Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) .................... 13

Tuftco Corp. v. United States,
222 Ct. Cl. 277, 614 F.2d 740 (1980) .................... 23

Young Engineers Inc. v. ITC,
721 F.2d 1305 (Fed. Cir. 1983) .................... 26

**STATUTES**

10 U.S.C. § 2785 .................... 2

31 U.S.C. § 3727(b) .................... 22

41 U.S.C. §§ 15 .......... 22

41 U.S.C. § 601(4) .......... 28

41 U.S.C. § 601 et seq .......... 2, 28

41 U.S.C. § 602(a) .......... 28

41 U.S.C. § 605(a) .......... 28

41 U.S.C. § 609(a) .......... 28

**MISCELLANEOUS**

Black's Law Dictionary (8th ed. 2004) .......... 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, ESQ., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment for defendant upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of its motion, defendant relies upon the pleadings, the appended declarations, defendant's appendix ("DA"), this Court's decision in J.G.B. Enterprises Inc. v. United States, 63 Fed. Cl. 319 (2004), and the following brief.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether Mr. Kawa entered into an express or an implied-in-fact contract with the United States.

2. Whether Mr. Kawa was a third-party beneficiary to Purchase Order 4191.

3. Whether Capital City Pipes, Inc. assigned its right to payment under Purchase Order 4191 to Mr. Kawa.

4. Whether the United States recognized an assignment of Capital City Pipes, Inc.'s right to payment to Mr. Kawa under Purchase Order 4191.

5. Whether the doctrine of res judicata bars Mr. Kawa from bringing a claim for

monies allegedly owed JGB Enterprises, Inc. under Purchase Order 4191.

6. Whether, assuming Mr. Kawa prevails in this litigation, he is entitled to interest pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 et seq.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Michael Kawa, Esq., is an attorney for JGB Enterprises, Inc. ("JGB"). Defendant's Proposed Findings of Uncontroverted Fact ("PFUF") ¶ 1. Pursuant to an escrow agreement between prime contractor Capital City Pipes, Inc. ("Capital City") and subcontractor JGB, Mr. Kawa served as an escrow agent for receipt of payments due to Capital City for manufacture and delivery of hose assemblies pursuant to several contracts between the United States and Capital City. Second Am. Compl. ¶ 18; PFUF ¶ 2. In his complaint, Mr. Kawa seeks the amount of money that was owed to JGB by Capital City for work performed under SP0750-00-M-4191 ("PO 4191"). Mr. Kawa alleges that he is owed this money (1) pursuant to an express or implied-in-fact contract with the United States; (2) because he is a third-party beneficiary of PO 4191; and/or (3) because Capital City assigned its right to payment under PO 4191 to him and the United States recognized this assignment. See Second Am. Compl. ¶¶42-56, 62-75.[1]

This case is related to JGB Enterprises, Inc. v. United States, 63 Fed. Cl. 319 (2004). In that case, among other things, JGB itself sought monies owed for work performed under PO

---

[1] In his Second Amended Complaint, Mr. Kawa also alleges that he is entitled to money because the Government improperly altered the remittance address in violation of 10 U.S.C. § 2785. Second Am. Compl. ¶¶ 57-61. In its June 28, 2007 order on defendant's supplemental motion to dismiss, the Court determined that 10 U.S.C. § 2785 does not provide a basis for the Court's jurisdiction over this action because the statute is not money-mandating. Kawa v. United States, 77 Fed. Cl. 294, 301-02 (2007). Thus, the United States' alleged violation of 10 U.S.C. § 2785 is no longer at issue in this case.

4191. Following trial, the Court found that JGB was not a third-party beneficiary of PO 4191 because the pre-award contracting officer for PO 4191, Lu Ann Bocsy, was not aware of Mr. Kawa's role as an escrow agent. JGB Enterprises, 63 Fed. Cl. at 334-35. Accordingly, the Court entered judgment in favor of the Government upon JGB's PO 4191 claim.

## II. Statement Of Facts

In 1999, the Defense Supply Center Columbus ("DSCC"), which is part of the Defense Logistics Agency ("DLA"), issued several sole-source contracts and purchase orders to Capital City for hose assemblies. PFUF ¶ 3. Capital City subcontracted the work to JGB, who manufactured and delivered the hose assemblies to the Government. PFUF ¶ 3. By late October 1999, Capital City was indebted to JGB, and JGB became concerned that Capital City would not be able to satisfy its debts. PFUF ¶ 4.

JGB expressed its concerns about getting paid by Capital City to DSCC Small Business Specialist Michael Taylor. PFUF ¶ 5. Mr. Taylor contacted Capital City and discussed the possibility of an escrow agreement with Capital City's president, Lee Gilliam. PFUF ¶ 5. Mr. Taylor understood an escrow agreement to be an agreement by which the two companies would set up a joint account, the Government would send payments to that account, and it would require the signatures of both companies to release the funds. PFUF ¶ 5.

On November 10, 1999, JGB entered into an escrow agreement with Capital City.[2] Second Am. Compl. ¶ 7; PFUF ¶ 6. Under this agreement, Capital City and JGB agreed to "take all steps and execute all documents as may be required to provide that future payments of money due to Capital City from DSCC . . . shall be payable to Michael E. Kawa, Esq., as the Escrow

[2] DSCC was not a party to the escrow agreement. PFUF ¶ 11.

Agent . . . ." PFUF ¶ 7. Mr. Kawa was not liable to JGB or Capital City for failure to receive the payment, unless that failure was the result of his gross negligence, which Mr. Kawa admits it was not. PFUF ¶ 8. Mr. Kawa was required to deposit the monies into an escrow account and distribute payment to Capital City and JGB only upon a joint statement signed by both Capital City and JGB. PFUF ¶ 9. Assuming the money had been paid to Mr. Kawa, he would have had no right to retain it following release by JGB and Capital City; he would have had to split the entire payment between JGB and Capital City's trustee in bankruptcy. PFUF ¶ 10.

On November 9, 1999, Capital City sent a facsimile to the pre-award contracting officer for PO 4191, Lu Ann Bocsy, confirming Capital City's prior offer to provide hose assemblies and requesting that the payment remittance address be changed to:

Capital City Pipes, Inc
Michael Kawa Esq
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 17; PFUF ¶ 12. Following receipt of this facsimile, Ms. Bocsy contacted Capital City because the number of lines requested exceeded that which could be typed into the remittance address. PFUF ¶ 13.

On November 10, 1999, Capital City sent a letter to Ms. Bocsy, following up on the November 9 facsimile, confirming Capital City's prior offer to provide hose assemblies, and requesting that the payment remittance address be changed to:

Michael Kawa, Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 19; PFUF ¶ 14.

On November 15, 1999, Capital City again sent Ms. Bocsy another facsimile, apologizing for any confusion, and requesting that the payment address be changed to:

Michael Kaka. Esq.
300 Crown Bldeg
304 S Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 20; PFUF ¶ 15. As this Court previously found, and as Mr. Kawa admits, none of these letters or facsimiles gave any explanation for the requested change, did not inform Ms. Bocsy of the escrow agreement, and did not identify Mr. Kawa's relationship with JGB. JGB Enterprises, 63 Fed. Cl. at 325-26; PFUF ¶ 16. As Mr. Kawa also admits, none of these letters or facsimiles indicated that he was not an employee of Capital City. PFUF ¶ 17. Nor did these letters or facsimiles say anything about an assignment. PFUF ¶ 18.

Ms. Bocsy did not ask who Mr. Kawa was or why Capital City wanted the remittance address changed. PFUF ¶ 19; JGB Enterprises, 63 Fed. Cl. at 326. Ms. Bocsy never had any communications with Mr. Kawa. PFUF ¶ 20. Ms. Bocsy did not know that Mr. Kawa was an attorney for JGB or that he had been designated as an escrow agent, but rather believed that Mr. Kawa was an employee of Capital City. PFUF ¶ 21. As the Court stated in JGB Enterprises, "[b]ased on the limited information provided to CO Bocsy, there was no reason for her to know the motivation for the request or Mr. Kawa's relationship to JGB." JGB Enterprises, 63 Fed. Cl. at 334.

On November 24, 1999, Ms. Bocsy issued PO 4191 to Capital City in the amount of $45,275.76 for 306 hose assemblies. Second Am. Compl. ¶ 24; PFUF ¶ 22. PO 4191 states in relevant part:

REMIT PAYMENT TO:

Michael Kawa, Esq.
300 Crown Bldg
304 S. Franklin St
Syracuse, NY 13202

PFUF ¶ 22. PO 4191 also incorporated clauses by reference pursuant to FAR 52.252-2. PFUF ¶ 23. One such clause was FAR 52.232-33. PFUF ¶ 24. That clause provided that all payments by the Government would be made to the contractor by electronic fund transfer ("EFT") to the EFT information in the Central Contractor Registry ("CCR") database. PFUF ¶ 25. That clause further provided: "In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the CCR database." PFUF ¶ 25. The EFT information in the CCR database stated that payment be made to Capital City's bank account. PFUF ¶ 26.

Following the issuance of PO 4191 to Capital City, Carolyn Mathews became the post-award contracting officer on PO 4191. PFUF ¶ 27. Sometime in March or April 2000, Ms. Mathews ceased being the contracting officer for contractors in Florida, and Phyllis Moore became the post-award contracting officer on PO 4191. PFUF ¶ 28.[3] The pre-award contracting officer is responsible for creating the terms of the contract, whereas the post-award contracting officer is responsible for implementing those terms. PFUF ¶ 30. The post-award contracting officer generally does not take any action with respect to the contract unless a problem arises. PFUF ¶ 31. The post-award contracting officer is not responsible for seeing that payment is made pursuant to the contract. PFUF ¶ 32. Payments are made electronically by the Defense

[3] At the same time, Ms. Moore also became the post-award contracting officer on several other Capital City contracts, including SPO750-99-C-2508 ("Contract 2508"), which was also at issue in the JGB Enterprises litigation. JGB Enterprises, 63 Fed. Cl. at 327; PFUF ¶ 29.

Finance and Accounting Service ("DFAS"), and the post-award contracting officer is only contacted by DFAS if there was a problem. PFUF ¶ 33. The contractor invoices DFAS directly for payment. PFUF ¶ 34.

The Defense Contract Management Command ("DCMC") Clearwater[4] was responsible for administering PO 4191, among other Capital City contracts. PFUF ¶ 35. Lynne Rahtes was the DCMC administrative contracting officer ("ACO") assigned to PO 4191. PFUF ¶ 38. The ACO has no authority to substantively modify contracts without authorization from the DSCC contracting officer. PFUF ¶ 39. Absent a valid completed assignment of payment, the ACO would require permission from the DSCC contracting officer to change the payee. PFUF ¶ 40. Kathryn Bader was the DCMC contract specialist assigned to Capital City contracts. PFUF ¶ 41. Ms. Bader reported to Ms. Rahtes. PFUF ¶ 42. Ms. Bader was not a contracting officer at that time, and had no authority to independently make changes to contracts. PFUF ¶ 43. Ms. Bader was not responsible for remittance addresses, or for where or to whom payment was sent. PFUF ¶ 44.

On February 8, 2000, JGB shipped the hose assemblies for PO 4191 to Defense Department Depot. Second Am. Compl. ¶ 28; JGB Enterprises, 63 Fed. Cl. at 326; PFUF ¶ 45. On April 24, 2000, the Government paid for the hose assembles under PO 4191 by EFT directly into Capital City bank's account. Second Am. Compl. ¶ 37; JGB Enterprises, 63 Fed. Cl. at 326-37; PFUF ¶ 46. Capital City did not pay JGB for the hose assemblies under PO 4191. JGB Enterprises, 63 Fed. Cl. at 327; PFUF ¶ 47.

---

[4] DCMC is now known as the Defense Contract Management Agency ("DCMA"). The Clearwater office is now the St. Petersburg Office. PFUF ¶¶ 36-37.

During the time she was the post-award contracting officer for Capital City contracts, Ms. Moore did not have any discussions with Ms. Mathews concerning Capital City. PFUF ¶ 48. Ms. Moore did not have any discussions with Mr. Taylor about JGB's problems with Capital City until after payment had been made on PO 4191. PFUF ¶ 49. Ms. Moore did not have any discussions with Ms. Bocsy until after JGB filed its claim. PFUF ¶ 50. Ms. Moore never spoke to Ms. Rahtes. PFUF ¶ 51. Ms. Moore never had any communications with Mr. Kawa. PFUF ¶ 52.

On April 12, 2000, Ms. Moore talked to Thelma Williams of Capital City about a vendor payment issue and an account where monies could be set aside for the vendor. PFUF ¶ 53. This was the first time Ms. Moore spoke to Ms. Williams. PFUF ¶ 54. Ms. Moore did not have any contact with JGB prior to receiving its May 31, 2000 request for equitable adjustment. PFUF ¶ 55. Ms. Moore does not recall reviewing the Contract 2508 or the PO 4191 file when she took over as post-award contracting officer on those contracts. PFUF ¶ 56. In JGB Enterprises, this Court found that, as of April 13, 2000, the day on which Ms. Moore issued a modification changing the remittance address on Contract 2508, Ms. Moore knew the reason for the address change, namely to address vendor payment problems. See JGB Enterprises, 63 Fed. Cl. at 333-34.

Even assuming that Ms. Moore knew the reason for the remittance address change on Contract 2508, there is no evidence that Ms. Moore had any involvement with PO 4191, other than the March 10 and March 24, 2000 ALERT messages sent to DCMC concerning all of Capital City's contracts. PFUF ¶ 57. Ms. Moore did not make any changes to PO 4191. PFUF ¶ 58. Ms. Moore sent the ALERT messages to DCMC because Capital City was an 8(a)

contractor and because it had been delinquent in shipment. PFUF ¶ 59. Sending this type of ALERT message was Ms. Moore's usual practice for 8(a) contractors, particularly those who were delinquent, and had nothing to do with JGB's alleged payment problems. PFUF ¶ 60. Ms. Rahtes does not recall receiving the ALERT messages, but would have interpreted the authorization "to take whatever contractual actions necessary" as authorization to continue or perform surveillance. PFUF ¶ 61. She would not have interpreted it as authorization to change the payee of the contract or to determine to whom payment should be made. PFUF ¶ 62.

Ms. Moore did not have any involvement with payment on PO 4191. In general, as a post-award contracting officer, Ms. Moore had no involvement in payment of contracts unless DFAS or the contractor contacted her about a payment problem. PFUF ¶ 63. It was not her responsibility to ensure that payments were made pursuant to the contract. PFUF ¶ 64. It is DFAS's responsibility, not the contracting officer's responsibility, to ensure that payments are made pursuant to the contract. PFUF ¶ 65. As to PO 4191, Ms. Moore was not contacted about a payment problem until after JGB filed its request for equitable adjustment. PFUF ¶ 66. She does not recall ever even knowing what the remittance address was on PO 4191 until after JGB filed its request for equitable adjustment. PFUF ¶ 67. She was not aware of where or to whom payment on PO 4191 was sent until after JGB filed its request for equitable adjustment. PFUF ¶ 68.

Ms. Bader does not recall exactly when she learned of Mr. Kawa's role as an escrow agent, but it was at least as early as April 4, 2000. PFUF ¶ 69. Ms. Bader did not have any responsibilities for remittance addresses or making payment on PO 4191. PFUF ¶ 70. Though Ms. Rahtes was the ACO assigned to Capital City contracts, she did not participate in the day-to-

day administration of those contracts and does not specifically recall anything about PO 4191, Contract 2508, JGB, or Mr. Kawa. PFUF ¶ 71. At that time, Ms. Rahtes was the ACO assigned to hundreds of contracts. PFUF ¶ 72.

On November 18, 2005, after the Court entered judgment in favor of the Government upon JGB's claim relating to PO 4191, but before the Court denied JGB's subsequent Rule 60(b) motion relating to PO 4191, Mr. Kawa submitted a certified claim for $45,275.76 to the contracting officer. Second Am. Compl. ¶ 40; PFUF ¶ 73. On January 13, 2006, Ms. Bocsy denied Mr. Kawa's claim. PFUF ¶ 74. She stated in relevant part:

> You were neither an assignee of funds nor a third party beneficiary under this purchase order, and you did not have an implied-in-fact contract with the government. The government awarded the purchase order to Capital City Pipes. When Capital City Pipes asked me to change the remittance address, I did not know nor have any reason to know about your relationship to JGB. I did not intend to assign payments to you, to establish a third-party beneficiary relationship with you, or to contract with you.

PFUF ¶ 74.

On June 8, 2006, Mr. Kawa filed a complaint in this Court against the United States seeking judgment for $45,275.76. Compl. Wherefore Clause. Mr. Kawa alleged that JGB was entitled to $43,987.50, and that the remaining $1,288.26 would be remitted to Capital City by care of a bankruptcy trustee. Id. Mr. Kawa alleged that he was entitled to judgment because the contract directed payment to him, there was an implied-in-fact contract between himself and the Government, he was a third-party beneficiary to PO 4191, and because he was assigned payments under PO 4191.

On August 18, 2006, we filed a motion to dismiss the complaint for lack of jurisdiction, for failure to state a claim upon which relief can be granted, and because Mr. Kawa is not the

real party in interest. Instead of filing a response, on November 6, 2006, Mr. Kawa filed an amended complaint and, on November 17, 2006, filed an unopposed motion for leave to file a second amended complaint, which the Court granted.

On December 19, 2006, we filed a supplemental motion to dismiss the second amended complaint, asserting that Mr. Kawa lacks standing to bring his claim, this Court lacks jurisdiction to entertain his claim, and that he is barred from bringing his claim pursuant to the doctrine of res judicata. On June 28, 2007, this Court denied our motion to dismiss.

Discovery in this case has now been completed, there are no genuine issues of material fact, and, therefore, we respectfully request that this Court grant our motion for summary judgment.

## SUMMARY OF ARGUMENT

There was no express or implied-in-fact contract between Mr. Kawa and the Government. Mr. Kawa cannot show that anyone with authority to bind the Government intended to contract with him. Ms. Bocsy believed Mr. Kawa to be an employee of Capital City, Ms. Moore did not become involved in administering PO 4191 until after the remittance address had been changed and she had no knowledge of Mr. Kawa in relation to PO 4191, and Ms. Bader had no authority to bind the Government. Assuming that there was an intent to contract with Mr. Kawa, Mr. Kawa cannot show that there was consideration, because nothing was bargained for between him and the Government. Mr. Kawa also cannot show lack of ambiguity in offer and acceptance because it is far from clear that the escrow agreement constituted an offer or that Ms. Bocsy accepted that offer by changing the remittance address, given that she was unaware of the escrow agreement at the time. The Government did not ratify the alleged implied-in-fact

contract because it did not receive any benefit from Mr. Kawa. Finally, the Government did not breach any alleged contract between itself and Mr. Kawa, because, even assuming that PO 4191 constituted such a contract, the Government fulfilled its obligations under that contract by paying Capital City for the hose assemblies.

Mr. Kawa is not a third-party beneficiary to PO 4191 because Ms. Bocsy did not intend to benefit him by changing the remittance address. Furthermore, Mr. Kawa did not reasonably rely upon the change in remittance address as manifesting an intent to benefit him because he did not inform anyone in the Government of the reason for the change and because the contract required payment to be made by EFT to the payee in the CCR database, which was Capital City's bank.

There was no assignment of payment to Mr. Kawa because, contrary to his allegations, he never provided a notice of assignment. Nor did the Government ratify any alleged assignment because Ms. Bader and Ms. Rahtes did not have any authority to do so, and Ms. Moore did not make any changes to PO 4191.

Pursuant to the doctrine of res judicata, Mr. Kawa is precluded from bringing his claim, which is essentially JGB's claim for monies allegedly owed under PO 4191. Under this doctrine, a judgment upon the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action. Bailey v. United States, 54 Fed. Cl. 459, 474 (2002). This Court's judgment in favor of the Government upon JGB's PO 4191 claim is also binding against Mr. Kawa, because he is representing JGB's interest in this action and does not possess an independent, substantive right to any monies under PO 4191.

Mr. Kawa is not entitled to interest pursuant to the Contract Disputes Act because he is not a "contractor" as defined by the CDA.

ARGUMENT

I. Standard Of Review

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the court of appeals emphasized in Sweats, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court of Federal Claims] -- that there is an absence of evidence to support the non-moving party's case." Id. (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. As discussed below, there is no dispute over any fact that could affect the outcome of this case. Accordingly, disposition of Mr. Kawa's case through summary judgment is appropriate.

II. There Was No Express Or Implied-In Fact Contract Between Mr. Kawa And The Government

The requirements for both an express and an implied-in-fact contract are: "1) mutuality of intent to contract; 2) consideration; and, 3) lack of ambiguity in offer and acceptance." City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990). For contracts with the Government, the "government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (citing City of El Centro, 922 F.2d at 820). For an implied-in-fact contract to exist, the contract must be "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." Baltimore & Ohio Railroad Co. v. United States, 261 U.S. 592, 597 (1923).

Mr. Kawa alleges that the contracting officer intended to contract with him. Second Am. Compl. ¶ 64. Mr. Kawa's allegation that Ms. Bocsy intended to contract with him, however, is erroneous. As this Court found in JGB Enterprises, and as Mr. Kawa admits, none of the letters or facsimiles requesting a change in remittance address explained the reason for the change, notified Ms. Bocsy of the escrow agreement, or identified Mr. Kawa's relationship with JGB. JGB Enterprises, 63 Fed. Cl. at 325-26; PFUF ¶ 16. Nor did the letters or facsimiles indicate that Mr. Kawa was not an employee of Capital City. PFUF ¶ 17. Ms. Bocsy never had any communication with Mr. Kawa. PFUF ¶ 20. Additionally, Ms. Bocsy never asked about why Capital City wanted the remittance address changed. JGB Enterprises, 63 Fed. Cl. at 326; PFUF ¶ 19. Ms. Bocsy did not know that Mr. Kawa was an attorney for JGB or that he had been designated as an escrow agent, but rather believed that Mr. Kawa was an employee of Capital

City. PFUF ¶ 21. In JGB Enterprises, this Court found her testimony to this effect to be credible. See JGB Enterprises, 63 Fed. Cl. at 326, 335. Ms. Bocsy, therefore, did not intend to contract with anyone besides the prime contractor, Capital City.

Mr. Kawa further alleges that, by the time payment had been made on PO 4191, two more contracting officers, Ms. Moore and Ms. Bader, "had received ample notice of the escrow agreement." Second Am. Compl. ¶ 68. Presumably, Mr. Kawa is asserting that, because they allegedly knew about the escrow agreement, they intended to contract with him. As an initial matter, Ms. Bader was not a contracting officer and did not possess any authority to bind the Government in contract at any time relevant to this case. PFUF ¶ 43. Thus, any knowledge or intent she may have had regarding Mr. Kawa is irrelevant, as she did not have authority to bind the Government. See JGB Enterprises, 64 Fed. Cl. at 334.

Ms. Moore's knowledge of JGB's problems with Capital City was limited to a conversation with Ms. Williams concerning a vendor payment issue, during which the option of creating an account in which monies could be set aside for the vendor arose. PFUF ¶ 53. Ms. Moore did not discuss the payment problems with anyone else during the relevant time period, nor did she review the documents in the Contract 2508 file pertaining to the payment problems. PFUF ¶¶ 48-52, 55-56. However, even assuming, as this Court found, that Ms. Moore knew that the remittance address change on Contract 2508 was to address a vendor payment problem, this does not mean that Ms. Moore intended to contract with Mr. Kawa as to PO 4191.

First, Ms. Moore did not become involved in administering PO 4191 until after the remittance address was changed. JGB Enterprises, 63 Fed. Cl. at 327; PFUF ¶ 28. For purposes of determining intent to contract with Mr. Kawa, the relevant event is the change in the

remittance address. The first requirement for an implied-in-fact contract is intent to enter into a contract. See Hunsaker v. United States, 66 Fed. Cl. 129, 133 (2005). Here, JGB alleges that the Government entered into a contract with JGB by changing the remittance address. See Second Am. Compl. ¶ 66. Thus, Ms. Moore's knowledge after the change in remittance address is not relevant to determining whether the Government intended to contract with Mr. Kawa.

Second, assuming this Court were to find that the payment date is the relevant date for determining intent to contract, there is no evidence that Ms. Moore had any knowledge of Mr. Kawa in connection with PO 4191. Ms. Moore does not recall reviewing the PO 4191 file or knowing the remittance address on PO 4191 until after JGB filed its request for equitable adjustment. PFUF ¶ 56. Ms. Moore's only actions with respect to PO 4191 were the sending of the two ALERT messages to DCMC concerning all of Capital City's contracts. PFUF ¶ 57. These ALERT messages were routine procedure for 8(a) contractors and had nothing to do with JGB's alleged payment problems. PFUF ¶ 60. Furthermore, DFAS was responsible for making the payment, and Ms. Moore would not have known anything about payment unless she was contacted about a payment problem. PFUF ¶¶ 63-65. She was not contacted about a payment problem in relation to PO 4191. PFUF ¶ 66. Thus, since Ms. Moore had no knowledge of Mr. Kawa in relation to PO 4191, she could not have intended to contract with him with respect to PO 4191.

If this Court were to find that there was an intent to contract with Mr. Kawa upon the part of the Government, there still would not be an express or implied-in-fact contract because there was no consideration. Consideration is "something . . . bargained for and received by a promisor from a promisee." Black's Law Dictionary (8th ed. 2004). Mr. Kawa alleges that consideration

consisted of his agreement to serve as an escrow agent, and the contracting officer's alleged agreement to forward payment to Mr. Kawa. Second Am. Compl. ¶ 65. Mr. Kawa further alleges that there was consideration because shipment of the hose assemblies was conditioned upon making Mr. Kawa the payee. Id. No one in the Government ever had any contact with Mr. Kawa, and therefore could not have "bargained for" anything with him. PFUF ¶¶ 20, 52, 71. No one with authority to bind the Government was aware of the escrow agreement in relation to PO 4191 or that shipment of the hose assembles was allegedly conditioned upon making Mr. Kawa the payee at the time the remittance address was changed. PFUF ¶¶ 16, 56, 57. Additionally, Mr. Kawa's agreement to serve as an escrow agent was an agreement with Capital City and JGB, therefore could not serve as consideration for any alleged agreement with the Government. PFUF ¶ 2. The contract for the hose assemblies was between the Government and Capital City. PFUF ¶ 3. The change in the remittance address was a change to that contract between the Government and Capital City, not a new contract with Mr. Kawa.

The third requirement for an express or implied-in-fact contract is lack of ambiguity in offer and acceptance. Mr. Kawa alleges that his offer of services in the written escrow agreement constituted an offer to the Government, that Ms. Bocsy typing his name and address into the PO 4191 constituted acceptance by the Government, and that consideration was Mr. Kawa's agreement to serve as an escrow agent. Second Am. Compl. ¶¶ 65-66. The escrow agreement was between Mr. Kawa, JGB, and Capital City. PFUF ¶ 2. Therefore, Mr. Kawa's offer of services as an escrow agent was an offer to Capital City and JGB, not the Government. Even assuming that the escrow agreement somehow constituted an offer to the Government, at the time Ms. Bocsy changed the remittance address, she was not even aware of the escrow

agreement, thus her changing of the remittance address could not have been an acceptance of that offer. PFUF ¶¶ 16, 21.

Mr. Kawa further alleges that, in any event, the Government ratified an implied-in-fact contract with Mr. Kawa by accepting the hose assemblies. Second Am. Compl. ¶ 67. To demonstrate ratification, Mr. Kawa must show that "(1) the government received a benefit from plaintiff's activities; and (2) government officials who had authority to contract had knowledge of the contract and accepted plaintiff's offer." Brunner v. United States, 70 Fed. Cl. 623, 646 (2006) (omitting internal citations); see also Gary v. United States, 67 Fed. Cl. 202, 216 (2005). Mr. Kawa cannot demonstrate that the Government ratified an implied–in-fact contract with him, because the Government did not receive any benefits from Mr. Kawa. Pursuant to PO 4191, the Government was entitled to delivery of the hose assemblies and accepted those hose assemblies for which it had bargained with Capital City. Acceptance of the hose assemblies, therefore, does not demonstrate any intent to ratify an implied-in-fact contract with Mr. Kawa. By accepting the hose assemblies, the Government intended only to fulfill the parties' obligations under PO 4191. Even assuming that the Government received a benefit from Mr. Kawa, as demonstrated above, Ms. Bocsy did not accept any offer from Mr. Kawa. To the extent that Mr. Kawa is alleging that Ms. Bader or Ms. Moore ratified an implied-in-fact contract with Mr. Kawa, see Second Am. Compl. ¶ 68, as demonstrated above, Ms. Bader did not have authority to bind the Government and Ms. Moore was not aware of anything concerning Mr. Kawa in relation to PO 4191 and had no involvement in payment or acceptance of the shipment. PFUF ¶¶ 43, 48-60, 63.

Mr. Kawa alleges in his complaint that the Government breached PO 4191 because the contract directed payment to Mr. Kawa. Second Am. Compl. ¶ 70-75. As Mr. Kawa admits, PO 4191 was a contract between the Government and Capital City. Second Am. Compl. ¶ 24. Although Mr. Kawa was listed in the remittance address of PO 4191, the Government did not contract with Mr. Kawa. Accordingly, the Government could not have breached a contract with Mr. Kawa. As set forth above, when Ms. Bocsy changed the remittance address, she believed Mr. Kawa was associated with Capital City, PFUF ¶ 21, therefore, changing the remittance address did not change the Government's obligations under PO 4191, namely to pay Capital City for delivery of the hose assemblies. When the Government paid Capital City by EFT, the Government fulfilled that obligation. In fact, the contract, in incorporating FAR 52.232-33, explicitly required the Government to pay the contractor by EFT to the information in the CCR, which in this case was Capital City's bank account. PFUF ¶ 23-26. Capital City, not the Government, was responsible for making any changes to the CCR EFT information. PFUF ¶ 25.

III. Mr. Kawa Is Not A Third-Party Beneficiary

Mr. Kawa alleges that he was a third-party beneficiary of PO 4191. Second Am. Compl. ¶¶ 49-55.[5] In very limited circumstances, this Court has permitted a third-party beneficiary of a contract to bring suit upon the contract. See Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997). "In order to prove third-party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention benefit the party directly." Flexfab, L.L.C. v. United States, 424 F.3d 1254,

[5] While paragraph 56 of the Second Amended Complaint is under the heading "Count II - Third Party Beneficiary" it refers to an alleged ratification of an assignment to Mr. Kawa, and will thus be addressed in the section concerning assignment, below.

1259 (Fed. Cir. 2005). "[T]he intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." Id. at 1260 (quoting Montana, 124 F.3d at 1273). "In short, it is sufficient to ask in a typical case 'whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him.'" Id. In a case such as this one involving the change of a contract's remittance address, the relevant inquiry is whether an individual with authority to bind the Government had knowledge of the purpose for changing the remittance address. See JGB Enterprises, 63 Fed. Cl. at 335 (citing Flexfab, 62 Fed. Cl. at 148-49).

Mr. Kawa is not a third-party beneficiary to PO 4191 because Ms. Bocsy did not expressly or impliedly intend to benefit him. Mr. Kawa alleges that Ms. Bocsy intended to benefit him by typing his name and address into the remittance address for PO 4191. See Second Am. Compl. ¶ 51. This Court in JGB Enterprises, 63 Fed. Cl. at 335, found that JGB was not a third-party beneficiary to PO 4191 because Ms. Bocsy was not aware of the non-payment problem, was not aware of the purpose of changing the remittance address, and was not aware of Mr. Kawa's relationship to JGB. Likewise, Mr Kawa is not a third-party beneficiary to PO 4191, because Ms. Bocsy was not aware of the non-payment problem, was not aware of the purpose of changing the remittance address, and was not aware of Mr. Kawa's relationship to JGB. PFUF

¶ 16.

Capital City sent three letters/facsimiles to Ms. Bocsy requesting that the remittance address be changed to Mr. Kawa. JGB Enterprises, 63 Fed. Cl. at 334; PFUF ¶¶ 12-15. None of these letters or facsimiles explained to Ms. Bocsy the purpose of the request, informed Ms.

Bocsy of the escrow agreement, nor Mr. Kawa's relationship to JGB. PFUF ¶ 16. Because Mr. Kawa, JGB, and Capital City did not inform Ms. Bocsy of the purpose of the change in the remittance address, Ms. Bocsy reasonably assumed that Mr. Kawa was an employee of Capital City and that he had been designated to receive payments upon behalf of Capital City. JGB Enterprises, 63 Fed. Cl. at 335; PFUF ¶ 21. Indeed, Ms. Bocsy's assumption was reasonable given Capital City's November 9 facsimile requesting that the remittance address be changed to:

Capital City Pipes, Inc.
Michael Kawa, Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

PFUF ¶ 12. Because Ms. Bocsy believed Mr. Kawa to be an employee of Capital City, and because Capital City was the only party to PO 4191 other than the Government, if changing the remittance address was intended to benefit anyone, it was intended to benefit Capital City.

Mr. Kawa also alleges that the "face of the Purchase Order objectively manifested an express intention to benefit Mr. Kawa." Second Am. Compl. ¶ 53. As set forth above, the contract must not only reflect an express or implied intent to benefit the party, but must also reflect an intent to benefit the party directly. All that the face of PO 4191 shows is Mr. Kawa's name and address as the remittance address. This in no way, by itself, shows that there was an intent to benefit Mr. Kawa directly. Moreover, the face of PO 4191 does not even show an intent to send payment to Mr. Kawa, because, by the incorporation of FAR 52.232-33, it was clear that payment was to be made by EFT to the payee listed in the CCR database, which was Capital City's bank.

Mr. Kawa further alleges that he reasonably relied upon the "the objective manifestation of the Government's express intent in Purchase Order 4191 that payment should be made only to [him]." Second Am. Compl. ¶ 54. Mr. Kawa's reliance, however, was not reasonable when he failed to explain to Ms. Bocsy, or anyone within the Government, who he was, what his relationship with JGB was, and why the remittance address was being revised. See JGB Enterprises, 63 Fed. Cl. at 334-35; PFUF ¶¶ 20, 52. Mr. Kawa's reliance upon the remittance address, further, was not reasonable given FAR 52.232-33, which was incorporated into the contract by reference and stated that payment would be made to the EFT information contained in the CCR system, and that it was the contractor's responsibility to provide the correct EFT information, and that the information in the CCR database was Capital City's bank account. PFUF ¶¶ 23-26. Accordingly, Mr. Kawa did not reasonably rely upon the remittance address, and he is not a third-party beneficiary to PO 4191.

## IV. There Was No Assignment To Mr. Kawa

The Assignment of Contracts Act prohibits the assignment of a Government contract to a third party except when "moneys due or to become due . . . are assigned to a bank, trust company, or other financing institution, including any Federal lending agency." 41 U.S.C. §§ 15(a) and (b). The Assignment of Claims Act generally prohibits the assignment of any part of a claim against the Government. 31 U.S.C. § 3727(b). A valid assignment "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." Id. Mr. Kawa admits that he was not assigned any claim or rights pursuant to these anti-assignment statutes, but alleges, nonetheless, that the Capital City assigned

payments to him and that the Government had waived any technical defects in that assignment. Second Am. Compl. ¶ 45.

Courts have recognized that, "[d]espite the bar of the Anti-assignment statute . . . the Government, if it chooses to do so, may recognize an assignment." Tuftco Corp. v. United States, 222 Ct. Cl. 277, 614 F.2d 740, 744-45 (1980) (quoting Maffia v. United States, 143 Ct. Cl. 198, 204, 163 F. Supp. 859, 862 (1958)); see also D&H Distrib. Co. v. United States, 102 F.3d 542, 546 (Fed. Cir. 1996) ("It is well-established, however, that the Government can waive the statutory prohibitions against the assignment of contract rights if the contracting officer gives clear consent to the assignment."). Courts examine the "totality of circumstances" to determine whether the Government has chosen to recognize an assignment, including whether: "(1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment." Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528, 580 (2003) (citing Tuftco, 614 F.2d 745-46). "At bottom, the purported assignee must show an affirmative manifestation of the 'meeting of the minds' between the assignee and the government, sufficientto satisfy the standard measure of assent in contract law." Banco Bilbao Vizcaya v. United States, 48 Fed. Cl. 29, 34 (2000).

Mr. Kawa alleges that Capital City gave Ms. Bocsy multiple notices of assignment, Second Am. Compl. ¶ 43, and that Ms. Bocsy recognized the assignment by typing his name and address into the remittance clause. Second Am. Compl. ¶ 44. Contrary to his allegation, however, Capital City never provided Ms. Bocsy any notice of assignment. Rather, Capital City

sent three letters/facsimiles to Ms. Bocsy requesting that she modify the remittance address. PFUF ¶¶ 12-15. As Mr. Kawa admits, these letters and facsimiles did not say anything about an assignment. PFUF ¶ 18. These letters/facsimiles did not identify Mr. Kawa as anyone other than a representative for Capital City. PFUF ¶ 17. In fact, the first facsimile, dated November 9, 1999, included both Capital City and Mr. Kawa. PFUF ¶ 12. As Ms. Bocsy understood it, the reason for removing Capital City was not because Mr. Kawa was a separate entity, but rather because the number of lines exceeded that which could be typed into the remittance address. PFUF ¶ 13. Thus, Ms. Bocsy reasonably believed Mr. Kawa to be an employee of Capital City. Ms. Bocsy did not know that Mr. Kawa was JGB's attorney serving as an escrow agent responsible for forwarding any payments received by the Government to JGB and Capital City. JGB Enterprises, 63 Fed. Cl. at 334; PFUF ¶ 16. Accordingly, there was no "meeting of the minds" between Capital City, JGB, Mr. Kawa, and the Government regarding any assignment of payments under PO 4191. Furthermore, because Ms. Bocsy did not know that Capital City was allegedly requesting an assignment of payment to Mr. Kawa, her change of the remittance address was not a recognition of the alleged assignment.

Mr. Kawa further alleges that the Government ratified the assignment. Second Am. Compl. ¶¶ 47, 56. Mr. Kawa points to Ms. Bader's knowledge of Mr. Kawa's role as an escrow agent and her failure to object to payment being made to him. Id. Even assuming these allegations concerning Ms. Bader are true, they are irrelevant, as Ms. Bader had no authority to bind the Government. PFUF ¶ 43. Mr. Kawa also points to the ALERT message sent by Ms. Moore to DCMC, authorizing the ACO to take any contractual actions necessary to keep PO 4191 viable. Second Am. Compl. ¶¶ 47, 56. To the extent Mr. Kawa is asserting that this

ALERT message gave Ms. Bader authority to ratify the alleged assignment, such an assertion is erroneous because Ms. Bader was not the ACO. PFUF ¶ 41. To the extent Mr. Kawa is asserting that this ALERT message gave Ms. Rahtes authority to ratify the alleged assignment, such an assertion is erroneous because Ms. Rahtes would have interpreted it as merely authorization to perform or continue surveillance of the contract. PFUF ¶ 61. Mr. Kawa also alleges that Ms. Moore "revealed in a memorandum dated April 12, 1999 that she was aware of possible escrow agreements to assure payment to Capital City's subcontractors." Second Am. Compl. ¶ 47. Mr. Kawa appears to be referring to Ms. Moore's notes from her conversation with Ms. Williams on April 12, 2000. PFUF ¶ 53. In that conversation, there was discussion about a vendor payment issue and an account where monies could be set aside for the vendor. PFUF ¶ 53. There was no mention of an escrow agreement to assure payment. Regardless, it is unclear how this allegation supports Mr. Kawa's contention that the alleged assignment was ratified. In order to recognize an assignment, the contracting officer must change the contract in accordance with the assignment. Ms. Moore did not make any changes to the contract at all. PFUF ¶ 58. Additionally, the contracting officer must make payment to the assignee pursuant to the assignment. Ms. Moore had no role in payment, but even assuming she did, payment was not made to the alleged assignee, Mr. Kawa, but rather to Capital City.

V. Mr. Kawa Is Precluded From Bringing His Claim Pursuant To The Doctrine Of *Res Judicata*

Mr. Kawa's claim is barred by the doctrine of res judicata. Res judicata, or claim preclusion, is the well-established doctrine that "provides that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Bailey v. United States, 54 Fed. Cl. 459, 474 (Fed. Cl. 2002) (citing Parklane Hosiery

Co. v. Shore, 439 U.S. 322, 326 (1979)). Essentially, res judicata prevents plaintiffs and their privies "from asserting the same transactional facts under different cause of action." Young Engineers Inc. v. ITC, 721 F.2d 1305, 1314 (Fed. Cir. 1983). Res judicata applies "not only as to every matter which was offered and received to sustain or defeat [a plaintiff's previous] claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 (1877).

Res judicata applies when: "(1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (2) the second claim is based on the same set of transactional facts as the first." JET, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000).

Mr. Kawa's claim is barred by the doctrine of res judicata because all three elements are met here. First, Mr. Kawa is a privy of JGB. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Martin v. United States, 30 Fed. Cl. 542, 550 (1994) (quoting Lowell Staats Mining Co. v. Phila. Elec. Co., 878 F.2d 1271, 1274–75 (10th Cir. 1989)) (internal citation omitted). Courts have found privity in certain relationships, such as where the parties have a "concurrent relationship to the same property (i.e. trustee and beneficiary), [a] successive relationship to the same property (i.e. seller and buyer); or [where the parties] represent[] the interests of the same person." Id. (quoting Lowell Staats Mining Co., 878 F.2d at 1275).

Here, Mr. Kawa and JGB are "really and substantially in interest the same." Mr. Kawa previously represented JGB in his capacity as an attorney and was designated as an escrow agent

under an escrow agreement, which was designed to provide greater assurance of payment to JGB. PFUF ¶¶ 1-2. Mr. Kawa does not have any personal interest in receiving funds from the Government under PO 4191[6] and has no independent substantive right to monies against the Government under PO 4191. PFUF ¶ 10. Although Mr. Kawa alleges that he is entitled to $43,987.50, this amount must be forwarded to JGB pursuant to the escrow agreement. PFUF ¶ 10. Assuming the money had been paid to Mr. Kawa, he would have had no right to retain it following release by JGB and Capital City; he would have had to split the entire payment between JGB and Capital City's trustee in bankruptcy. PFUF ¶ 10.

Furthermore, JGB and Mr. Kawa have a concurrent relationship to the same property. In his response to our supplemental motion to dismiss, Mr. Kawa asserted, and this Court agreed, that his relationship to JGB was like that of a trustee and beneficiary, a relationship that courts have found to indicate privity. Kawa, 77 Fed. Cl. at 301. Alternatively, Mr. Kawa and JGB have a successive relationship to the same property, in that Mr. Kawa was required to forward the PO 4191 payment to JGB.

Second, there has been a final judgment upon the merits upon JGB's PO 4191 claim. In JGB Enterprises, 63 Fed. Cl. at 334-35, this Court held that JGB was not a third-party beneficiary to PO 4191, and therefore could not recover $43,987.50 from the Government. Third, it is evident that Mr. Kawa's claim arises out of the "same set of transactional facts" as JGB's PO 4191 claim. They both involve JGB's non-payment problem, the escrow agreement entered into by Capital City and JGB to address that problem, the modification of the remittance

---

[6] As an escrow agent, Mr. Kawa was not liable to JGB or Capital City for failure to receive the payment, unless that failure was the result of his gross negligence. PFUF ¶ 8. Mr. Kawa admits that his failure to receive payment was not gross negligence. PFUF ¶ 8.

address to Mr. Kawa under PO 4191, and the Government's electronic payment of monies under PO 4191 to Capital City. Compare Second Am. Compl. ¶¶ 16-37 with JGB Enterprises, 63 Fed. Cl. at 326-27. Because the Court has already considered these facts in issuing its final decision in favor of the Government upon JGB's PO 4191, Mr. Kawa should not be permitted to re-litigate JGB's claim for JGB's sole benefit.

VI. Mr. Kawa Is Not Entitled To Interest Pursuant To The Contract Disputes Act Because He Is Not A "Contractor"

Mr. Kawa alleges that this Court possesses jurisdiction to entertain his claim pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 et seq. Second Am. Compl. ¶ 4. He thus alleges that he is entitled to $43,987.50 "plus applicable interest." See Second Am. Compl. Wherefore Clause. Because he is not a "contractor," the CDA does not provide this Court jurisdiction, and therefore, should Mr. Kawa prevail in this litigation, he is not entitled to interest pursuant to the CDA.

The CDA applies to "any express or implied contract . . . entered into by an executive agency for - (1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." 41 U.S.C. § 602(a). Although the CDA admittedly applies to PO 4191, the CDA provides that only a contractor may appeal the decision of a contracting officer. JGB Enterprises, 63 Fed. Cl. at 331 (citing 41 U.S.C. §§ 609(a)(1), 605(a)). The CDA defines the term "contractor" as "a party to a government contract other than the Government." 41 U.S.C. § 601(4). The contractor to PO 4191 is Capital City, not Mr. Kawa. PFUF ¶ 3. As set forth in detail above, there was no express or implied-in-fact contract between Mr. Kawa and the Government. The mere fact that Mr. Kawa's name appears in the

remittance address does not make him a party to PO 4191. Even if Mr. Kawa could be considered a third-party beneficiary to PO 4191, he is not a "contractor" for purposes of the CDA. See JGB Enterprises, 63 Fed. Cl. 330-31 (holding that JGB was not a "contractor" for purposes of the CDA). Because Mr. Kawa is not a "contractor," he is not entitled to interest pursuant to the CDA.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court grant our motion for summary judgment.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ FRANKLIN E. WHITE, JR.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

May 9, 2008 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 9, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Meredyth D. Cohen