IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, ESQ., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56 of the Rules of Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits these proposed findings of uncontroverted fact in support of its motion for summary judgment.

1. Michael Kawa, Esq., is an attorney for JGB Enterprises, Inc. ("JGB"). JGB Enterprises, 63 Fed. Cl. at 325; Defendant's Appendix ("DA") 74-75.

2. Pursuant to an escrow agreement between prime contractor Capital City Pipes, Inc. ("Capital City") and subcontractor JGB, Mr. Kawa served as an escrow agent for receipt of payments due to Capital City for manufacture and delivery of hose assemblies pursuant to several contracts between the United States and Capital City. Second Am. Compl. ¶ 18; DA 13.

3. In 1999, the Defense Supply Center Columbus ("DSCC"), which is part of the Defense Logistics Agency ("DLA"), issued several sole-source contracts and purchase orders to Capital City for hose assemblies, including SP0750-00-M-4191 ("PO 4191"). JGB Enterprises, Inc. v. United States, 63 Fed. Cl. 319, 323 (2004). Capital City subcontracted the work to JGB, who manufactured and delivered the hose assemblies to the Government. Id.

4. By late October 1999, Capital City was indebted to JGB, and JGB became concerned that Capital City would not be able to satisfy its debts. Id.

5. JGB expressed its concerns about getting paid by Capital City to DSCC Small Business Specialist Michael Taylor. DA 49-50. Mr. Taylor contacted Capital City and discussed the possibility of an escrow agreement with Capital City's president, Lee Gilliam. DA 51-52. Mr. Taylor understood an escrow agreement to be an agreement by which the two companies would set up a joint account, the Government would send payments to that account, and it would require the signatures of both companies to release the funds. DA 52.

6. On November 10, 1999, JGB entered into an escrow agreement with Capital City. Second Am. Compl. ¶ 7; DA 12-14.

7. Under the escrow agreement, Capital City and JGB agreed to "take all steps and execute all documents as may be required to provide that future payments of money due to Capital City from DSCC . . . shall be payable to Michael E. Kawa, Esq., as the Escrow Agent . . . ." DA 13.

8. Under the escrow agreement, Mr. Kawa was not liable to JGB or Capital City for failure to receive the payment, unless that failure was the result of his gross negligence, which Mr. Kawa admits it was not. DA 13, 78.

9. Under the escrow agreement, Mr. Kawa was required to deposit the monies into an escrow account and distribute payment to Capital City and JGB only upon a joint statement signed by both Capital City and JGB. DA 13, 77-79.

10. Under the escrow agreement, Mr Kawa had no right to retain the Government's payment following release by JGB and Capital City; he would have had to split the entire payment between JGB and Capital City's trustee in bankruptcy. DA 78, 86.

11. DSCC was not a party to the escrow agreement. DA 12-14.

12. On November 9, 1999, Capital City sent a facsimile to the pre-award contracting officer for PO 4191, Lu Ann Bocsy, confirming Capital City's prior offer to provide hose assemblies and requesting that the payment remittance address be changed to:

Capital City Pipes, Inc
Michael Kawa Esq
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 17; DA 11.

13. Following receipt of the November 9, 1999 facsimile, Ms. Bocsy contacted Capital City because the number of lines requested exceeded that which could be typed into the remittance address. DA 3, Declaration of LuAnn Bocsy ("Bocsy Decl.") ¶ 4; see also DA 92-93.

14. On November 10, 1999, Capital City sent a letter to Ms. Bocsy, following up on the November 9 facsimile, confirming Capital City's prior offer to provide hose assemblies, and requesting that the payment remittance address be changed to:

Michael Kawa, Esq.
300 Crown Building
304 S. Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 19; DA 15.

15. On November 15, 1999, Capital City again sent Ms. Bocsy another facsimile, apologizing for any confusion, and requesting that the payment address be changed to:

Michael Kaka. Esq.
300 Crown Bldeg
304 S Franklin Street
Syracuse, NY 13202

Second Am. Compl. ¶ 20; DA 16.

16. None of these letters or facsimiles gave any explanation for the requested change, did not inform Ms. Bocsy of the escrow agreement, and did not identify Mr. Kawa's relationship with JGB. JGB Enterprises, 63 Fed. Cl. at 325-26; see also DA 11, 15, 16, 81-85.

17. None of these letters or facsimiles indicated that Mr. Kawa was not an employee of Capital City. DA 11, 15, 16, 81-85.

18. None of these letters or facsimiles said anything about an assignment. DA 11, 15, 16, 81-85.

19. Ms. Bocsy did not ask who Mr. Kawa was or why Capital City wanted the remittance address changed. DA 4, Bocsy Decl. ¶ 5; see also DA 53-54 ; JGB Enterprises, 63 Fed. Cl. at 326.

20. Ms. Bocsy never had any communications with Mr. Kawa. DA 76.

21. Ms. Bocsy did not know that Mr. Kawa was an attorney for JGB or that he had been designated as an escrow agent, but rather believed that Mr. Kawa was an employee of Capital City. DA 4, Bocsy Decl.¶ 6; DA 39, 55-56, 94.

22. On November 24, 1999, Ms. Bocsy issued PO 4191 to Capital City in the amount of $45,275.76 for 306 hose assemblies. Second Am. Compl. ¶ 24; DA 17. PO 4191 states in relevant part:

REMIT PAYMENT TO:

Michael Kawa, Esq.
300 Crown Bldg
304 S. Franklin St
Syracuse, NY 13202

DA 21.

23. PO 4191 incorporated clauses by reference pursuant to FAR 52.252-2. DA 22-23.

24. One incorporated clause was FAR 52.232-33. DA 25.

25. FAR 52.232-33 provided that all payments by the Government would be made to the contractor by electronic fund transfer ("EFT") to the EFT information in the Central Contractor Registry ("CCR") database. DA 27. That clause further provided: "In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the CCR database." Id.

26. The EFT information in the CCR database stated that payment be made to Capital City's bank account. See DA 37.

27. Following the issuance of PO 4191 to Capital City, Carolyn Mathews became the post-award contracting officer on PO 4191. JGB Enterprises, 63 Fed. Cl. at 327.

28. Sometime in March or April 2000, Ms. Mathews ceased being the contracting officer for contractors in Florida, and Phyllis Moore became the post-award contracting officer on PO 4191. JGB Enterprises, 63 Fed. Cl. at 327; DA 69; DA 6, Declaration of Phyllis E. Moore ("Moore Decl.") ¶ 5.

29. At the same time, Ms. Moore also became the post-award contracting officer on several other Capital City contracts, including SPO750-99-C-2508 ("Contract 2508"). JGB Enterprises, 63 Fed. Cl. at 327.

30. The pre-award contracting officer is responsible for creating the terms of the contract, whereas the post-award contracting officer is responsible for implementing those terms. See DA 60.

31. The post-award contracting officer generally does not take any action with respect to the contract unless a problem arises. DA 5, Moore Decl. ¶ 3; DA 96.

32. The post-award contracting officer is not responsible for seeing that payment is made pursuant to the contract. DA 5, Moore Decl. ¶ 4; DA 66-68, 97.

33. Payments are made electronically by the Defense Finance and Accounting Service ("DFAS"), and the post-award contracting officer is only contacted by DFAS if there was a problem. See DA 66-68.

34. The contractor invoices DFAS directly for payment. DA 108.

35. The Defense Contract Management Command ("DCMC") Clearwater was responsible for administering PO 4191, among other Capital City contracts. See DA 9, Declaration of Lynne Rahtes ("Rahtes Decl.") ¶ 9.

36. DCMC is now known as the Defense Contract Management Agency ("DCMA"). DA 8, Rahtes Decl. ¶ 3.

37. The DCMC Clearwater office is now the St. Petersburg Office. DA 8, Rahtes Decl. ¶ 4.

38. Lynne Rahtes was the DCMC administrative contracting officer ("ACO") assigned to PO 4191. DA 9, Rahtes Decl. ¶ 9.

39. The ACO has no authority to substantively modify contracts without authorization from the DSCC contracting officer. DA 8, Rahtes Decl. ¶ 5.

40. Absent a valid completed assignment of payment, the ACO would require permission from the DSCC contracting officer to change the payee. DA 9, Rahtes Decl. ¶ 6.

41. Kathryn Bader was the DCMC contract specialist assigned to Capital City contracts. DA 1, Declaration of Kathryn M. Bader ("Bader Decl.") ¶ 3.

42. Ms. Bader reported to Ms. Rahtes. DA 88.

43. At the time she was the contract specialist assigned to Capital City contracts, Ms. Bader was not a contracting officer, and had no authority to independently make changes to contracts. DA 9, Rahtes Decl.¶ 7; DA 2, Bader Decl. ¶ 5.

44. Ms. Bader was not responsible for remittance addresses, or for where or to whom payment was sent. DA 2, Bader Decl. ¶ 6; DA 89, 90.

45. On February 8, 2000, JGB shipped the hose assemblies for PO 4191 to Defense Department Depot. Second Am. Compl. ¶ 28; JGB Enterprises, 63 Fed. Cl. at 326.

46. On April 24, 2000, the Government paid for the hose assembles under PO 4191 by EFT directly into Capital City bank's account. Second Am. Compl. ¶ 37, JGB Enterprises, 63 Fed. Cl. at 326-37.

47. Capital City did not pay JGB for the hose assemblies under PO 4191. JGB Enterprises, 63 Fed. Cl. at 327.

48. During the time she was the post-award contracting officer for Capital City contracts, Ms. Moore did not have any discussions with Ms. Mathews concerning Capital City. DA 6, Moore Decl. ¶ 6; DA 58-59.

49. Ms. Moore did not have any discussions with Mr. Taylor about JGB's problems with Capital City until after payment had been made on PO 4191. DA 6, Moore Decl. ¶ 6; DA 64.

50. Ms. Moore did not have any discussions with Ms. Bocsy until after JGB filed its claim. DA 6, Moore Decl. ¶ 6; DA 41.

51. Ms. Moore never spoke to Ms. Rahtes. DA 6, Moore Decl. ¶ 6; DA 71.

52. Ms. Moore never had any communications with Mr. Kawa. DA 6, Moore Decl.

¶ 8; DA 76.

53. On April 12, 2000, Ms. Moore talked to Thelma Williams of Capital City about a vendor payment issue and an account where monies could be set aside for the vendor. DA 35-36, 62, 63.

54. April 12, 2000 was the first time Ms. Moore spoke to Ms. Williams. DA 65.

55. Ms. Moore did not have any contact with JGB prior to receiving its May 31, 2000 request for equitable adjustment. DA 6, Moore Decl. ¶ 7; DA 70.

56. Ms. Moore does not recall reviewing the Contract 2508 or the PO 4191 file when she took over as post-award contracting officer on those contracts. DA 6, Moore Decl. ¶ 9; DA 61.

57. Ms. Moore did not have any involvement with PO 4191, other than the March 10 and March 24, 2000 ALERT messages sent to DCMC concerning all of Capital City's contracts. DA 6, Moore Decl. ¶ 10; DA 30-33.

58. Ms. Moore did not make any changes to PO 4191. DA 6, Moore Decl. ¶ 12.

59. Ms. Moore sent the ALERT messages to DCMC because Capital City was an 8(a) contractor and because it had been delinquent in shipment. DA 6, Moore Decl. ¶ 10; DA 98-99.

60. Sending this type of ALERT message was Ms. Moore's usual practice for 8(a) contractors, particularly those who were delinquent, and had nothing to do with JGB's alleged payment problems. DA 6, Moore Decl. ¶ 10.

61. Ms. Rahtes does not recall receiving the ALERT messages, but would have interpreted the authorization "to take whatever contractual actions necessary" as authorization to continue or perform surveillance. DA 9, Rahtes Decl. ¶ 12; DA 106-07.

62. Ms. Rahtes would not have interpreted the March 24 ALERT message as authorization to change the payee of the contract or to determine to whom payment should be made. DA 9, Rahtes Decl. ¶ 12.

63. Ms. Moore had no involvement in payment of contracts unless DFAS or the contractor contacted her about a payment problem. DA 6, Moore Decl. ¶ 4; see also DA 66-68.

64. It was not Ms. Moore's responsibility to ensure that payments were made pursuant to the contract. DA 6, Moore Decl. ¶ 4; DA 66-68, 97.

65. It is DFAS's responsibility, not the contracting officer's responsibility, to ensure that payments are made pursuant to the contract. DA 42.

66. As to PO 4191, Ms. Moore was not contacted about a payment problem until after JGB filed its request for equitable adjustment. DA 6, Moore Decl. ¶ 13.

67. Ms. Moore does not recall ever knowing what the remittance address was on PO 4191 until after JGB filed its request for equitable adjustment. DA 7, Moore Decl. ¶ 14; DA 44-45, 46-47.

68. Ms. Moore was not aware of where or to whom payment on PO 4191 was sent until after JGB filed its request for equitable adjustment. See DA 7, Moore Decl. ¶ 14; DA 47, 100.

69. Ms. Bader does not recall exactly when she learned of Mr. Kawa's role as an escrow agent, but it was at least as early as April 4, 2000. DA 34.

70. Ms. Bader did not have any responsibilities for remittance addresses or making payment on PO 4191. DA 2, Bader Decl. ¶ 6.

71. Though Ms. Rahtes was the ACO assigned to Capital City contracts, she did not

participate in the day-to-day administration of those contracts and does not specifically recall anything about PO 4191, Contract 2508, JGB, or Mr. Kawa. DA 9, Rahtes Decl. ¶ 10; DA 102.

72. At the time Ms. Rahtes was assigned to Capital City contracts, she was also the ACO assigned to hundreds of contracts. DA 9, Rahtes Decl. ¶ 9; DA 105.

73. On November 18, 2005, Mr. Kawa submitted a certified claim for $45,275.76 to the contracting officer. Second Am. Compl. ¶ 40.

74. On January 13, 2006, Ms. Bocsy denied Mr. Kawa's claim. DA 72. She stated in relevant part:

> You were neither an assignee of funds nor a third party beneficiary under this purchase order, and you did not have an implied-in-fact contract with the government. The government awarded the purchase order to Capital City Pipes. When Capital City Pipes asked me to change the remittance address, I did not know nor have any reason to know about your relationship to JGB. I did not intend to assign payments to you, to establish a third-party beneficiary relationship with you, or to contract with you.

Id.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ FRANKLIN E. WHITE, JR.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

May 9, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on May 9, 2008, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Meredyth D. Cohen