No. 06-448C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MICHAEL KAWA, ESQ.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL APPENDIX

---

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

FRANKLIN E. WHITE, JR.
Assistant Director

MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: 202-353-7978
Fax: 202-514-8624

August 5, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . 3

I. There Are No Genuine Issue Of Material Fact Precluding Summary Judgment . 3

A. There Are No Questions Of Material Fact Regarding Ms. Bocsy's Knowledge About Mr. Kawa . . . . . . . . . . 3

B. There Are No Questions Of Material Fact Regarding The Knowledge Of Ms. Moore . . . . . . . . . . 6

C. There Are No Questions Of Material Fact Regarding The Alleged Delegation To DCMC Clearwater . . . . . . . . . . 7

D. There Are No Questions Of Material Fact Regarding The Powers, Duties, Or Responsibilities Of DCMC . . . . . . . . . . 10

II. Mr. Kawa Was Not A Third Party Beneficiary To Purchase Order 4191 . . . . . . 11

III. There Was No Assignment To Mr. Kawa . . . . . . . . . . 13

IV. There Was No Contract Between Mr. Kawa And The Government . . . . . . . . . . 15

V. Mr. Kawa Is Precluded From Bringing This Claim Pursuant To The Doctrine Of *Res Judicata* . . . . . . . . . . 16

VI. Mr. Kawa Is Not Entitled To Contract Disputes Act Interest . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . 18

TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Appeal of Floorpro, Inc.,
ASBCA No. 54143, 04-1 BCA ¶ 32571, 2004 WL 691691 (2004) . . . . . . . . . . . . . . . 13

Appeal of Floorpro, Inc.,
ASBCA No. 54143, 2008 WL 436927 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cromwell v. County of Sac,
94 U.S. 351 (1877) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Flexfab, LLC v. United States,
62 Fed. Cl. 139 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

JET, Inc. v. Sewage Aeration Sys.,
223 F.3d 1360 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

J.G.B. Enterprises, Inc. v. United States,
63 Fed. Cl. 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 17, 18

Jandreau v. Nicholson,
492 F.3d 1372 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

Kawa v. United States,
77 Fed. Cl. 294 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Martin v. Am. Bancorporation Retirement Plan,
407 F.3d 643 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Medical Devices of Fall River, Inc. v. United States,
19 Cl. Ct. 77 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Residential Funding Corp. v. DeGeorge Fin. Corp.,
306 F.3d 99 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Riviera Finance of Texas, Inc. v. United States,
58 Fed. Cl. 528 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United Medical Supply Co. v. United States,
77 Fed. Cl. 257 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MICHAEL KAWA, ESQ., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-448C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, respectfully submits this reply to plaintiff's July 21, 2008 opposition to its May 9, 2008 motion for summary judgment.

In our moving brief, we demonstrated that summary judgment should be granted in favor of the United States. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law because: (1) there was no contact between plaintiff, Michael Kawa, and the United States; (2) Mr. Kawa was not a third-party beneficiary to Purchase Order 4191; (3) there was no assignment of payment to Mr. Kawa; and (4) Mr. Kawa is precluded from bringing his claim pursuant to the doctrine of res judicata. We further demonstrated that, should Mr. Kawa prevail in this litigation, he is not entitled to interest pursuant to the Contract Disputes Act ("CDA").

In response, Mr. Kawa attempts to show that there are disputed issues of material fact, then asserts that the facts as he perceives them show that: (1) Mr. Kawa is a third-party beneficiary of Purchase Order 4191; (2) Mr. Kawa is an assignee of Purchase Order 4191; (3) express and implied contracts exist between the United States and Mr. Kawa; (4) res judicata does not apply; and (5) Mr. Kawa is entitled to Contract Disputes Act interest.

Contrary to Mr. Kawa's assertion, there are no disputed issues of material fact. A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). There is only one fact that is material to Mr. Kawa's contract, third-party beneficiary, and assignment claims: Ms. Bocsy, the contracting officer who changed the remittance address on Purchase Order 4191, "had no knowledge of the purpose of [changing] the remittance address." J.G.B. Enterprises, Inc. v. United States, 63 Fed. Cl. 319, 335 (2004) (citing Flexfab, LLC v. United States, 62 Fed. Cl. 139, 148-49 (2004)). This Court's factual finding upon that issue in the JGB litigation is not called into question by any of the alleged factual disputes raised by Mr. Kawa.

As demonstrated in our moving brief, if Ms. Bocsy was unaware of the purpose of changing the remittance address, there could not have been a contract between Mr. Kawa and the United States because there was no intent to contract with Mr. Kawa. Def. Mot. at 14-15.[1] Additionally, Mr. Kawa could not have been a third-party beneficiary of Purchase Order 4191 because there was no intent to benefit him, and there could not have been an assignment to Mr. Kawa because Ms. Bocsy did not recognize such an assignment. Def. Mot. at 20-21, 23-24.

The only fact material to Mr. Kawa's res judicata argument is that Mr. Kawa is making the same legal claim in this case as JGB was making in the prior litigation. Mr. Kawa has admitted that he possesses no independent right to the money at issue because it must be forwarded to JGB. Def. Mot. at 27.

Finally, in order to be entitled to CDA interest, Mr. Kawa must show that he was a

[1] "Def. Mot." refers to Defendant's Motion for Summary Judgment, filed on May 9, 2008.

"contractor," which he cannot do because, as explained above, Ms. Bocsy had no intent to contract with him.

We address each of Mr. Kawa's arguments in more detail below.

## ARGUMENT[2]

### I. There Are No Genuine Issue Of Material Fact Precluding Summary Judgment

#### A. There Are No Questions Of Material Fact Regarding Ms. Bocsy's Knowledge About Mr. Kawa

As set forth above, the only material fact concerning Ms. Bocsy's knowledge about Mr. Kawa is that Ms. Bocsy was unaware of the purpose of changing the remittance address on Purchase Order 4191. See JGB Enterprises, 63 Fed. Cl. at 326, 335. This Court in JGB Enterprises found that neither the November 10, 1999 letter nor the November 15, 1999 letter gave any explanation for the requested change, and that Ms. Bocsy made no effort to find out why Capital City wanted the change. Id. at 326. Mr. Kawa attempts to raise a dispute about this finding by citing Ms. Bocsy's testimony about her belief as to Mr. Kawa's role and by asserting that the "course of dealing" should have indicated to Ms. Bocsy that Mr. Kawa was a separate entity from Capital City. As demonstrated below, neither Ms. Bocsy's testimony nor the alleged "course of dealing" calls into question the fact, as found by this Court, that Ms. Bocsy did not know the reason for the remittance address change.

Mr. Kawa asserts that the testimony of Ms. Bocsy is "confused and contradictory." Pl.

---

[2] Any disagreements concerning the facts as set forth in Mr. Kawa's opposition are addressed in our response to plaintiff's proposed additional findings of uncontroverted fact. In this motion, we will only address the facts as they relate to Mr. Kawa's legal arguments.

Opp. at 14.[3] We admit that Ms. Bocsy testified as quoted on pages 14-15 of plaintiff's opposition, but assert that her testimony is not contradictory, and, to whatever extent that it may be viewed as contradictory, such contradictions are immaterial. In addition to the testimony quoted by Mr. Kawa, Ms. Bocsy further testified that: "I mean, I didn't dwell on the thought of who Michael Kawa was. I assumed that he was a person related to Capital City Pipes; he could have worked in their offices, could have worked in their shipping, billing section." PA 44.[4] It is clear from Ms. Bocsy's testimony that, because Capital City requested the remittance address change, she believed Mr. Kawa to be somehow affiliated with Capital City, and did not give any thought to the details of that affiliation. Her testimony that she assumed he was affiliated with a bank is not inconsistent with her testimony that he was related to Capital City. Being affiliated with a bank would not have made Mr. Kawa unrelated to Capital City. The material fact, which is not called into question by this testimony, is that Ms. Bocsy did not know the reason for the remittance address change and had no reason to believe that Mr. Kawa was unaffiliated with Capital City.

Mr. Kawa further asserts that the "course of dealing . . . showed that Mr. Kawa was not synonymous with Capital City Pipes." Pl. Opp. at 16. In support of this assertion, Mr. Kawa points out that there are several documents showing Capital City's address in Florida. Id. Simply showing that Capital City had addresses in Florida does not rule out the possibility that an employee or someone associated with Capital City had an address in Syracuse, New York.

---

[3] "Pl. Opp." refers to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed on July 21, 2008.

[4] "PA" refers to plaintiff's appendix to its opposition to our motion for summary judgment.

Thus, Mr. Kawa's assertions do not call into question Ms. Bocsy's testimony that she believed Mr. Kawa to be associated with Capital City.

Mr. Kawa also attempts to show that Ms. Bocsy knew the reason for the request to change the remittance address by calling into question Ms. Bocsy's credibility in testifying that the reason she called Capital City concerning the requested address change was that the requested remittance address had too many lines. Questions about credibility alone cannot defeat a summary judgment motion absent contradictory evidence. See Medical Devices of Fall River, Inc. v. United States, 19 Cl. Ct. 77, 82 (1989). Mr. Kawa has provided no evidence that the reason for the call was anything other than that to which Ms. Bocsy testified. Contrary to Mr. Kawa's assertion that Ms. Bocsy testified that "nothing" was discussed during the call or that she does not remember what was discussed, Ms. Bocsy actually testified that nothing was discussed that she would have documented because the remittance address was clarified by a later facsimile. PA 34-35. Additionally, while Ms. Bocsy testified that she did not specifically recall the conversation with Capital City, she also stated that "if there is an additional fax clarifying this remittance address, I would have told [Thelma Williams of Capital City] to supply it in writing" because that was "standard procedure." PA 35. Furthermore, the fact that Ms. Bocsy testified that she could have placed "Michael Kawa" and "Capital City Pipe" on the same line in no way contradicts her testimony that she called Capital City about the number of lines in the address. While she technically could have placed both names on one line, it was entirely reasonable for her to instead contact the contractor and request that it revise the address as it wanted.

Finally, Mr. Kawa asserts that, at the very least, Ms. Bocsy placed Mr. Kawa's name into

Purchase Order 4191 knowing that he was an individual to whom payment would be made. Pl. Opp. at 17-18. Again, Ms. Bocsy's quoted testimony does not support this assertion. Ms. Bocsy did not say that payment would be made to an individual. Rather, she said that payment would be remitted to the remittance address, and then agreed that there was an individual's name in the remittance address in this case. PA 43-44. Even assuming that Ms. Bocsy believed that a check would be sent to Mr. Kawa's address, this does not contradict this Court's finding that Ms. Bocsy did not know the purpose of the remittance address change or Ms. Bocsy's testimony that she believed Mr. Kawa to be affiliated with Capital City. Ms. Bocsy could have assumed that Mr. Kawa's address was the address of an employee or someone else affiliated with Capital City.

B. There Are No Questions Of Material Fact Regarding The Knowledge Of Ms. Moore

Mr. Kawa erroneously claims that there is a conflict between Ms. Moore's testimony that she did not have any discussions with Mr. Taylor about JGB's problems with Capital City until after payment was made on Purchase Order 4191 and Mr. Taylor's testimony that he discussed an escrow agreement with Ms. Moore. Pl. Opp. at 19. There is no conflict between the testimony of these two witnesses because Mr. Taylor never specified a time frame for these discussions. We do not dispute that such discussions occurred, but as Ms. Moore testified, they occurred after payment was made on Purchase Order 4191.

Additionally, Ms. Moore's knowledge of the Capital City/JGB situation prior to payment on Purchase Order 4191 is immaterial to the issues before the Court on summary judgment because Ms. Moore did not change the remittance address on Purchase Order 4191. Thus, her knowledge is irrelevant to any determination of the Government's alleged intent to contract with Mr. Kawa or any ratification of an assignment to Mr. Kawa. See Def. Mot. at 15-16, 23-24.

C. There Are No Questions Of Material Fact Regarding The Alleged Delegation To DCMC Clearwater

As we demonstrated in our moving brief, Ms. Bader's knowledge of Mr. Kawa is immaterial to the issues upon summary judgment because Ms. Bader possessed no authority to bind the Government. Def. Mot. at 7, 15, 18, 24. Thus, Ms. Bader could not have contracted with Mr. Kawa, made Mr. Kawa and third-party beneficiary, or assigned payment to Mr. Kawa. Id.

Mr. Kawa asserts that Ms. Bader was given authority to bind the Government by virtue of Ms. Moore's March 24, 2000 ALERT message authorizing the Administrative Contracting Officer ("ACO") to "take whatever contractual actions necessary to keep these orders viable." Pl. Opp. at 20 (quoting PA 144). While Ms. Rahtes did testify that she believed this to be a delegation not just to the ACO, but to the team, Ms. Rahtes never stated that a team member could take action without the ACO's approval, nor did she state that the ALERT message would have authorized her or a member of her team to substantively modify a contract. In fact, Ms. Rahtes specifically stated that she would not have interpreted the ALERT message as authorization to change the payee of the contract or to determine to whom payment should be made. DA 9. Mr. Kawa has presented no evidence contradicting Ms. Rahtes' interpretation.

Mr. Kawa also claims that Ms. Bader had authority to bind the Government because she testified that she played a role in payment of contracts. Pl. Opp. at 21. We do not dispute that Ms. Bader had some role in contract payment, but she very clearly stated that "[w]here DFAS sent the payment was not part of my job" and that "[p]ayment to Michael Kawa was not part of my job." PA 60, 62. Mr. Kawa has not presented any evidence contradicting this testimony. Thus, any role Ms. Bader may or may not have had in payment is immaterial because it is

undisputed that her job did not involve where payment was sent.

Mr. Kawa then asserts that any knowledge that Ms. Bader had must be imputed to Ms. Rahtes. The basis for this assertion appears to be that Ms. Rahtes had access to the DCMC files and the documents sent to Ms. Bader that indicated Mr. Kawa's role were kept in the DCMC files. See Pl. Opp. at 21-22. There is no evidence, however, that Ms. Rahtes ever saw these documents. Mr. Kawa also claims that because the ACO allegedly received "full delegation" from Ms. Moore, her knowledge must be considered equivalent to that of Ms. Moore. Pl. Opp. at 21. This assertion is nonsensical and has no support in the record of this case.

Finally, Mr. Kawa claims that an adverse inference should be drawn against the Government regarding Ms. Rahtes' knowledge about Mr. Kawa because the DCMC Purchase Order 4191 files were improperly destroyed. Pl. Opp. at 23-25.

> The general rules of evidence law create an adverse inference when evidence has been destroyed and "(1) ... the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) ... the records were destroyed with a culpable state of mind; and (3) ... the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

Jandreau v. Nicholson, 492 F.3d 1372, 1375 (Fed. Cir. 2007) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).[5] Although we concede that we have been unable to locate the DCMC Purchase Order 4191 files and presume that they have been destroyed, Mr. Kawa has not met his burden of showing that the Court should draw an adverse

[5] To the extent that United Medical Supply Co. v. United States, 77 Fed. Cl. 257 (2007), holds that a party need not show bad faith in order to obtain spoliation sanctions, it is inconsistent with Federal Circuit precedent as set forth in Jandreau, 492 F.3d at 1375, which is binding upon this Court, and therefore should not be followed.

inference against the Government due to the presumed document destruction. See id. (stating that "[t]he burden is on the party seeking to use the evidence to show the existence of each criterion").

Mr. Kawa has not shown that DCMC had an obligation to preserve the evidence at the time it was destroyed. Assuming that the documents were destroyed pursuant to the document destruction policy in place at the time, the destruction would have occurred on approximately October 24, 2000, six months after payment was made on Purchase Order 4191. Mr. Kawa claims that DCMC was obligated to retain the documents by that point in time because of two notifications concerning Purchase Order 4191 that DCMC had received. The first of these was a letter sent by JGB to Michael Taylor, a copy of which was sent to the DCMC Commander. This letter demanded payment for all monies owed to JGB under several Capital City contracts, including Purchase Order 4191. PA 151-63. The second was an e-mail sent from Ms. Moore to Warren Slack at DCMC stating that a request for equitable adjustment on several Capital City contracts, including Purchase Order 4191, was received and requesting that DCMC suspend inspections or acceptance of supplies from Capital City and send personnel to Capital City's facility to conduct an in-depth financial responsibility analysis. PA 164. Neither of these notifications obligated DCMC to retain its documents related to Purchase Order 4191. Both notifications specify that the claim concerns payment. DCMC is primarily involved with quality assurance, inspection, and acceptance of products, therefore there would be no reason for DCMC to believe it possessed any documents relevant to a payment claim. SA4;[6] Declaration of Vasso K. Monta ("Monta Decl.") ¶ 6.

---

[6] "SA" refers to defendant's supplemental appendix attached to this reply.

Mr. Kawa has also not shown that the documents were destroyed with "a culpable state of mind." Jandreau, 492 F.3d at 1375. During the relevant time period, DCMC generally followed the document retention procedures in DLAI 5015.1, DLA Records Management Procedures and Records Schedule, Attachment A, adapted to its own particular purposes. SA 6; Declaration of Lynne T. Rahtes ("Rahtes Decl.") ¶ 4. Pursuant to these procedures, Purchase Order 4191 was considered to be a "Part B" contract, and therefore the Purchase Order 4191 file should have been destroyed six months after payment. SA 6-7; Rahtes Decl. ¶ 5. Though there is no evidence that the Purchase Order 4191 files were destroyed, there is no reason to presume anything other than that they were destroyed six months after payment, pursuant to the normal procedure. There is no evidence that the destruction was done "with a culpable state of mind."

Mr. Kawa has also failed to show that the presumably destroyed evidence was relevant to his claims in this case. While DCMC was responsible for administering Purchase Order 4191, Ms. Bader's uncontradicted testimony is that she was not responsible for where payment was sent, which is the sole issue in this case. Additionally, the DCMC Contract 2508 files, which have been preserved, do not contain memos or conversation records of conversations between Ms. Bader and Ms. Rahtes, so there is no reason to believe that the DCMC Purchase Order 4191 files would have contained such documents.

For these reason, the Court should not draw an adverse inference against the Government regarding Ms. Rahtes' knowledge about Mr. Kawa.

D. There Are No Questions Of Material Fact Regarding The Powers, Duties, Or Responsibilities Of DCMC

Mr. Kawa erroneously asserts that there are disputed facts concerning DCMC's ability to bind the Government. Pl. Opp. at 25-27. Ms. Rahtes' uncontradicted testimony is that the ACO

had no authority to substantively modify contracts without authorization from the DSCC contracting officer. None of the testimony cited by Mr. Kawa contradicts this statement. Ms. Moore's testimony that DCMC could be allowed to make contract modifications is entirely consistent with Ms. Rahtes' testimony -- there is no dispute that DCMC could make substantive contract modifications with permission from the DSCC contracting officer. Ms. Moore never stated, nor is there any other evidence, that DCMC could make a substantive modification without DSCC permission.

Ms. Moore's very general testimony about the powers of an ACO do not indicate that an ACO could independently make substantive modifications to a contract. Nor does Ms. Bader's testimony about her responsibilities say anything about substantively modifying contracts. While DCMC can process assignments pursuant to the Assignment of Claims Act, there is no evidence that DCMC can waive the statutory prohibitions against assignment of claims. In fact, in order to determine whether the Government has recognized an assignment, courts must look to whether the contracting officer signed the notice of assignment and modified the contract accordingly. Riviera Finance of Texas, Inc. v. United States, 58 Fed. Cl. 528, 530 (2003) (holding that two factors courts consider in determining whether there was a waiver of the statutory prohibitions against assignment are that the contracting officer signed to notice of assignment and modified the contract accordingly).

## II. Mr. Kawa Was Not A Third Party Beneficiary To Purchase Order 4191

Mr. Kawa first argues that he was a third-party beneficiary to Purchase Order 4191 because the DCMC team had authority to bind the Government, knew who he was prior to payment, and, therefore, intended to benefit him. Pl. Opp. at 27-29. As demonstrated above,

Mr. Kawa has not shown that DCMC had authority to bind the Government, therefore this argument concerning third-party beneficiary status must fail. Mr. Kawa also points to Ms. Bocsy's testimony that she assumed Mr. Kawa was affiliated with a bank. Pl. Opp. at 29. Contrary to Mr. Kawa's assertion, as explained above, this does not mean that Ms. Bocsy believed Mr. Kawa to be an entity entirely separate from Capital City, and therefore does not mean Ms. Bocsy intended to benefit Mr. Kawa individually.

Mr. Kawa further asserts that, even assuming Ms. Bocsy believed Mr. Kawa to be an employee of Capital City, Mr. Kawa is still a third-party beneficiary to Purchase Order 4191. Pl. Opp. at 29-30. As set forth in our motion, in order for a party to establish third-party beneficiary status, he must show that there was an intent to benefit him. Def. Mot. at 19-20. If, as we have established, Ms. Bocsy believed Mr. Kawa to be affiliated with Capital City, then her intent in changing the remittance address was to benefit Capital City, not Mr. Kawa.

In order to determine whether a party was a third-party beneficiary, the Court must look to whether the party reasonably relied upon the purchase order as manifesting an intent to benefit him. See Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1260 (Fed. Cir. 2005). As demonstrated in our motion, however, Mr. Kawa did not reasonably rely upon Purchase Order 4191 as showing an intent to benefit him because he never informed anyone in the Government of the reason for the remittance address change and because the purchase order called for payment to be made by electronic funds transfer ("EFT") to Capital City's bank. Def. Mot. at 22. Mr. Kawa claims that the Central Contractor Registry ("CCR") contains only a physical address. Though the CCR printout cited by Mr. Kawa, PA 136-37, may have only contained a physical address, there is no evidence that EFT information was not contained elsewhere in the

CCR system.

Finally, Mr. Kawa cites a decision of the Armed Services Board of Contract Appeals ("ASBCA") as holding that FAR clauses stating that payment shall be made by EFT do not render reliance unreasonable. Pl. Opp. at 31. As an initial matter, ASBCA decisions are not binding upon this Court. Furthermore, Mr. Kawa mischaracterizes the ASBCA's holding in Appeal of Floorpro, Inc., 04-1 BCA ¶ 32571, ASBCA No. 54143, 2004 WL 691691 (2004). The ASBCA held that, in that specific case, the FAR clause calling for payment to be made by EFT did not prevent the board from exercising jurisdiction over the subcontractor's third-party beneficiary claim. Floorpro is distinguishable from this case in that, in Floorpro,

> the parties executed [a modification to the contract] which, according to its terms, was a supplemental agreement entered into pursuant to the authority of the mutual agreement between the Government and G. M. & W. Construction Corp. . . .The modification provided, in part, "This modification is issued for DFAS Kansas City to cut a two party check (Hard Copy) to the contractors listed below:" G. M. & W. Contracting and FloorPro, Inc., with the check to be remitted to FloorPro, Inc., at its address.

Id. That is, there was a specific modification to the contract specifying payment by check to the contractor and the subcontractor. Here, there was never such a modification made to Purchase Order 4191. The change in remittance address did not say anything about method of payment. Thus, it was not reasonable for Mr. Kawa to rely upon merely a change in the remittance address when there was nothing indicating that the FAR provision requiring payment by EFT no longer applied.

## III. There Was No Assignment To Mr. Kawa

The undisputed material facts establish that Mr. Kawa was never assigned the right to payment of Purchase Order 4191. As we established in our moving brief, the three

letters/facsimiles requesting the remittance address change could not have been notices of assignment because they said nothing about an assignment. Def. Mot. at 24. Given the fact that the first remittance change address had both Capital City and Mr. Kawa, Ms. Bocsy reasonably believed Mr. Kawa to be associated with Capital City. Thus, when she made the address change, it was not intended to assign payment to Mr. Kawa. There was no “meeting of the minds” that payment was being assigned to Mr. Kawa. Mr. Kawa asserts that Ms. Bocsy knew payment would be made by physical check to the “individual” Mr. Kawa. Pl. Opp. at 32. As explained above, Ms. Bocsy testified that “remit payment to” means “remit payment to that address,” and, when questioned further, agreed that the “remit to” address in this case included an individual’s name. PA 43-44. Ms. Bocsy did not testify that she believed payment would be made to Mr. Kawa as an individual. Mr. Kawa erroneously claims that if Ms. Bocsy knew payment was going to Mr. Kawa, it is irrelevant that Ms. Bocsy believed Mr. Kawa to be associated with Capital City. However, Ms. Bocsy’s belief that Mr. Kawa was associated with Capital City is dispositive in this context. Because Ms.Bocsy believed that she was changing the address to simply send payment to Capital City at a different address, there could not have been an assignment of payment to Mr. Kawa, because Ms. Bocsy believed that she was still paying Capital City.

Mr. Kawa further alleges that an assignment to Mr. Kawa was ratified by the Government. The basis for this argument is that DCMC possessed authority to ratify an assignment. As established above, though DCMC had some responsibilities with respect to contract payment, DCMC did not have the authority, nor was it delegated the authority in this case, to change the remittance address. Although DCMC was involved in the processing of

assignments, pursuant to the Assignment of Claims Act, there is no indication that DCMC had authority to waive the statutory prohibitions against the assignment of claims. Because modifying the remittance address without authorization was outside the scope of DCMC's duties, it could not have possessed implied actual authority to ratify the alleged assignment.

IV. There Was No Contract Between Mr. Kawa And The Government

Mr. Kawa has failed to show that any elements of an express or implied-in-fact contract between Mr. Kawa and the Government are present in this case. Mr. Kawa has failed to show mutual intent to contract because, regardless of what Mr. Kawa's intent may have been, there is no evidence that the Government intended to contract with him. While Ms. Bocsy changed the remittance address to Mr. Kawa's address, there is no evidence that she intended to contract with Mr. Kawa. Purchase Order 4191 was clearly a contract between the Government and Capital City, and changing the remittance address was simply a change to the contract between those two parties. Mr. Kawa erroneously contends that the consideration for the alleged contract was the $45,275.76. The $45,275.76 was payment for the hose assemblies, and therefore was consideration for the contract between the Government and Capital City for the hose assemblies, not for any alleged contract with Mr. Kawa.

There was no ratification by the Government of any alleged contract with Mr. Kawa. Mr. Kawa asserts that the Government received benefits from Mr. Kawa because it would not have gotten the hose assemblies if Mr. Kawa had not served as escrow agent. Pl. Opp. at 36. The Government, however, was entitled to the hose assemblies pursuant to the Contract with Capital City. If Capital City had failed to deliver the hose assemblies as required by the contract, the Government would have been entitled to recover damages for breach of contract. Thus, the

Government received no additional benefit by Mr. Kawa serving as escrow agent. Mr. Kawa also argues that there was ratification because officials who had authority to contract on behalf of the Government, namely DCMC, knew of the arrangement with Mr. Kawa by the time the Government accepted and paid for the hose assemblies. Pl. Opp. at 36. Again, as set forth above, DCMC did not have authority to bind the Government.

V. Mr. Kawa Is Precluded From Bringing This Claim Pursuant To The Doctrine Of *Res Judicata*

Mr. Kawa claims that the "law of the case" should bar the Government from arguing res judicata because the Government's motion to dismiss based upon that argument was unsuccessful. Pl. Opp. at 37. The Court's opinion on our motion to dismiss, however, specifically stated that "[b]ased on the record before the Court," the Government had not met its burden of showing that Mr. Kawa represents the interests of JGB. Kawa v. United States, 77 Fed. Cl. 294, 309 (2007). Since the filing of our motion to dismiss, the record has been further developed through discovery and, as established in our moving brief, the undisputed evidence shows that Mr. Kawa is representing the interests of JGB, and is therefore precluded by res judicata from bringing this suit. Def. Mot. at 25-28.

Contrary to Mr. Kawa's argument, there is substantial identity between the issues in controversy. Mr. Kawa asserts that there is no substantial identity of issues in that the facts are different because Mr. Kawa's name was on the face of Purchase Order 4191, while JGB was "behind the scenes." Pl. Opp. at 38. On the contrary, Mr. Kawa's name on Purchase Order 4191 is a significant fact in both cases. Furthermore, as Mr. Kawa admits, to be in privity with a party to former litigation, the party in the present litigation must represent "precisely the same legal right" to the subject matter involved. Id. (quoting Martin v. Am. Bancorporation Retirement

Plan, 407 F.3d 643, 651 (4th Cir. 2005) (emphasis added)). Here, both JGB and Mr. Kawa are asserting the same legal right -- JGB's right to payment by the Government of approximately $43,000 for hose assemblies pursuant to Purchase Order 4191. As set forth in our moving brief, Mr. Kawa has no independent right to the money; he admits that it must be forwarded to JGB pursuant to the escrow agreement. Def. Mot. at 27. Additionally, even assuming that the fact that Mr. Kawa's name was on Purchase Order 4191 was not raised in the JGB litigation, res judicata applies "not only as to every matter which was offered and received to sustain or defeat [a plaintiff's previous] claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352 (1877).

The second factor for determining whether res judicata applies is that "there has been an earlier final judgment on the merits of a claim." JET, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir. 2000). Mr. Kawa incorrectly interprets this factor to mean that there was a prior final judgment on Mr. Kawa's claim. This second factor merely means that there was a final judgment in the JGB litigation on Purchase Order 4191, which Mr. Kawa admits there was. Pl. Opp. at 38. It is the other two factors, privity and "same set of transactional facts," which tie this litigation to the prior JGB litigation.

As to the third factor, as we established in our moving brief, both cases involve the same set of transactional facts. Def. Mot. at 27-28. The distinctions that Mr. Kawa attempts to make between the facts in the two cases are immaterial. The Court in JGB considered that Ms. Bocsy believed that payment would be made by check. JGB Enterprises, 63 Fed. Cl. at 325. There are no new and material facts regarding the DCMC office. DCMC's role in administering contracts and in the notice of assignment on Contract 2508 were raised in the JGB litigation. Any facts

concerning DCMC's alleged knowledge of Mr. Kawa's role are immaterial to both cases because DCMC did not have the authority to bind the Government in this situation.

VI. Mr. Kawa Is Not Entitled To Contract Disputes Act Interest

The CDA interest claim was not resolved upon our motion to dismiss because Mr. Kawa had alleged an implied-in-fact contract between himself and the Government. Kawa, 77 Fed. Cl. at 305. As set forth above, the undisputed facts at this time show that there was no express or implied-in-fact contract between Mr. Kawa and the Government, and that therefore Mr. Kawa cannot be a "contractor" pursuant to the CDA. As this Court held in JGB, even if Mr. Kawa were found to be a third-party beneficiary to Purchase Order 4191, he would not be entitled to CDA interest. JGB Enterprises, 63 Fed. Cl. at 331. While we recognize that the ASBCA's decision in Appeal of Floorpro, Inc., ASBCA No. 54143, 2008 WL 436927 (2008), disagrees with this Court's holding in JGB, we again note that ASBCA decisions are not binding upon this Court. Furthermore, even if this Court were to follow the ASBCA and determine that there is CDA jurisdiction over third-party beneficiaries, we have shown above and in our moving brief that Mr. Kawa was not a third-party beneficiary to Purchase Order 4191.

CONCLUSION

For the reasons stated above, and for the reasons stated in our moving brief, we respectfully request that the Court grant our motion for summary judgment.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ FRANKLIN E. WHITE, JR.
FRANKLIN E. WHITE, JR.
Assistant Director

/s/ MEREDYTH D. COHEN
MEREDYTH D. COHEN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-7978
Fax: (202) 514-8624

August 5, 2008

Attorneys for Defendant

# SUPPLEMENTAL APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.G.B. ENTERPRISES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-680C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF KATHRYN M. BADER**

Pursuant to 28 U.S.C. § 1746, I, Kathryn M. Bader, declare that the following is true and correct and based upon my personal knowledge and information I acquired from others in the course of my performance of my official duties, and that I am competent to testify to the matters contained herein.

1. I am a Performance Advocate in Contracting for Defense Contract Management Agency ("DCMA") Headquarters, located in Alexandria, Virginia, and have served in that position for approximately one and a half years. From October 1998 to June 2004, I was a Contract Specialist at Defense Contract Management Command ("DCMC") St. Petersburg, located in St. Petersburg, Florida.
2. I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.
3. In my role as a Contracting Specialist, I was responsible for administering several Capital City Pipes, Inc. ("Capital City") contracts, including Contract SP0750-99-C-2508 ("Contract 2508") and Purchase Order SP0750-00-M-4191 ("PO 4191").
4. I retained DCMC's Contract 2508 files for informational purposes concerning the assignment of claims procedure. I kept these files in my desk until June 2004.

5. In June 2004, I moved from DCMC St. Petersburg to DCMA District East (DCMDE) - Boston. At that time, I took all files located in my desk with me, including the Contract 2508 files.

6. The DCMC Contract 2508 files were among the documents I brought with me to the deposition room on January 8, 2008.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of March 2008, in Alexandria, Virginia.

Kathryn M. Bader
Performance Advocate in Contracting
Defense Contract Management Agency

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.G.B. ENTERPRISES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-680C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF VASSO K. MONTA**

Pursuant to 28 U.S.C. § 1746, I, Vasso K. Monta, declare that the following is true and correct and based upon my personal knowledge, my review of the United States' files and records concerning the above-captioned case, and information I acquired from others in the course of my performance of my official duties, and that I am competent to testify to the matters contained herein.

1. I am an Associate Counsel for Defense Supply Center Columbus ("DSCC"), located in Columbus, Ohio, and have served in that position for approximately 12 years.
2. I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.
3. Since November 2002, I have been assigned to the above-captioned case as agency counsel.
4. On or about September 28, 2000, J.G.B. Enterprises, Inc. ("JGB") filed a claim with DSCC concerning Contract SP0750-99-C-2508 ("Contract 2508") and Purchase Order SP0750-00-M-4191 ("PO 4191"). DSCC was and continues to be responsible for handling litigation of that claim.

5. At the time JGB filed its claim, it was not DSCC's normal procedure to notify other offices within the Defense Logistics Agency ("DLA") or the Department of Defense ("DOD") of all claims received, due to the large volume of claims filed and the lack of resources to draft and circulate notices about all claims.

6. At the time JGB filed its claim, it was not apparent to DSCC that Defense Contract Management Command ("DCMC"), which was a part of DLA until September 27, 2000 when it became a separate agency within DOD, would have any files relevant to the claim. DCMC is primarily involved with quality assurance, inspection, and acceptance of products, while JGB's claim concerned payment.

7. Thus, at the time JGB filed its claim, DSCC did not notify DCMC of the claim, nor did DSCC instruct DCMC to preserve any documents related to Contract 2508 or PO 4191.

8. At the time DSCC responded to JGB's discovery requests in the above-captioned case, DSCC believed that all responsive documents were contained in the DSCC files. Thus, DCMC files were not searched or produced.

9. In September 2002, DSCC received two Freedom of Information Act ("FOIA") requests from JGB. DSCC forwarded the requests to DCMC to respond regarding documents DCMC had in its possession. I requested that the FOIA monitor in our office obtain copies of the documents DCMC provided to JGB pursuant to the FOIA requests. To the best of my recollection, those documents were the same documents brought by Kathryn Bader to the deposition room on January 8, 2008 and produced to JGB on January 24, 2008.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on this 31st day of March 2008, in Columbus, Ohio.

Vasso K. Monta
Associate Counsel
Defense Supply Center Columbus

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| J.G.B. ENTERPRISES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-680C |
| | ) | (Judge George W. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF LYNNE T. RAHTES**

Pursuant to 28 U.S.C. § 1746, I, Lynne T. Rahtes, declare that the following is true and correct and based upon my personal knowledge and information I acquired from others in the course of my performance of my official duties, and that I am competent to testify to the matters contained herein.

1. I am an Administrative Contracting Officer ("ACO") for Defense Contract Management Agency ("DCMA") St. Petersburg, located in St. Petersburg, Florida, and have served in that position for approximately _13__ years.
2. I am over the age of eighteen (18) and have personal knowledge of the matters set forth herein and if called as a witness could competently testify thereto.
3. DCMA was previously known as the Defense Contract Management Command ("DCMC").
4. Prior to 2004, DCMC generally followed the document retention procedures set forth in DLAI 5015.1, DLA Records Management Procedures and Records Schedule, adapted to its own particular purposes.
5. Under DCMC's records management procedures, Contract SP0750-99-C-2508 ("Contract 2508") and Purchase Order SP0750-00-M-4191 ("PO 4191") were

both considered "Part B" contracts. Pursuant to the procedures, Part B contract files were supposed to be destroyed six months after payment.

6. Accordingly, DCMC's PO 4191 file was likely destroyed six months after payment, pursuant to DCMC's records management procedures.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on this __24th________ day of March 2008, in St. Petersburg, Florida.

Lynne T. Rahtes
Administrative Contracting Officer
Defense Contract Management
Agency St. Petersburg

CERTIFICATE OF FILING

I hereby certify that on August 5, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Meredyth D. Cohen